IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FELIX AGOSTO,
Plaintiff,

vs. Case No.: 3:18cv1559/RV/EMT

J. COPPENGER, et al.,
Defendants.
_______________________________________/

**ORDER**

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this action by filing a complaint under 42 U.S.C. § 1983 (ECF No. 1). Presently before the court is Plaintiff's First Amended Complaint (ECF No. 10).

The court is statutorily required to review the First Amended Complaint to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Upon review of the First Amended Complaint, it is evident that Plaintiff's factual allegations fail to state a plausible claim for relief against one or more of the named Defendants. Therefore, the court will require Plaintiff to file a second amended complaint, which either drops his

insufficient claim(s) and/or includes sufficient factual allegations to state a plausible claim for relief.

Plaintiff names six Defendants in this case, all of whom are prison officials at Century Correctional Institution: Sergeant J. Coppenger, Officer J. Betts, Officer Nelson, Sergeant L. McCann, Sergeant C. Payne, and Officer J. Burch (ECF No. 10 at 1, 2).[1] Plaintiff alleges on August 17, 2017, Officer Covan (who is not a named Defendant) told Defendant Payne to place Plaintiff in confinement for disorderly conduct (*id.* at 7–8). Plaintiff alleges he complied with Defendant Payne's order to submit to handcuffs, and then asked Payne why he was going to confinement (*id.* at 8). Plaintiff alleges Defendant Payne responded, "For running your mouth" (*id.*). Plaintiff alleges he told Defendant Payne that his cellmate was the person who was arguing with Officer Covan, and this could be verified by reviewing the video from the fixed wing camera (*id.*). Plaintiff alleges Officer Covan again told Defendant Payne to place Plaintiff in confinement for disorderly conduct, and then Covan wrote a false disciplinary report against Plaintiff (*id.*). Plaintiff alleges Defendant Payne escorted him outside the dormitory without reviewing the video (*id.*).

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original document.

Plaintiff alleges he asked to speak with Colonel Hassett (who is not a named Defendant), but Lieutenant Booth (who is not a named Defendant) responded and asked Plaintiff, "What is the problem?" (ECF No. 10 at 8). Plaintiff alleges he told Booth that Officer Covan lied, and Defendant Payne refused to view the video (*id.*). Plaintiff alleges Booth ordered him to go to confinement, and told Plaintiff he would discuss the matter with Covan and Payne (*id.*).

Plaintiff alleges Colonel Hassett (who is not a named Defendant) approached and asked Plaintiff, "You don't want to go to confinement?" (ECF No. 10 at 8). Plaintiff alleges Hassett summoned other officers for back-up, and Defendant Coppenger, Defendant Nelson, and Lieutenant Shawn (who is not a named Defendant) responded to the scene (*id.*). Plaintiff alleges after his pre-confinement medical examination, Defendants Coppenger and Nelson escorted him to confinement (*id.* at 9). Plaintiff alleges during the escort, Defendant Coppenger said, "Run your mouth now," and then grabbed his upper body and slammed him on the floor (*id.*). Plaintiff alleges his hands were cuffed behind his back at the time, and he was not physically resisting (*id.*). Plaintiff alleges he landed on his right side (*id.*). He alleges his "hip joint and muscle, and right femur bone joint and muscle were torn" (*id.*). Plaintiff alleges he previously had a rod, pin, and two screws surgically placed in his right

femur bone from his hip to his knee (*id.*). Plaintiff alleges Defendant Nelson sprayed chemical agent into Plaintiff's eyes while he was on the floor (*id.*). Plaintiff alleges Defendant Coppenger charged him with a false disciplinary report ("DR") for attempted battery on a correctional officer in order to cover up his and Defendant Nelson's unjustified use of force (*id.*).[2]

Plaintiff alleges while he was in the shower rinsing off the chemical agent, Nurse Powell (who is not a named Defendant) examined him (ECF No. 10 at 10). Plaintiff alleges Nurse Powell advised him to continue taking his prescribed pain medication (Naproxen 250 mg.) and referred him to the doctor (*id.*). Plaintiff alleges two days later, he submitted a sick call request concerning the pain in his right hip and femur (*id.*). Plaintiff alleges Nurse Szalai (who is not a named Defendant) ordered x-rays and advised him to continue taking the Naproxen (*id.*).

Plaintiff alleges he made numerous requests to be placed in Protective Custody, but Defendant Burch failed to process his request (ECF No. 10 at 10). Plaintiff acknowledges, however, that a grievance he filed on August 20 (just three days after the incidents at issue) requesting placement in protective custody was approved to the

[2] The attachments to Plaintiff's initial Complaint show that the DR filed by Officer Covan for disorderly conduct (DR #106-171468) was overturned "due to technical reasons" (ECF No. 1 at 36–38, 50, 52–53). The DR filed by Defendant Coppenger for attempted battery on a correctional officer (DR #106-171507) was overturned because the DR stated the wrong date the infraction occurred (*see* ECF No. 1 at 44–47, 51, 54, 56).

extent that his request was forwarded to the Office of Inspector General for investigation (*see* ECF No. 10 at 10; ECF No. 1 at 7, 20–21). Plaintiff claims that Defendant Burch's alleged failure to process his request for Protective Management violated his due process rights under the Fifth and Fourteenth Amendments (ECF No. 10 at 11).

Plaintiff alleges while he was in confinement, Defendant McCann and Betts came to his cell door and told him to "cuff up," because he was getting a roommate (ECF No. 10 at 10). Plaintiff alleges while his hands were in the cell door flap, Defendant McCann pushed the cell door open, causing pain to his left hand, and then Defendant Betts grabbed his neck with his right hand (*id.*).

Plaintiff alleges on October 6, 2017, Defendant Payne charged him with a false DR for "unauthorized transaction" (ECF No. 10 at 11). Plaintiff alleges Payne filed the false DR in retaliation for Plaintiff's grievances and because Plaintiff caused an investigation of Payne's co-workers (*id.*).

In the Statement of Claims section of the First Amended Complaint, Plaintiff states only Eighth Amendment claims of excessive force and deliberate indifference to medical needs (ECF No. 10 at 12). Plaintiff seeks declaratory relief as well as compensatory and punitive damages (*id.*).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).  Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.  Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

Initially, it is unclear whether Plaintiff is asserting a due process claim against Defendant Burch. When the court screened Plaintiff's initial Complaint, the court advised Plaintiff that his allegations failed to state a plausible due process claim against Defendant Burch based upon Burch's alleged failure to process Plaintiff's request for placement in protective custody (*see* ECF No. 9 at 6). Although Plaintiff does not assert a due process claim in the Statement of Claims section of the First Amended Complaint (*see* ECF No. 10 at 12), he still alleges a due process violation in the Statement of Facts section (*see id.* at 11). Unless Plaintiff is asserting a due process claim against Defendant Burch (despite the court's advising him that his allegations failed to state a plausible claim), Plaintiff should remove all factual allegations regarding the due process claim from the Statement of Facts section of the complaint.

The same is true of Plaintiff's allegation that Defendant Payne retaliated against him for filing grievances by filing a false DR (*see* ECF No. 10 at 11). Although Plaintiff does not assert a retaliation claim in the Statement of Claims section of the First Amended Complaint (*see id.* at 12), he still alleges retaliation in the Statement of Facts section (*see id.* at 11). Unless Plaintiff is asserting a First Amendment retaliation claim against Defendant Payne, Plaintiff should remove all factual allegations regarding retaliation from the Statement of Facts section of the complaint.

With respect to Plaintiff's Eighth Amendment claim of deliberate indifference to medical needs, his factual allegations fail to state a plausible claim for relief against any named Defendant. The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Stating a claim under the clause thus requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See* Wilson, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).

In the context of denial of medical care, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an

objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, Estelle, 429 U.S. at 105–06.[3] Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," Estelle, 429 U.S. at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the inference,"

[3] A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need "cannot be found liable under the Cruel and Unusual Punishments Clause," Farmer, 511 U.S. at 845, "even if the harm ultimately was not averted," *id.* at 844.

Farmer, 511 U.S. at 837. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts. *See* Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Institutional staff who are not medical providers are not liable when they rely on the medical expertise of medical staff. *See* Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1050 (11th Cir. 2014); *see also* Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (a claim of medical indifference cannot generally be against non-medical personnel, unless they personally involved themselves with a denial of treatment or deliberately interfered with the medical treatment). The law does not require that non-medical officials ignore the determination and recommendation of medical staff. *See* Keith, 749 F.3d at 1050; *see also* Miltier, 896 F.2d at 854 (prison officials are entitled to rely upon prison medical personnel to determine the medically proper course of treatment for an inmate, unless there is direct evidence to show that a warden or other supervisory official should not rely on this expertise).

Here, Plaintiff does not allege that any Defendant, all of whom are members of the security staff and none of whom are medical providers, interfered with his ability

to seek or obtain medical treatment.  Therefore, Plaintiff should drop his deliberate indifference claim.

With respect to Plaintiff's Eighth Amendment claims of excessive force, his factual allegations fail to state a plausible claim for relief against Defendant Payne, Burch, McCann, or Betts.  The "core judicial inquiry" in considering an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also* Whitley v. Albers, 475 U.S. 312, 319–321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident."  Hudson, 503 U.S. at 9.

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry.  Hudson, 503 U.S. at 7.  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  *Id.* (quoting Whitley, 475 U.S. at 321).  The extent of injury may also provide some indication of the amount of force applied.  *See* Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995

(2010). As the Court stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.* (internal quotation marks omitted).

"Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including these five: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8; *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999).

From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033).

With respect to Defendant Payne, Plaintiff alleges Payne handcuffed him on August 17, 2017, and escorted him out of the dormitory. Plaintiff also alleges Defendant Payne charged him with an allegedly false DR for "unauthorized transaction" on October 6, 2017. None of this conduct suggests a use of force, let alone a use of excessive force. Therefore, Plaintiff should drop his Eighth Amendment claim against Defendant Payne.

The same is true of Plaintiff's excessive force claim against Defendant Burch. Plaintiff alleges only that Burch failed to process his request for protective custody. This allegation does not state a plausible claim of excessive force.

With respect to Defendants McCann and Betts, Plaintiff alleges they told him to cuff up because he was getting a cellmate, and while Plaintiff was attempting to show them paperwork allegedly showing he was supposed to be housed alone, McCann pushed the cell door open with Plaintiff's hands in the door flap, and Betts grabbed

Plaintiff's neck with his hand. This minimal amount of force could plausibly have been thought necessary to obtain Plaintiff's compliance with the officers' directives and to secure Plaintiff while the officers moved the other inmate into Plaintiff's cell. Plaintiff thus failed to state a plausible excessive force claim against Defendants McCann, and Betts.

As a final matter, Plaintiff is not entitled to the declaratory relief he requests. Because Plaintiff is no longer confined at Century Correctional Institution, where Defendants are employed and the alleged constitutional violations occurred, any request for declaratory relief is moot. *See* Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred).

If, upon consideration of the foregoing, Plaintiff determines he does not wish to pursue this lawsuit, he may file a notice of voluntary dismissal.[4] If he wishes to proceed with this lawsuit, he must file an amended complaint. In doing so, Plaintiff must completely fill out a new civil rights complaint form, marking it "**Second**

[4] Plaintiff is advised that a voluntary dismissal does not count as a "strike" for purposes of 28 U.S.C. § 1915(g).

**Amended Complaint**." Plaintiff must limit his allegations to only those claims identified in his previous complaint and name as Defendants only those persons who are responsible for those alleged constitutional violations. Plaintiff must place each Defendant's name in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form. In the "Statement of Facts" section, Plaintiff should clearly describe how each named Defendant was involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of the alleged illegal acts. In the section titled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations. Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this court.

Plaintiff is advised that the amended complaint must contain all of his allegations. Allegations in a prior pleading that are not set out in the amended pleading are deemed abandoned. *See* N.D. Fla. Loc. R. 15.1(A).

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself. He should not file a memorandum of law or otherwise

provide citations to statutes and cases, and he should not file a witness list or submit exhibits as evidentiary support for his complaint. The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment. Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so. Finally, Plaintiff is advised that discovery is premature at this stage of the case, and he should not conduct any discovery without leave of court.

Accordingly, it is **ORDERED**:

1.    The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions filed under 42 U.S.C. § 1983. This case number should be written on the form.

2.    Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff must file an amended civil rights complaint in compliance with this order, which must be typed or clearly written, submitted on the court form, and marked "Second Amended Complaint." Alternatively, Plaintiff may file a notice of voluntary dismissal within that time.

3.    Plaintiff's failure to comply with an order of the court will result in a recommendation of dismissal of this action.

**DONE AND ORDERED** this 9th day of January 2019.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**