UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FELIX AGOSTO,
    Plaintiff,

V.                          Case No. 3:18-CV-1559-RV/EMT

SGT. J. COPPENGER and
OFFICER NELSON,
_____Defendants._____   /

## PLAINTIFF RESPONSE THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Felix Agosto, Pro se and Respons to the honorable court the defendant's motion For summary Judgment Pursuant to F.R.C.P. 56 and move the honorable court For Conferences, Facilitating Sttlement Pursuant to F.R.C.P. 16 (A)(5).

## STATEMENT

Plaintiff eighth amendment right to be Free of cruel and unusual Punishment were violated.

## MEMORANDUM OF LAW

## I. SUMMARY Judgment

1

FILED USDC FLND PN
MAY 29 '20 PM2:00

To overcome the qualified immunity defense
at the summary Judgment stage, a Plaintiff
must have shown facts that make out a
violation of a constitunal right, and the
right at issue must have been "clearly
established" at the time of the defendant's
alleged misconduct.

The analysis takes Place against the
backdrop of two dueling interests: the
need to hold Public officials accountable
when they exercise Power irresponsibly
and the need to shield officials from
harassment, distraction, and liability when
they Perform their duties reasonably.

The eight amendment to the United States
constitution, U.S. const. Amend VIII Protects
Prisoners From unnecessary and wanton
infliction of Pain that Protection imposes on
Prison officials an affirmative obligation
to take reasonable measures to guarantee
the safety of inmates, however, not all
eighth amendment violations are the same:
some constitute "deliberate indifference",
while others constitute "excessive Force"

A Person who uses or threatens to use Force
as Permitted, (2017) 776.032, Fla stat, A Law
enForcement agency may use standard Procedures
For investigating the use or threatened use
of Force.

Applicable substantive law identifies
those Facts that are "material" SPoliation

2

is the "intentional destruction of evidence
or the significant and meaningful alteration
of a document or instrument, Southeastern
Mech. Servs., inc. V. Brady, 657 F. Supp. 2d
1293, 1299 (M.D. Fla. 2009) citing Green
Leaf Nursey V. E.I. Dupont De Nemours
& CO, 341 F. 3d 1292 1308 (11th cir. 2003)
Fed. R. Civ. P. 37(e).

The government improperly withheld or
destroyed possibly exculpatory evidence
under Brady plaintiff also must demonstrate
that the government acted in bad faith.
(citing Youngblood 488 U.S. 51 109 S.ct.
333, 102 L. Ed. 2d 281 N.*)

When identity is an issue at trial and the
officers permit the destruction of evidence
that could eliminate the defendant as the
perpetrator, such (2019 U.S. Dist. Lexis 124)
loss is material to the defense and is a denial
of due process.

The court explained that under Brady V.
Maryland, 373 U.S. 83, 83 S. ct. 1194, 10 L.
Ed. 2d 215 (1963), and its progeny, the
due process clause is violated whenever
the prosecution "fails to disclose to the
plaintiff material exculpatory evidence",
regardless of whether the state acted in
good faith or bad faith.

3

And, of course, if the defense at summary
judgment is in the nature of "I didnt do it"
summary judgment would also have to be denied
if the plaintiff comes forward with evidence
sufficient to rebut the denial. see Johnson V.
Jones, 515 U.S. 304, 115 S. ct. 2151, 132 L. Ed.
2d 238 (1995).

To create an issue of fact for trial sufficient
to defeat a well-supported summary judgment
motion, the non-movant's evidentiary material
must consist of more than conclusory,
uncorroborated allegations from an affidavit.
West V. Higgins, 346 F. App'x 423, 425 (11th
cir. 2009) (per curiam) (unreported op.) (citing
Earley V. champion Int'l corp., 907 F. 2d 1017,
1081 (11th cir. 1990). For the factual issues to be
genuine, they must have a real basis in the
record, cannot be based merely on "information
and belief" or unsupported factual allegations.
Earley, 907 F. 2d at 1081.

II. Plaintiff unjustified force

It is clear from the exhibits referenced
above, and attached hereto, and Agosto's
initial complaint, that the unecessary
and wanton infliction of pain was maliciously
or sadistically to cause harm. Plaintiff was
serve a disciplinary Report base on the
use of force that was "over turn" by the
Institution "Century C. I." Warden.

4

Florida law clearly compels a Prison warden to not permit certain types of punishment, Hall v. Key, 476 So. 2d 787, 788-89 (Fla. 1st DCA 1988), Further required is an environment "Free" from victimization by prisoners and staff and procedures to provide internal due process within the prison setting.

According with Florida Administration Code 33.601 the warden have 30 days to order a readwrite of the disciplinary report written by Sgt. Coppenger regarding the incident at century.

Further more Florida statu 944.31 Inspector General, Inspector Power and duties, shall be responsible for prison inspection and investigation, internal affairs investigation and management reviews.

The office of the inspector general shall be charged with the duty of inspecting the penal and correctional systems of the state the office of the inspector general shall inspect each correctional institution or any place in which state prisoners are housed, worked, or kept within the state with reference to housed, worked its physical conditions eleanliness, sanitation, safety and comfort.

Plaintiff was never ask questions or

5

investigated Regarding the incident Aug. 17, 2017.

The supreme court stated that "the due Process clause Protects a Pretrial detainee From the use of excessive Force that amounts to Punishment," Graham V. connor, 490 U.S. 386, 395 N. 10, 109 S. Ct. 1865 (1989); Bozeman V. orum, 422 F.3d 1265, 1271 (11th cir. 2005), (stating that the Johnson standard turns on good Faith versus malicious and sadistic intent, like the eighth amendment standard

The deliberate indifference standard generally applies to cases alleging Failures to safeguard inmate's health and safety including Failing to Protect inmates From attack, maintaining inhumane conditions of two Proged test: (1) the Prisoner must be exposed to a substantial risk of serious harm, and (2) the Prison official must know of and disregard that substantial risk to the inmate's health or safety.

The Defendants new of Plaintiff medical conditions after the medical staff access plaintiff, but plaintiff was abuse Physicaly and dragg to Administration Confinement after the unnecessary use of Force, the Fixed wing Audio video camera Recordit the event, and Also violated the Procedure on the use of Force hand held video camera according with the Florida

6

Department of Corrections Policy Procedure
33-602.210. use of Force.

## III. Defendants are not Entitled to Qualified Immunity

Plaintiff eighth amendment to the United States Constitution were violated by the defendants, and Plaintiff seeks compensatory nominal of 150,000,00, and punitive demages against all defendants For the physical pain, abuse and constitutional violations Plaintiff has suffered, and Plaintiff cost in this suit, and all other relief available.

## CONCLUSION

WHEREFORE, For the foregoing reasons, Plaintiff respectfully move this honorable court to grante Plaintiff Response to the defendants motion For summary Judgment and Relief Requested on this motion.

<u>CERTIFICATE OF SERVICE</u>

I hereby certifite that the Foregoing has been place in the U.S. Post office For mailing to: U.S. district court 100 N. Palafox street Pensacola, Florida 32502 and counsel of record Joe Belitzky senior assistant Attorney General, The Capitol, PL-01, Tallahassee Florida 32399-1050, on this 26 day of May 2020.

Respectfully Submitted

Felix Agosto DC#772216

Felix Agosto DC#772216
11440 N.w. 56th drive Apt. 109
Coral springs Florida 33076
Phone number 754-224-0872

8

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FELIX AGOSTO,
    Plaintiff,

V.               Case No. 3:18-cv-1559-RV/EMT

SGT. J. COPPENGER and
OFFICER NELSON.
_____Defendants._____ /

## PLAINTIFF EXHIBIT

   COMES NOW, Felix Agosto, Pro Se, and respectfully submit with the Response to the defendants motion for Summary Judgment to the honorable Court.

1. Reports of Abuse

2. Florida department of corrections and Policy, F.A.C.

3. Medical Records Report.

THEREFORE, Plaintiff File his Response with exhibits and attachments to Agosto's initial Complaint.

## CERTIFICATE OF SERVICE

I here by certifite that the Foregoing has been place in the U.S. Post office For mailing to: U.S. district court 100 N. PalaFox street Pensacola, Florida 32502 and counsel of record Joe Belitzky assistant Attorney general, The capitol, PL-01, Tallahassee, Florida 32399-1050, on this 26 day of May 2020

Respect Fully submitted
Felix Agosto
Felix Agosto DC# 772216
11440 N.W. 56th drive Apt. 109
Coral Springs, Florida 33076
Phone number 754-224-0872

EXHIBIT A

1. REPorts oF Abuse



RICK SCOTT
GOVERNOR

STATE OF FLORIDA

# Office of the Governor

THE CAPITOL
TALLAHASSEE, FLORIDA 32399-0001

www.flgov.com
850-488-7146
850-487-0801 fax

August 3, 2016

Mr. Felix Agosto, DC #772216
Jackson Correctional Institution
5563 10th Street
Malone, FL 32445-3144

RE:   Chief Inspector General Case # 201608030004

Dear Mr. Agosto:

The Office of the Chief Inspector General received your complaint on August 3, 2016, in which you expressed concerns about the handling of the Department of Corrections, Office of Inspector General investigation.

After having had the opportunity to review your concerns, by copy of this letter, we are referring your complaint to the Inspector General for the Department of Corrections for review and action deemed appropriate.

Thank you for bringing this matter to our attention.   In the event that you have any further questions, please contact the Inspector General's office for the Department of Corrections by writing to the following address:

**Lester Fernandez, Inspector General**
**Department of Corrections**
**501 S. Calhoun St.**
**Tallahassee, FL 32399-2500**

Sincerely,

Heather Robinson
Operations Manager
Office of the Chief Inspector General

cc/enc: Lester Fernandez, Inspector General



**STATE OF FLORIDA**

**PAM BONDI**
**ATTORNEY GENERAL**

**OFFICE OF THE ATTORNEY GENERAL**
**Corrections Litigation Bureau**

**SUSAN A. MAHER**
**Chief Assistant Attorney General**
**The Capitol, PL01**
**Tallahassee, Florida 32399-1050**
**Telephone (850) 414-3300**
**Fax (850) 488-4872**
susan.maher@myfloridalegal.com

September 15, 2014

Felix Agosto DC#772216
Desoto Correctional Institution
13617 Southeast Highway 70
Arcadia, Florida 34266-7800

Dear Mr. Agosto:

Your letters of August 25, 2014, have been referred to the Corrections Litigation Bureau for review and response. You indicate in your letters that you are being abused by correctional staff at Desoto Correctional Institution.  First, you should know that the Attorney General has no investigative authority over the Department of Corrections.  As you are aware, you have the right to invoke the administrative grievance process to have appropriate authorities within the Department of Corrections to review and address your concerns.  To the extent that you are claiming abuse or misconduct on the part of staff at Desoto Correctional Institution, I am forwarding your letter to the Department of Corrections' Office of the Inspector General for handling as that office deems appropriate.

Sincerely,

Susan A. Maher
Chief Assistant Attorney General
Corrections Litigation

cc: Jeffrey Beasley, Inspector General (w/enc.)



| Florida Department of<br>Law Enforcement<br><br>Gerald M. Bailey<br>*Commissioner* | **Criminal Justice Professionalism**<br>Post Office Box 1489<br>Tallahassee, Florida 32302-1489<br>(850) 410-8600<br>www.fdle.state.fl.us | Rick Scott, *Governor*<br>Pam Bondi, *Attorney General*<br>Jeff Atwater, *Chief Financial Officer*<br>Adam Putnam, *Commissioner of Agriculture* |
|---|---|---|

May 27, 2014


Inmate Felix Agosto
Inmate#: 772216
Desoto Correctional Institution
13617 S.E. Highway 70
Arcadia, Florida  34266

Dear Inmate Agosto:

We received your complaint against other inmates or officers of the Florida Department of Corrections. All complaints against inmates, correctional officers, or correctional institutions received by this agency from inmates or others on their behalf are forwarded to the Florida Department of Corrections.

Subsection 943.1395(5), Florida Statutes, specifies that the "employing agency" is charged with conducting internal investigations.   **Any further correspondence regarding this matter should be directed to the Florida Department of Corrections at the following address:**

  Mr. Jeffery Beasley
  Office of Inspector General
  Carlton Building, Room 135
  501 S. Calhoun Street
  Tallahassee, Florida  32399-2500

Sincerely,

Glen W. Hopkins, Bureau Chief
Bureau of Standards

GWH/sb

cc:    Department of Corrections

*Service · Integrity · Respect · Quality*



| | | |
|---|---|---|
| Florida Department of<br>Law Enforcement<br><br>Gerald M. Bailey<br>Commissioner | **Criminal Justice Professionalism**<br>Post Office Box 1489<br>Tallahassee, Florida 32302-1489<br>(850) 410-8600<br>www.fdle.state.fl.us | Rick Scott, *Governor*<br>Pam Bondi, *Attorney General*<br>Jeff Atwater, *Chief Financial Officer*<br>Adam Putnam, *Commissioner of Agriculture* |

September 5, 2013

Inmate Felix Agosto
Inmate#: 772216
Charlotte Correctional Institution
33123 Oil Well Road
Punta Gorda, Florida  33955

Dear Inmate Agosto:

We received your complaint against other inmates or officers of the Florida Department of Corrections. Your letter states the officers at Charlotte Correctional Institution threatened your life.  All complaints against inmates, correctional officers, or correctional institutions received by this agency from inmates or others on their behalf are forwarded to the Florida Department of Corrections.

Subsection 943.1395(5), Florida Statutes, specifies that the "employing agency" is charged with conducting internal investigations.  **Any further correspondence regarding this matter should be directed to the Florida Department of Corrections at the following address:**

Mr. Jeffery Beasley
Office of Inspector General
Carlton Building, Room 135
501 S. Calhoun Street
Tallahassee, Florida  32399-2500

*Florida Dept. of Law Enforcement*
*Division of Criminal Justice Standards*
*and Training.*
*Attn. A. Leon Lowry II Director*
*P.O. Box 1489*
*Tallahassee, Florida 32302*

Sincerely,

Glen W. Hopkins, Bureau Chief
Bureau of Standards

GWH/sb

cc:   Florida Department of Corrections
      FDLE Office of Executive Investigations

MAY 9, 2016

Mr. Jeffery Beasley
Office of Inspector General
Carlton Building, Room 135
501 South Calhoun Street
Tallahassee, Florida 32399-2500

PROVIDED TO GULF CI
MAIL ROOM
MAY 0 9 2016
FOR MAILING 05/09/16
INMATE'S INITIALS F.A.

Re: Felix Agosto v. Sgt. Schultheiss et al.,
Case No. 13-14371-civ- Graham/White

Dear Mr. Beasley:

On May 4, 2016, Captain schwarz, william,
J. badge (swj12), Pull me out of my housing cell
P-Dorm Cell P2-216. Disciplinary Confinement wing
two (2), and place me on shower Four (4) and ask
me to write a witness statement Concern the
Allegation of the assault and physical abuse against
me by the staff on February 25, 2016, and that
I need to be seen by "Medical" For a "exam."
I Said to Captain Schwarz that I was assessed
by Nurse Suber, LPN, on February 25, 2016, and
that I make a witness statement, For the
Second Time on April 15, 2016, and I was
"exam" (assessed) again by Nurse Machuca, LPN,
on April 15, 2016, when I Requested Protective
management do to the assault and physical
abuse, and Captain schwarz. State on Audio
video in Disciplinary Confinement wing two (2)
that I need to write a statement again and
be seen by Medical, I Felix Agosto DC# 772216
Said to Captain Schwarz, that I already make

by Nurse Suber, LPN, on February 25, 2016 when the incident took place, and then I was seen again on April 15, 2016, by Nurse machuca, LPN when I Request to Captain schwarz For Protective management, Rule 33.602.221 (8)(d) F.A.C, Captain schwarz, then said to the housing post Sergeant, Shirvan, K, to write me a Disciplinary Report For Disobeing of a verbal order, then on MAY 5, 2016, captain schwarz came to my cell door P2-216, with Nurse suber, LPN, and c/o Beatty and told me that I need to be seen by the nurse, I said to Nurse suber, LPN, that he "assessed" me "exam" on February 25, 2016, when the incident took place, and I was assessed again by Nurse machuca, LPN, on April 15, 2016 concer the same incident of the assault and Physical abuse Also Photos was taking of the injury of my legs, And I Refuse again to be seen by nurse suber, LPN, when the captain schwarz, Pull me out of my cell on April 15, 2016 Concern My allegation I was serve three (3) Disciplinary Report, False D.R. on Reprisal to my Complaint against the Correctional Staff D.R. Log #150-160490, Log# 150-160469, Log# 150-1604-70, and 150-1604-68, All False, the institution has ignore My Request For the D.R. Hearing information on this last two D.R. Log # because the Investigator Sgt. Eker badge (EDB01) Fail and denied me to Investigate this Disciplinary Report on April 18, 2016 the Fixed wing Audio video cameras in Administrative Confinement wing two (2) at 5:30 P.m. will Prove when Sgt. Eker the D.R. Investigator Refuse to investigate the D.R. Written and Authorized by Captain schwarz, the Fixed wing Audio video P-Dorm Disciplinary

3:30 P.m. will prove when Captain schwarz, w. badge (swj(2), was demanding For me inmate Agosto Felix Dc# 772216 to write a witness statement and been seen by medical concerning my Allegations oF assault and Physical Abuse by Sgt. mcBerry, C/o cromate and sgt. suber on February 25, 2016, I already give them my witness Statements and I been seen two (2) time Concern my Allegations., I also File a (Prea) Prison Rape Elimination Act, Grievance "Formal" on Captain schwarz, Grievance Log# 1604-150-053 my allegation are Recorded on the Fixed wing Audio video, P3 - Dorm, Administratour Confinement wing three (3) on April 15, 2016, at 9:30 A.m. the same date I Requested Protective management to captain schwarz, this Institution are throwing away my (D.R.) Grievance APPeals, and my Classification officer Melvin, A.m. badge (MAM45), are ignoring my many Request For the D.R. Hearing information sheet which had the Log# oF the D.R. So I can File my Grievance APPeals, I File a informal Grievance to the Classification Department Concer my D.R. Log# and Hearing information and they still ignore my Request. Can you Please Look into my Allegation everything is on the Fixed wing Audio video at P-Dorm Confinement on the dates that I dated on this letter.

Felij Agosto Dc# 772216
Felix Agosto Dc# 772216
Gulf C.I. Annex
699 Ike Steele Road
Wewahitchka Florida 32465

PROVIDED TO GULF CI
MAIL ROOM
APR 1 9 2016
FOR MAILING 04/19/16
INMATE'S INITIALS

April 19, 2016

SUSAN A. MAHER
Chief Assistant Attorney General
The Capitol, PL 01
Tallahassee, Florida 32399-1050

PROVIDED TO GULF CI
MAIL ROOM
APR 1 9 2016
FOR MAILING 4/16/19
INMATE'S INITIALS

Re: Felix Agosto V. Sgt. Schultheiss, et al.
    Court Case No. 13-14371-civ-Graham/White

Ms. Susan:

On February 25, 2016 I was assaulted and Physically
abuse by the staff at this Institution Gulf C.I. Annex
I have Request numeros time to speak to the Institution
Inspector, but they are ignoring my Request, I'm
using the Fixed wing Audio video cameras in Administrative
Confinement wing three (3) on February 25, 2016 to
Confirm my allegations of assault and Physical abuse
the staff member are Sgt. McBerry, Sgt. Suber, and
C/o Kamarte, the mayor of this Institution Gulf C.I. Annex
also are covering the abuse, I Reported to him verbally
and mayor Mercer order to write me two (2) Disciplinary
Reports, then I Request Protective management Review
and they are ignoring my Request, the Disciplinary Report
investigator call me three time "Mother Fucker" I don't
have time to Play the Rainbow with you, this Investigator
name is Sgt. Ecker badge # (EOB01), then I been serve
numeros Disciplinary Reports by captain, Schwarz,
William J. badge # (SWJ12), All False, the fixed wing Audio
video cameras in Administration Confinement wing three (3)
on April 15, 2016 will show when capt. Schwarz, state
that I was going to "suck his dick", then wrote me

I have Report All the Abuse and the Institution are Covering up everything and throwing away my Grievances when I File the complaint to Report this staff actions, and they keep Serving False Disciplinary Reports, in Reprisal For my First and 14th Amendment right to File Grievances and lawsuit, also Captain Stephen, Kevin works the D-shift in the Institution Gulf C.I. Main Unit and Now he is working the A-shift at Gulf C.I. Annex this Captain Stephen, Kevin also Abuse me while I was in the Main Unit Gulf C.I. All my Allegation are Recording in the Fixed Wing Audio video, I need to see the Institution Inspector to Alleviate the problem but they are ignoring, I need Help please.

Respectfully submitted
Felix Agosto DC#772216
Felix Agosto DC#772216
Gulf C.I. Annex
699 Ike Steele Road
Wewahitchka, Florida 32465



January 11, 2017

Lester Fernandez
Office of Inspector General
Carlton Building, Room 135
501 South Calhoun Street
Tallahassee, Florida 32399-2500

Re: Inmate, Felix Agosto DC#772216

    I inmate Agosto, Felix, DC#772216 was place
in Administrative Confinement on January 09, 2017
by Sgt. M. V. Russ, I was move From Housing
do to my Coustody level been grade Low, at
Master Rouster Count Sgt. M. V. Russ, order me
Close my locket wich I Complie, then Sgt. M.
V. Russ order me to the (T.V.) area and
start verbally treat me, and state in video
Audio if I can't see her "Pussy" I said to
Sgt. M. V. Russ, that, that is a violation of (PREA)
Prision, RApe, elimaniation, act, Sgt. M. V. Russ, then
Call For backup. C/o Rooledlex, and CaP. L. Oliver
arrive, and I was place in Administrative
Confinement, I wrote a statement, and Report
the incident to the medical staff which denied
to give me her name, I was verbaly treat
by the medical staff who did the pre-
Confinement, and I was place in (AC), the next
day I declare "Mental Health emergency" and
Nurse Gordon, LPN, arrive and state that she
don't give a "Fuck", and state in Audio video
in Administrative Confinement, that the mental
Healt psychological services don't want to



a couple of hour I declare "mental Health emergency" again, I was place again in the shower, For (2) hour before the same nurse LPN Gordon, arrive and start making verball threat against me, and Sgt. T. Jhonson the (AC) post supervicer threat me to use Quimical agent (gas), everything is Recorded in Administrative Confinement Audio video cameras, date January 10, 2016, at 9:00 - 10:00 A.M. nurse LPN Gordon have been unprofesional before, I Report this nurse thru the Tip-line # 8477 concern my medical pass and issues the Institution Jackson C.I., use this nurse to Falsefy papers, and mistreat inmate. Also Sgt. M.V. Russ are bringin cellular phone to the institution, which I Report and mayor Jhonson, came to investigate, I told mayor Jhonson where weve two (2) cellular phone that Sgt. M.V. Russ sold to a inmate, but I was verbally treat again, Sgt. M. Melvin was post in Administrative Confinement on 2-10-17, and told a nother officer that I snitch on Sgt. M.V. Russ this statement is also on Audio video at Administrative Confinement (Y Dorm) approx. 3:15-3:30 p.m. 1-10-17, ~~since~~ Sgt. M. Melvin dangering my life because other inmates ~~here~~ here when Sgt. M. Melvin told the other officer that I snitch on Sgt. M.V. Russ that she bringing cellular phones to the institution, I was move to a B Dorm where a inmate got "kill", and Sgt. M.V. Russ is post, assinged, I Request to speak to the



to tell him what I have learn while on Population, and the murder ~~that~~ dead of the inmate on B Dorm where Sgt. M.V. Russ is Post, where are the cellular Phone but they are ignoring my Request, I Also will File another Complaint to the Office of the Governer Chief Inspector, which got a case number do to the abuse and abodoment, I got a Couple year left on my sentence and I want to make it home, this Institution have a lot of "Gang Member", that security use for they own Porpuse, I'm in fear of my life, and I Followe the Rule and Regulation but it see that every time I use the Grievance Process, my life is in danger, and I just have a settlement on a law suit against two (2) Correctional Officers, Felix Agosto V. Sgt. Schultheiss et Al, White/Graham, can you Please look into my allegation and Review the Fixe Cameras Audio video on the date above to confirm my Allegations and the "Corrup" Medical staff nurse Border,

Respectfully Submitted

Felix Agosto DC# 772216

Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445

AUGUST 1, 2016

Glen W. Hopkins, bureau chief
Criminal Justice standards
and Training Commission
P.O. Box 1489
Tallahassee, Florida 32302-1489

Dear Mr. Hopkins:

I was tranfer From Gulf C.I.-Annex on a
Emergency tranfer to this Institution Jackson
Correctional Institution on MAY 23, 2016, I was
abuse physically and verbally at Gulf C.I.-Annex
and they tranfer me inmate Agosto Felix DC# 772216
to this institution Jackson C.I. with 160 days
Disciplinary Confinement, with False Disciplinary
Reports, the Institution Inspector of this Institution
Jackson C.I. Mr. Basford, came to Disciplinary
Confinement on July 11, 2016, to interview me inmate
Agosto Felix DC# 772216, Regarding my Allegation of
abuse, physically and Sexual approach by the Staff at
Gulf C.I.-Annex, the Institution Inspector mr. Basford
Recorded my statements and state that he was
doing a Favor to the Institution Inspector at
Gulf C.I.-Annex MS. Turbee, I Report every inccident
using the Grievance Process, and Also I wrotte a letter
to the Inspector General at Tallahassee Mr. Jeffery
Beasley, due to the Facts that My Allegation are
Recorded in the Fixed Wing Audio video Cameras
P Dorm, Confinement, Administrative Confinement,
and Disciplinary Confinement, at Gulf C.I.-Annex
and no action by the Inspector General or the Institution
Inspector, has been take, to Alliviate the Problem and
abuse against me, Subsection 943.1395(5), Florida

statutes, specifies that the "employing agency" is charged with conducting internal investigations but the Institution Inspector at Gulf C.I.-Annex has engage, a Excessive delay to complete the investigation and the Administration still got me inmate Agosto Felix DC#772216, in Disciplinary Confinement until October 2016, on False Disciplinary Reports, Now since I arrived to this Institution Jackson C.I. Correctional officer A. Scott, which is post as the officer supervisor in Disciplinary Confinement H Dorm wing one (1) has been Harrasing me and Retaliation to my rights to File grievance and lawsuit, I have File several complaint, Grievance on this Correctional officer A. Scott, and no answer or Respond to my complaint, and the Institution Jackson C.I. are throwing away my Grievances and complaint on this Correctional officer that works House Post at H Dorm Disciplinary Confinement, can you please enforce the law on this institutions to prevent any harm, and abuse against me inmate Agosto Felix DC# 772216.

Respectfully Submitted
Felix Agosto DC# 772216
Felix Agosto DC# 772216
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445-3144


FOR MAILING BY:
AUG 0 1 2016

August 21, 2018

MELINDA MIGUEL (In P. Gen.)
PL-05 The Capitol
Tallahassee, Florida 32399

Provided to
Okaloosa Correctional Institution
on 8-21-18
for mailing, by _____

Dear Melinda:

On August 19, 2018 I Request Protective Custody (PM) in accordance with the department of correction Florida Administrative code 33-602.221 F.A.C., and captain Rushing, Nicholas A. Badge # RNA01 Refuse my Request and told me to go back to the dorm and get kill I don't care about you since you like to write grievances write up ms. Dove was present during the intire incident I went back to the dorm, while in the dorm Captain Rushing and the classification supervicer ms. Dove were making the Round and C-Dorm wing 3 cell 3203 and captain Rushing said to Sgt cadehead lock his "ass" at confinement, captain Rushing wrote me a False Disciplinary Report violation code 1-3 title spoken threats, I was beatup by gang members on July 31, 2018 because Sgt. cadehead send them, the camera at C-Dorm wing three (3) cell 3203 approx. 5:30 - 6:30 A.M. on July 31 2018 will show when the gang member beat me up and broke my nose two time I was beatup and their were asking me to paid them For Protection ever since that was the Reason I asic captain Rushing For Protection Coustody I went to medical on August 19, 2018 and

and that I Request Protective Custody but their ignore my allegation, also the housing post sergeant at confinement sgt. Hattaway told me that he was going to show me how they break a inmate, and show me a hard time since I File a law suit on six (6) correctional officers at century C. I., Felix Agosto V. Sgt. J. Coppenger, et al., case No.: 3:18 cv 1559/Rv/EmT, I fear for my life on this Institution okaloosa C.I. (115) and they using the gang member to beat me up can you please help me I got two years left on my sentence to go home.

Respectfully submitted

Felix Agost DC# 772216

Felix Agosto DC# 772216
Okaloosa Correctional Institution
3189 Colonel greg Malloy Read
Crestview, Florida 32539

SEPTEMBER 24, 2018

Provided to
Okaloosa Correctional Institution
on 9-24-18
for mailing, by F.A.

DIRECTOR SCOTT MCINERNEY
OFFICE OF EXECUTIVE INVESTIGATIONS
POST OFFICE BOX 1489
Tallahassee, Florida 32302-1489

Dear MR. McInerney:

I'm currently at confinement Pending Review From the State classification office, For protective management PM because the Institution classification Team (ICT) denied my Request on September 21, 2018, do to the False Investigation by the sergeant Investigator Sgt. D. Raben on september 15, 2018 while I was in my cell in confinement E2-117 Sgt. Raben Falsify statement and Records on the Report For my Request For protective management because Sgt. Robin conduct the First Investigation on August 25, 2018 which was never Process Sgt. Raben Falsifying Reports and document on the Department of correction Records Place my life in danger because I being abuse by his Fellow worker staff and the gang members that beat me up on camera, I was advice to writte to the Inspector General at FDoc Tallahassee Mr. Lester Fernandes but the staff officers that Pickup legal mail at confinement when they see is to the Inspector my letters don't go out and I keep a copy to Prove my statement Can you Please look into my complaint please because I Fear For my life.

RespectFully submitted,

Felix Agisto DC# 772216
Felix Agisto DC# 772216
Okaloosa Correctional Institution
3189 Colonel greg Malloy Road
Crestview, Florida 32539-6708

EXHIBIT B

September 24, 2018

LESTER FERNANDEZ (Insp. Gen.)
Department of Corrections
501 South Calhoun Street
Tallahassee, Florida 32399-2500

RE: Office of the Chief Inspector General Correspondence # 2018-08-31-0007.

Dear Mr. Fernandez:

I'm written this letter to inform you that this Institution Okaloosa C.I. (115) Administration are Falsifying documents and Report on the FDOC Record Regarding my Request For Protective Management (PM) on August 25, 2018 Sgt. Robin nigligently Failed to process the founding of the Insvestigation For PM, and then Sgt. D. Raben Investigate my Request For Protective PM on September 15, 2018 For the second time, and the Institutio Classification Team denied my Request For Protective Managemer do to the Facts that the PM Investigator Sgt. Raben Falsif Statement and Report on the FDOC Records to cover up his Fellow worker "Officers" Action and the "gang members" that assaulted me on camera I Fear For my life and I'm Requesting Mr. Fernandez to be Place on a Protective Management housin Unit Facility, Review of my Record on the FDOC will Prove tha' I being abuse by "staff" and "gang members" can you please look into my Issue I'm currently at Administrative Confinement Pending Review From the State classification office For PM.

Respectfully submitted,

Felix Agosto DC# 772216
Felix Agosto DC# 772216
Okaloosa Correctional Institution
3189 Colonel Greg Malloy Road
Crestview, Florida 32539, 6708

EXHIBIT C

October 15, 2018

DIRECTOR SCOTT McINERNEY
OFFICE OF EXECUTIVE Investigations
Post Office Box 1489
Tallahassee, Florida 32302-1489

Provided to
Okaloosa Correctional Institution
on  10-15-18 &
for mailing, by  F. A.

Dear McInerney:

I'm currently in Administrative Confinement Pending
Review From the Secretary Central Office Bereau Manag-
ement Policy and inmate's Appeal's Concern my Request For
Protective Management (Pm) Which the institution okalosa
C.I. (IIS) denied and the state classification office denied
do to the institution security administration investigation
Falsifying document's and Report's on the Protective Ma-
nagement investigation (Record) Placing my life in "danger"
with the "gang member's" and Staff abuse, then on
October 12, 2018 approx, 8:00 ~ 8:30 P.M. in E-dorm Con-
Finement wing two (2) Cell 2117, I was "Physically abuse"
assaulted by the housing Post Supervicer Sergeant D Daino
while Sgt. Daino was Conducting shower he escorted me
and officer J. Moeller escorted my cellmate inmate Holton
Jame to the shower and Sgt. Daino said to me and my cell
mate that we get to take a cold "Freeze" shower, I said to
Sgt. Daino You have not being letting other's inmate's
on this Shower because their don't have Hot water
Sgt. Daino said to me don't shower then and escorted
me back to my cell 2117 while going to my cell 2117 Sgt. Daino
"grab" my left hand with both of his hands and bend
my hand in a awkward manner causing me a lot of
pain on my wrist, and force me inside my cell 2117 onto
the Floor once inside my cell 2117 Sgt. Daino Put his Knee's
on my back and continue to bend my left hand in a
awkward manner" causing my Daino a my wrist For

no Reason. The Policys of FDOC is to investigate actions of a officer's who engage in Unproffessional Unbecoming Conduct and impose disation when appropiate. This Policy supplements the ethical standards in the American correctional officer's Association Code of ethics Policy. I being abuse by "staff" and the "gangmember" and this Institution are Falsifying document and Record to cover up the officer Placing my life in danger I Request Protective Management (PM) Pursuant with Rule 33-602.220, and 602.221, F.A.C, and I being denied even that I show evidences and the Fixed camera Audio video Recording FDOC Policy Procedure number 602.033(1)(A), and their not Following Procedures. I need Help I got 20 month to go home of a 15 Years Sentence and I been abuse by "staff" and "gangmember" and my Record and File on the FDOC will prove my statement Can you Please Help me. Thank you Kindly.

Respectfully Submitted,

Felix Agosto DC# 772216

Felix Agosto DC# 772216
Okaloosa Correctional Institution
3189 Colonel Gerg Malloy Road
Crestview, Florida 32539-6708

OCTOBER 15, 2018

LESTER FERNANDEZ (INP. GEN.)
Department of Corrections
501 South Calhoun Street
Tallahassee, Florida 32539-6708

RE: OFFICE OF the Chief Inspector General Correspondence
# 2018-08-31-0007.

Dear MR. FERNANDEZ:

On September 24, 2018 I wrote you a letter concern
Okaloosa C.I. (15) Security Administration but the
letter never made it out of the Institution see Formal
grievance Log# 1810-115-040, MY Protective Management
was denied do to the PM Sergeant Investigator, which
Falsify document, and Report on the FDOC Record, Now
I'm Pending Review From the OFFICE of the secreatery
Bureau Management Policy and inmate's Appeal, and
On October 12, 2018 I was Physically abuse by "staff"
assauited by Sgt. D. Daino and I Fear For my life I had
Filed a "Emergency grievance" to the Warden Michael,
Booker, For the safety and control of my life also I File
a Complaint For the assauit against me by Sgt. D. Daino
Can you please look into this Issues I Fear For my life
and Protective Management housing unit Facility Pursuant
with title 33-602.220, and 602.221, F.A.C. Thank you
kindly Respectfully submitted.

Felix Agosto DC#772216

**Provided to
Okaloosa Correctional Institution**

on  10-15-18  MC

for mailing, by  F.A.

Felix Agosto DC#772216
Okaloosa Correctional Institution
3189 colonel greg Malloy Road
Crestview, Florida 32539-6708

WORK INCOMING EXT...
JUN 29 2017
JACKSON CI

JUNE, 29, 2017

MELINDA MIGUEL (INP.GEN)
PL-05 THE CAPITOL
TALLAHASSEE, FLORIDA 32399

I inmate Agosto, Felix DC# 772216, was
Tranfer From Gulf Correctional Institution annex
to this Institution Jackson Correctional Inst.,
on a Emergency Tranfer on May 2016 do to the
"abuse" by the Department of Correction employees.
I Request (P.M.) Protective management on
June 11, 2017, because the "gang members" was
extortion me and have me inmate Agosto, Felix DC#
772216 paying them For Protection and submitting
special withdrowed Form to send money to they
Family member From my Inmate Trust Fund
accont, I Requet (P.m.) Protective Management
Per 602.220, f.A.C-, Capt. Brown have me written
a witness statement on June 11, 2017, and place
me in Administrative Confinement (AC) Y-Dorm, on
June 11, 2017 the housing Post sergeant at (A.C.)
Administrative Confinement Sgt. Granger have me
inmate Agosto, Felix DC# 772216 submitting a nother
witness statement For the same reason, I Fear
For my life Because this "gang member threat
me to kill me, I was suppose to see the
Institution classification Team (I.C.T.) but I
have not see anybody yet and the "gang members"
that are in Administrative Confinement are telling
me and others inmate that I'm a Snitch and
I'm on (P.M.) Protective management status
I never see or speak to anybody after

602.220, F.A.C. on June 24, 2017. Correctional officer B. William badge (WBL10) came to my cell in (AC) Administrative Confinement for me to fillout (write) a nother witness statement for the same Reason I Request (P.M.) Protective Management Rule 602.220, F.A.C., for the third (3) time I wrote the witness statement, while in (AC) Administrative Confinement (P.M.) status I was house with a nother inmate incompatible and force to clime to a top Bunk even that I show the housing Post sergeant my (FDOC) Health Slip/Pass because I inmate Agosto Felix DC# 772216 have numeros medical problems but the housing Post sergeant at (AC) Administrative Confinement Sgt. Johnson did not care I file a Emergency Brievance and the inmate was move the next day see Exhibit A attached to this letter, and Exhibit B, I wrote a Request to mental health ms. J. Humphrey, LMHC, wich came to see me on June 16, 2017, and I explain to her the "Abuse" against me at Administrative Confinement Y-Dorm by the housing Post sergeant Sgt. Johnson badge (JTL32) I also said to ms. Humbhrey that I have information concern were the "gang members" keep the cellolar Phone and Knife, ms. Huphrey notify Capt. Green the O.I.C. shift that day and told him capt. Green were they have them, the Knife and cellolar Phone, on June 26, 2017 the "gang member" assigned sergeant Sgt. Carter Pull me out of my cell at Administrative Confinement

To give him more information about "cellular Phones" and "Knife", I complied and give him names and cells numbers were the "gang members" Keep them because I fear for my life, sgt. carter said to me that I was going back to open Population Plaicing my life and anger a nother word to get "kill", I still have not see the institution classification Team (I.C.T) the "gang member" are in Administrative confinement (A.C) telling others inmate that I'm a snitch and that I request (P.m) Protective management status Per Rule 602.220, F.A.C. and the correctional officers also are telling the inmate that I'm a snitch, and are in (P.m.) my Allegations are recorded in the Unit Audio video Y-Dorm Administrative Confinment, I've Settle out on a civil claim against two Correctional Officers in this Institution Jackson C.I. Felix Agosto V. Sgt. schultheess et Al. case number 2:13-143 71-CV-DC8, and I have been Harrase, Retaliated, and abuse and Reprisal For my rights to File Grievances and lawsuit 1st and 14th Amendment right, I fear for my life and Regrest (P.M.) Protective Management Per Rule 602.220. F.A.C. I have 2½ years left and I want to makit Home I need "Help" Please.

I declare under the Penalty of Perjury that the Forgoing Facts are true.

Respectfully Submitted

Felix Agosto DC#772216
Felix Agosto DC#772216
Jackson C.I. 5563 10th street
Malone Fla.

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

1010-1708-0124

Mail Number: H1103 L
Team Number: 5
Institution: Century C.I. (106)

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☒ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other _____ |

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters H1103L | Job Assignment N/A | Date 08/20/17 |
|---|---|---|---|---|---|

## REQUEST

Check here if this is an informal grievance ☒

On August 17-2017, I inmate Agosto, Felix DC# 772216 was charge with a violation Disorderly Conduct 9-17, Rule of Prohibited Conduct, c/o Covan Badge# CBROM, Falsify Report D.R. Log# 106-171468, the Fixed during Camera in G-Dorm Wing one (1) will show that I complied with every order during the mass search approximately @ 2:10 - 2:55 P.M. and c/o B. Covan lie and Falsify Disciplinary Report Log# 106-171468, and place me in Administrative Confinement H dorm wing one (1), C/o Covan is in violation of Rule 208.002 F.A.C. No employee sure Falsify Report or document on the Department of correction.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto       DC#: 772216

---

## DO NOT WRITE BELOW THIS LINE          RECEIVED

## RESPONSE

Col Ofc.          10g

DATE RECEIVED: AUG 21 2017

ASST. WARDEN PROGRAMS
CENTURY CI

I reviewed the fixed wing camera system. It showed you being upset with ... offers handle and arguing with dc (Covan), there is no audio so I cannot verify what was said. All reden ... be send to the Use of Force unit.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _Denial_ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name) J. Burch | Official (Signature): | Date: 8/21/7 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005. Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

Page 1 of 2

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: E2-114C
Team Number: 7
Institution: Okaloosa C.I.(15 Institution

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☑ Security (Adams) | ☐ Medical ☐ Mental Health | ☐ Dental ☒ Other Inspector General |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters E2-114C | Job Assignment A/C | Date 1-2-19 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☒

I had submitted a Request Form DC6-236 to the Inspector general Regarding the Fixed camera video Tape on the incident on decem-ber 19, 2018 but I did not Receive a Response, on december 19 2018 I was stabed with a Knife on the back of My head on the way to the law library because I had a Callout to Pick up a legal do-cument a Petition For writ of Mandamus For Judicial Review Re-garding a disciplinary Report that Sgt. D. Daino# DJ D30 charged me with on october 12, 2018 while in Confinement, I was going to the law library call out on 12-19-208 an inmate James, washington DC# 386318 stabed me with a Knife For unknow Reasons, and I was charge with a False DR 2-4 Fighting, I'm Requesting the Fixed wing camera in D-dorm Side walk by the continuation attached

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview.  All informal grievances will be responded to in writing.

| Inmate (Signature): Felix Agosta | DC#: 772216 |
|---|---|

─────────── **DO NOT WRITE BELOW THIS LINE** ───────────   RECEIVED

**RESPONSE**  115-1901-0005                                  05d   **DATE RECEIVED:** JAN 02 2019

Informal Grievances
Okaloose C.I.

The actual incident was not captured on video. If you wish to seek charges write or call your attorney or speak with the inspector. You were issued a fighting dr because you were observed stabing Inmate washington.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is  Denied .  (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): Ofc R Adams | Official (Signature): Ofc R Adams | Date: 1-3-19 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

GRIEVANCE CONTINUATION SHEET

NAME: Agosto, Felix   DC# 772216   DATE: 1-2-19

☒INFORMAL  ☐FORMAL  ☐CENTRAL OFFICE APPEAL

Kitchen Regarding the incident on 12-19-18 to be
Retain, Preserved For Future Proceding and I want
to Press Charged on inmate Washington For assaulting
me with a Knife, in accordance With the Florida
department of Correction Policy Procedure 602.033
Fixed Camera.

Felix Agosto Dc# 772216

Signature of Grievant

Page 2 of 2

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Page 1 of 2
Mail Number: E2-114L
Team Number: 2
Institution: Okaloosa C.I. (15) Institution

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☑ Security (Mous) | ☐ Medical ☐ Mental Health | ☐ Dental ☒ Other Inspector General |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Felix Agosto | 772216 | E2-114L | A/C | 1-2-19 |

**REQUEST**                                    Check here if this is an informal grievance ☒

I had Submitted a Request Form DC6-236 to the Inspector general Regarding the Fixed camera video Tape on the incident on december 19, 2018 but I did not Receive a Response, on december 19, 2018 I was stabed with a knife on the back of my head on the way to the law library because I had a Callout to Pick up a legal document a Petition For writ of Mandamus For Judicial Review Regarding a disciplinary Report that Sgt. D. Dainat DJD30 charged me with on October 12, 2018 while in Confinement, I was going to the law library call out on 12-19-2018 an inmate James, Washington DC#386318 stabed me with a knife For unknow Reasons, and I was charge with a False DR 2-4 Fighting, I'm Requesting the Fixed wing Camera in D-dorm Side walk by the continuation attached

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto                  DC#: 772216

---

DO NOT WRITE BELOW THIS LINE        RECEIVED

**RESPONSE**
115-1901-0005                 05d    DATE RECEIVED:  JAN 0 2 2019
                                              Informal Grievances
                                              Okaloosa C.I.

The actual incident was not captured on video. If you wish to seek charges write or call your attorney or speak with the inspector. You were issued a fighting dr because you were observed stabing inmate Washington.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is ___Denied___. (Returned/Denied or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): Ofc R Adams | Official (Signature): Ofc R Adams | Date: 1-3-19 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

GRIEVANCE CONTINUATION SHEET

NAME: Agosto, Felix    DC# 772216    DATE: 1-2-19

☒INFORMAL  ☐FORMAL  ☐CENTRAL OFFICE APPEAL

Kitchen Regarding the incident on 12-19-18 to be
Retain, Preserved For Future Proceding and I want
to Press charged On inmate Washington For assaulting
me with a Knife, in accordance with the Florida
department of Correction Policy Procedure 602.033
Fixed Camera

Page 2 OF 2

Felix Agosto DC# 772216
Signature of Grievant

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: 41-103 5
Team Number: 6
Institution: F.S.P. - West Unit 2c

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☒ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Felix Agusto | 772216 | 41-103S | N/A | 5-28-19 |

## REQUEST

Check here if this is an informal grievance ☒

Informal Grievance: On May 16,2019 Inmate Agosto Felix DC# 772216 was place in administrative confinement on False charges by Sgt.L. Rodriguez badge# A0161 DR Log# 206-190306, while conducting count on N-dorm side one (1) Sgt. Rodriguez stop at my assigned cell N1-103S and order me to take off the head of the bunk my wash claw and bote I comply, the Sgt. Rodriguez continue to use profane language against me and order me to follow her to the laundry Room I comply, Sgt. Rodriguez place handcuff on me (behind my back and continue to use profane language against me. Security was call and Sgt. Johnson and officer T4US arrived. The Fixed camera Recorde the incident on 5-16-19 approx. 8:00 - 8:30 A.M. F.D.O.C. Policy Number 602.033 Fixed Camera and Sgt. Rodriguez violation title 33-208.002, F.A.c, Falsifying document and Report on the F.D.O.C. Records.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): Felix Agosto | DC#: 772216 |
|---|---|

---

**DO NOT WRITE BELOW THIS LINE** ~~RECEIVED~~

## RESPONSE

CSA          206-1905-0079          DATE RECEIVED: MAY 28 2019

FSP WEST UNIT GRIEVANCE

Your request for Administrative Remedy or appeal has been recieved, reviewed, and evaluated. You have previously submitted a Formal Grievance # 1905-206-015 for the same issue. Your request is in noncompliance with CH 33-103.014 (1) (M). Inmate Grievance Procedure which states: A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.

[The following pertains to informal grievances only] Returned Without Action

Based on the above information, your grievance is __Returned__. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): V.B.Jones | Official (Signature): [signature] | Date: May 31, 2019 |
|---|---|---|

**RETURNED TO INMATE**
**JUN 04 2019**

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1906-206-005 | FSP WEST UNIT | M1148S |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal has been received, reviewed and evaluated as follows;

Incident Report #W19-206-0556 was submitted with your allegations of Staff Misconduct as outlined in Chapter 33-208.002 being referred to the Office of the Inspector General for review. Upon completion of all necessary action, information will be provided to appropriate Administrators for final determination and handling. This may or may not result in a personal interview with you.

As action was initiated, you may consider your Grievance "Approved" from that standpoint. However, this does not constitute substantiation of your allegations.

M. Avery,
Administrative Lieutenant

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

RETURNED TO INMATE
JUN 18 2019

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

AGOSTO   FELIX _____    772216 _____    F.S.P. West Unit (20D)
Last   First   Middle Initial      DC Number          Institution

---

**Part A – Inmate Grievance**

GRIEVANCE APPEAL Informal grievance Response Log# 206-1905-0079, attached The Responding Authority, Response that I have already submitted a Formal grievance Regarding Sgt. L. Rodriguez badge# RODRL Falsifying documents and Report on the FDOC Records, the only Formal grievance I submitted concerning this Issue was a Grievance Appeal on the DR Team Hearing Finding and Action, DR Written by Sgt. L. Rodriguez, In accordance with 33-103.005(2), F.A.C., Inmate Agosto, Felix DC# 772216, can start the grievance Process Following the three(3) step, when filing a complaint. on May 16, approximatly 8:00 - 8:30 A.M., Year 2019 Sgt L. Rodriguez wrote me a False charge DR Log# 206-190306, 1-4 title Disresp. To officials, Review of the Fixed camera on N-dorm side over N-bunk U1-102S will Show that Sgt. L. Rodriguez give me a verbal Order and I comply to take off the head of the bunk my washclaw and Boxe, then Sgt. Rodriguez continue to use Profane language against me and order me to Follow her to the laundry Room where She Place me on hand cuff behind my back and call Security to Place me in Administration confinement on False charges, Fixed camera on N-dorm side on(N) on MAY 16, 2019 all vox. 8:00 - 8:30 A.M. will Prove my allegations and Sgt. Rodriguez engage in unProFessional UNbecoming Conduct, and cruel behavior, C.o. Ethical Stan. conduct 2.1 C.o. Shall carry out their duty with intergrity, fairness, and imPartialy.

REMEDY: Review of the Fixed cameras on N-dorm State above will Prove my allegations, and Sgt. Rodriguez violation of title 33-208.002 F.A.C. written False charge DR Log# 206-190306, and this Issue need to be address if to Prevent Retaliation, Harrasment, and Reprisal by her co-workers.

JUNE 10, 2019 _____                          Felix Agosto DC# 772216 _____
DATE                                   SIGNATURE OF GRIEVANT AND D.C. #

---

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**          0 / N/A
10 G                                                              #        Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

JUN 1 0 2019

FSP WEST UNIT GRIEVANCES

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____    Institutional Mailing Log #: 1906-206-005 _____    _____
(Received by)

**DISTRIBUTION:**    INSTITUTION/FACILITY          CENTRAL OFFICE
INMATE (2 Copies)          INMATE
INMATE'S FILE          INMATE'S FILE - INSTITUTION./FACILITY
INSTITUTIONAL GRIEVANCE FILE          CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☒ Assistant Warden    ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

Agosto, Felix          772216        Okaloosa C.I. (115)
Last    First    Middle Initial    DC Number    Institution
1809-115-024                                  Sec. 109 Adams

---

**Part A – Inmate Grievance**

GRIEVANCE OF REPRISAL Pursuant with title 33-103.017(1)(2) F.A.C,
on September 5, 2018 approx, 6:30 - 7:45 P.M. while conducting shower
at E-dorm confinement wing two(2) officer D. Savage told the inmates
orderly, which are From E-dorm wing three(3) "gang member" that
I Felix Agosto DC# 772216 are a "snitch" and a checking that I
"snitch" on some gang member and sgt. cadehead and that is the
reason I'm under the Protective management(PM) status, on
my way back to my assigned cell E2-117, from the Shower escorted
by officer D. savage he told me that I was a "snitch" and a "police"
screaming to the housing unit wing and then he place me in my cell
E2-117, my allegation are Recorde in the Fixed wing Audio video
camera at E-dorm confinement wing two(2) approx, 6:30 -
7:45 P.M. on September 5, 2018 department of correction Policy
procedure 602.033, Also officer D. Savage stated that he was
goin to "FLIP" my cell upside down to teach me a "lesson," I'm
litigating a civil case on the U.S. district court on six(6)
correctional officers from Century C.I. Felix Agosto V. Sgt.
coppenger case no. 13:18 CV 1559/RV/EMT, and I have legal
documents from the court, officer D. Savage are placing my life
in danger with the "gang member" and other inmates from the
housing unit wing. Rule making Authority 944.09 FS, and law Empleme-
nted 944.09, 944.241 FS.
REMEDY: Review the Fixed wing camera stated above to prove my
allegation and statement, and Address this issue with c/o D. savage
for my own welfare and protection for my life and Retaliation.
September 13, 2018                         Felix Agosto DC# 772216
        DATE                      SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

0                N/A
#              Signature

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled to Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**RECEIVED**

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on SEP 13 2018          Institutional Mailing Log #: _____
                     (Date)

ASST. WARDEN PROGRAMS          _____          _____
SWAI-OKRA-01                                            (Received By)

DISTRIBUTION:     INSTITUTION/FACILITY          CENTRAL OFFICE
                  INMATE (2 Copies)             INMATE
                  INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                  INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                                CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: E1-111L
Team Number: 2
Institution: Okaloosa C.I. (115)

Classification officer COLLINS,L badge# CLL32

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters E1-111L | Job Assignment D/C P.M. | Date 10-25-18 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☐

Ms. Collins, I Received a grievance Response From the Central office of the Secretary Bureau Policy Management and inmate's Appeals, stating that according to my automated File my Request For Protective management is currently under review at the institutional level, and upon notification of the state classification office's Final decision which denied me on october 2, 2018. I appeal to the Central offices on october 4, 2018, I also submitted another witness statement For Protective management(pm) Fear of Staff do to the "Physical abuse" unnecessary use of Physical Forced by Staff on october 12, 2018 which I was assaulted on the Fixed wing camera in E-dorm confinement, can you please tell me why the Automated File at Tallahassee show I'm still under Review by the Institution

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview.  All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto        DC#: 772216   RECEIVED

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                              DATE RECEIVED:    OCT 2 5 2018

                                                    Okaloosa
                                                    Classification

The last entry made in our database was on 10-23-18 which states "appeal is pending of inmate's denial for protection" - State class. officer so, as of today the appeal is pending central office review. I do not know why you would receive this information unless the database was not updated at that time. You will remain in your current status until further notice received.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____ (Returned, Denied, or Approved.) If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): L Collins | Official (Signature): L Collins | Date: 10-25-18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

COPY

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.
DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

Mail Number: E1-111L
Team Number: 2
Institution: Okaloosa C.I (us)

Classification officer COLLINS,L badge# CLL32

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☒ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name: Felix Agosto | DC Number: 772216 | Quarters: E1-111L | Job Assignment: O/C P.M. | Date: 10-25-18 |
|---|---|---|---|---|---|

**REQUEST** _____ Check here if this is an informal grievance ☐

M.S. Collins, I Received a grievance Response from the Central office of the secretary Bureau policy management and inmate's Appeals, stating that according to my automated file my Request for Protective management is currently under review at the institutional level, and upon notification of the state classification officer Final decision which denied me on october 2, 2018 ___ I appeal to the Central offices on october 4, 2018, I also submitted another witness statement for Protective management (pm) Fear of staff do to the "Physical abuse" unnecessary use of Physical Forced by staff on october 12, 2018 which I was assaulted on the Fixed (wing camera in E-dorm confinement, can you please tell me why the Automated file at Tallahassee show I'm still under Review by the institution

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto      DC#: 772216      RECEIVED

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                    DATE RECEIVED: OCT 2 ~ 2018

Attention:
Classif...

The last entry made in our database was on 10-23-18 which states "appeal is pending of inmate's denial for protection" - state class. officer so, as of today the appeal is pending central office review. I do not know why you would receive this information unless the database was not updated at that time. You will remain in your current status until further notice received.

[The following pertains to informal grievances only!]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): L Collins | Official (Signature): S. Collins | Date: 10-25-18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

*(Instructions on Back)*

Mail Number: F2-202L
Team Number: 4
Institution: Charlotte C.I

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental MR. KATALAIN |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☑ Other Inspector S.F.R.C |

| FROM: | Inmate Name AgosTo, Félix | DC Number 772216 | Quarters F2-202L | Job Assignment InsGrounds | Date 01/16/13 |
|---|---|---|---|---|---|

## REQUEST                                    Check here if this is an informal grievance ☐

Sir it been over 30 days since I Resulmit the Request Form with the attachment of the Grievances From the Assault by the staff at south Florida Reception Center, Log# 07-240-12 and Log# 1207-402-155 date 07-18-2012 I would like to Know Please the Final action or Resolution on the Investigation, I haven't Received No Response since I Resulmit the Request.

Félix Agosto Dc# 772216

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview  All informal grievances will be responded to in writing.

---

## DO NOT WRITE BELOW THIS LINE

## RESPONSE                                    DATE RECEIVED: 1-18-13

Your complaint was reported to the Inspector General's Office & it was "Referred to Management". Therefore if you need or want a status update, you will need to request this form the warden at SFRC, not the Inspector Generals Office.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): J. Mclaughlen | Date: 1-18-13 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.

DC6-236 (Effective 10/19/09)

Incorporated by Reference in Rule 33-103.019, F.A.C.

WITH

OCT 3 1 2018

DEPARTMENT OF CORRECTIONS
BUREAU OF INMATE GRIEVANCE APPEALS

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 18-6-42312 | OKALOOSA C.I. | E2117L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated. The response that you received at the formal level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

Your administrative appeal is denied.

C. Neel

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 10/18/2018 DATE |

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

RECEIVED
OCT 08 2018

Page 1 of 2

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

AGOSTO, FELIX
Last     First     Middle Initial

772216
DC Number

Okaloosa C.I. (115)
Institution

---

Part A – Inmate Grievance

18-10-42312

GRIEVANCE APPEAL RESPONSE Log # 1809-115-070 Pursuant with title 33-103.007 (3)(a)(b)(4)(a)(b)(c)(e)(f)(5)(a)(b)(c) and (d), F.A.C. The Respondents Denied my complain Knowing that my evidence support my allegation Regarding Sgt. O. Raben Falsifying documents and Reports on the protective Management Investigation, and Place my life in danger.
GROUND ONE: The Responde asst. Warden over Program and the acting Warden negligently Failed to Review the Fixed wing camera Audio video on E-dorm Confinement wing two (2) cell 2117, on September 15, 2018, to Prove my allegation. Sgt. O. Raben Falsify documents and Reports, I did not became agitated or change my story because Sgt. O. Raben Rush me to write the witness statement and told me he don't have time For me while on the cell door Conducting the supPous investigation For my Request For P.M.
GROUND TWO: The Respondent asst. warden over Program and acting warden conspire with Sgt. O. Raben Falsifying documents Regarding Review of my Canteen history and stated that it don't support my allegation that the gang members had me paying them For Protection with canteen Item and the Respondent change my allegation that inmate Bank Phones, and JPay did not reveal any other People contacting me or paying me. I Receive money every month From my Family see Inmate Trust Fund Account Summary "EXHIBIT" A attached. This statement of my inmate Trust Fund account Prove that the Respondent and Sgt. O.Raben Falsify document and Report and Placing my life in danger because the Institution classification Team (I.C.T) Denied my PM and recommended For me to be released to open population and conspire with the safety and costudy of my life.
GROUND THREE: The Respondent stated that the description Continuation

October 01, 2018
DATE

Felix Agosto oct 772216
SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

0+    N/A
#     Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
OCT 01 2018
ASST. WARDEN PROGRAMS
OKALOOSA CI

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____

Institutional Mailing Log #: 18-525

(Received By)

DISTRIBUTION:

| INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|
| INMATE (2 Copies) | INMATE |
| INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | CENTRAL OFFICE GRIEVANCE FILE |

1809-115-070
10g (115)
Sgt Raben

DC1-303 (Effective 11/13)

RECEIVED
OCT 01 2018
ASST. WARDEN PROGRAMS
OKALOOSA CI

Incorporated by Reference in Rule 33-103.006, F.A.C.

# GRIEVANCE CONTINUATION SHEET

NAME: Felix Agosto    DC# 772216    DATE: october 01, 2018

☐ INFORMAL   ☐ FORMAL   ☒ CENTRAL OFFICE APPEAL

I gave to Sgt. Raben does not match the inmates in those Cell but Review of the Fixed wing Camera in c-dorm wing three (3) cell 3203 on July 31, 2018 will prove that I was being assaulted by the unforgiven (UF) "gang member" and my blood from my Broken nose all over the floor in Front of my Cell 3203, and Sgt. Raben Falsifying document and Reports on the protective management (PM) Investigation placing my life in danger.

REMEDY: Review all the document and Report on the (PM) Protective management Investigation, and Review the Fixed wing camera and Audio video Regarding the PM Investigation and place on a Protective management housing unit Facility in accordance with title 33-602. 221, F.A.C, For my Safety and Control with my life and address okaloosa C.I. Administration Security operation For the Safety of the "Inmates" and action Take against Sgt. Raben Pursuant with title 33-208. 002-003, F.A.C, and prevent Reprisal and Retaliation do to the Fact that I'm litigating a Case against Correctional Officers, Felix Agosto v. Sgt. coppenger et al, Case No. 3:18 CV 1559/RV/EMT. Thank you kindly Respectfully Submitted.

Signature of Grievant    DC# 772216

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1809-115-070 | OKALOOSA C.I. | E2117L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Inmate Agosto, your Formal Grievance seeking Administrative Remedy has been received, reviewed, and evaluated with the following findings:

Your allegation concerning Sgt. Raben falsifying documents and reports on the Protective Management Investigation are unfounded.  Sgt. Raben did not falsify any documents or reports.  You gave him cell numbers and he followed up on this information by investigating your allegations.  Furthermore, the description you gave does not match the inmates in those cells.  You became agitated during the interview and kept changing your story.

Also, be advised a review of your canteen history does not support your claims.  Inmate Bank, phones, and JPay did not reveal any other people contacting you or paying you.  There is no evidence to support your claims.

Your request for PM was denied by ICT.

Based upon the above information, your grievance is Denied.

You may obtain further Administrative Review of your complaint by obtaining form DC1-303, request for Administrative Remedy or Appeal, completing the form, providing attachments as required by Chapter 33-103.007 (3) (A) and (B) F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 09/28/18 DATE |

# INMATE REQUEST

Mail Number: _____
Team Number: 2
Institution: Okaloosa C.I./15

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☒ Asst. Warden | ☒ Security Adams | ☐ Mental Health | ☐ Other Colonel E. Hall |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Felix Agosto | 772216 | E2-117L | AK | 9-24-18 |

**REQUEST**                                     Check here if this is an informal grievance ☒

On September 15, 2018 approx 3:45-4:00 P.M. Sgt. Raben came to my cell at E-dorm Confinement Wing two cell E2-117, to investigate my Request For Protective Management (PM) For the second Time, Sgt. Raben give me a witness statement and told me how long I was going to take because he did not have time For me, I said I be Fast, I went to see (ICT) Institution Classification Team, For my Review For PM, and I was denied because Sgt. Raben Falsify statements on the investigation For PM, to cover up his Fellow staff employees and the "gang members", Review of the Fixed camera at E-dorm wing two (2) cell E2-117 approx 3:45-4:00 P.M. on September 15, 2018, will Prove my allegations stated above and Sgt. Raben Falsifying statement and Record on the FDOC, violation title 33-208.002, F.A.C. and take action in accordance with the F.A.C. and laws.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): _Felix Agosto_                    DC#: 772216

---

**DO NOT WRITE BELOW THIS LINE**                    RECEIVED

# RESPONSE
115-1809-0122                    DATE RECEIVED: SEP 24 2018
02a
Informal Grievances
Okaloosa C.I.

This was addressed on informal grievance 115-1809-0121.

---

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _Return_ . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Print Name) Ofc R Adams        Official (Signature): Ofc R Adams        Date: 9-24-18

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**INMATE REQUEST**

assistance Warden over Security Barton

Team Numb..... 2

Institution: Okaloosa C.I. (15)

| TO: (Check One) | ☐ Warden ☒ Asst. Warden | ☐ Classification ☐ Security Adams | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other A.W. Barton |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters E2-117L | Job Assignment A/C | Date 10-15-18 |
|---|---|---|---|---|---|

**REQUEST**                    Check here if this is an informal grievance ☒

INFORMAL Grievance, on october 12, 2018 approx, 8:00-8:30 P.m. at E-dorm confinement wing two (2) Cell 2117. I was Physically abuse by Sergeant D. DAino the housing Post Supervicer While Sgt. D. DAino, was Conducting shower Me and my cell mate inmate Holton were escorted to the shower Sgt. D. Daino had custody of me, we was told by officer moelly and Sgt. Daino that we got to take a Cold "Freeze" shower I said to Sgt. Daino you have not being leting imates shower on this shower because the shower don't have Hot water why you Placing us on this shower, Sgt. Dainosaid don't shower then and escorted me back to my cell 2117, While going to my cell 2117 Sgt. Daino "grab" my left hand with both of his hands and bend My hand in awkward manner causing me a lot of Pain on my wrist, and force me inside My cell onto the floor, Continuation attached.

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

Inmate: (Signature): Felix Agosto        DC#: 772216    RECEIVED

**DO NOT WRITE BELOW THIS LINE**                                    OCT 15 2018

**RESPONSE**  115-1810-0103        10a    DATE RECEIVED: Informal Grievances Okaloosa C.I.

You were involved in a use of force on 10-12-18. Your allegations of staff abuse and staff misconduct have already been reported. This Grievance is approved for that purpose only and does not constitute your allegations.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _Approved_ . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): Cfc R Adams | Official (Signature): Cfc R Adams | Date: 10-16-18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by submitting form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)
                        Incorporated by Reference in Rule 33-103.005, F.A.C.

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

(Instructions on Back)

Mail Number: E2-116 L
Team Number: 2
Institution: Okaloosa C.I. (115)

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☒ Security | ☐ Medical ☐ Dental | ☐ Other |
|---|---|---|---|---|

Colonel K. Hall

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters E2-116L | Job Assignment AC | Date 08-22-18 |
|---|---|---|---|---|---|

**REQUEST**                                     ☒ INFORMAL Grievance

Informal Grievance, on August 19, 2018 I request Protective Management PM to Captain Rushing, nicholas, A, badge# RNA01 in accordance with 33-602.221 F.A.C, and Captain Rushing Refuse My Request and give me a False charge DR, and Place me In AC, on July 31, 2018 I was beatup by a gang member on C-Dorm wing three (3) approx. 5:30-6:30 A.M. Sgt. Cade head send the gang member to beat me up and the gang member had me Paying For Protection with Canteen Items, I have not write a witness statement because Captain Rushing charge me with a False DR and Refuse My Request For pm because my Face is swollen and my nose broke, and two black eyes, my allegation are Recorded on the Fixed wing camera, at C-Dorm wing three (3) approx. 5:30-6:30 A.M. on July 31, 2018 cell 3203, I Fear For my life and need Pm status and Review. Felix Agosto DC# 772216

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

**DO NOT WRITE BELOW THIS LINE**

RECEIVED
AUG 22 2018
Informal Grievances
Okaloosa C.I.

**RESPONSE** 115-1808-0121        09F      DATE RECEIVED:

Per Chapter 33-103-014 (1) (p) The inmate has filed more than one appeal of a grievance. You filed a Formal Grievance pertaining to this same issue which was recurned by this office on the same day of 08/22/18. Your Formal Grievance will be addressed and responded to as this is an Issue that can be grieved at the Formal Grievance Level by bypassing the Informal Grievance level.

Returned without Processing

[The following pertains to informal grievances only:]
Based on the above information, your grievance is Returned. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): J.D. Mason   J.D. Mason | Date: 08/22/18 |
|---|---|

Distribution: White -Returned to Inmate    Pink -Retained by official responding, or if the response is to an
Canary -Returned to Inmate              informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

# INMATE REQUEST

Team Number: 2
Institution: OKALOOSA CI (115)

| TO: (Check One) | ☐ Warden ☒ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☒ Other Colonel E. Hall |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters E2-172 L | Job Assignment A/c | Date 10-15-18 |
|---|---|---|---|---|---|

**REQUEST**      Check here if this is an informal grievance ☒

INFORMAL GRIEVANCE, on october 12, 2018 Sgt. D. Daino badge# DJD30 wrotte me inmate Agosto, Felix Dc# 772216 a False Disciplinary Report Log#115-181495 Disobeying order, I was "physically abuse" unnecessary use of Physical Force by Sgt. D. Daino and to coverup his action Sgt. Daino wrotte me a False charge DR, the Fixed wing camera Audio video Recording in E-dorm Confinement wing two(2) cell 2117 on october 12, 2018 approximately 8:00-8:30 P.M, will show that I did not disobeying any order given by Sgt. Daino, Sgt. Daino violated title 33-208.002(12)(14), F.A.C, no employee Shall Falsify reports or records on the FDOC, and no employee shall apply Physical Force to the Person of an inmate excep as Provided in Rule 33-602.210, F.A.C; A Prisoner has a cause of action when the Prisoner alleges that Prison officials Filed disciplinary Report charges based upon False allegations against the Prisoner, Audio and Video. 602.033.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): Felix Agosto | DC#: 772216 |
|---|---|

**DO NOT WRITE BELOW THIS LINE**     ~~RECEIVED~~

# RESPONSE
115-1810-0125      05a     DATE RECEIVED: OCT 16 2018

Informal Grievances
Okaloosa C.I.

The use of force video was reviewed and is in compliance with procedure. You refused Sgt Daino's verbal order. The DR was truthful and factual as written.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is **Denied** (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): Ofc R Adams | Official (Signature): Ofc R Adams | Date: 10-17-18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C, attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

EXHIBIT 7

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse

TO: ☒ Warden   ☐ Assistant Warden   ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

AGOSTO, FELIX                772216        Okaloosa C.I. (115)
Last    First   Middle Initial      DC Number         Institution
18D-115-066                                    O9F  G.C.

Part A – Inmate Grievance

GRIEVANCE APPEAL, Informal Grievance Response Log# 115-1810-0125 attached
In accordance with 33-103.006, F.A.C, and Request For Administrative Remedy
or Appeal. The Respondent security officer R. Adam Response that the use of
Force video was Reviewed and is in Compliance with procedure, that I re-
Fuse Sgt. Daino's DS030 verbal order, and the OR Log# 115-181495 is truthful
and Factual as written. The Respondent Falsify statement Responding that
the use of Force video was reviewed, if the Fixed wing Audio video was
Reviewed the video show that at "no" time me and my cellmate was on
the upper tier "shower's" when Sgt. Daino and officer J. Moeller pull us
out of the bottom tier cell E2-117, they escorted us to the bottom tier
shower's, the statement of Facts on the OR Log# 115-181495, stated that
Sgt. Daino was escorting me back to my cell E2-117 From the wing two (2)
upper tier shower's in E-dorm confinement, Falsifying document and
Report on the FDOC Record, the statement of Facts don't support the charge
disobeying any order and violated title 33-601.304(2) F.A.C, I was phy-
sically abuse, unnecessary use of Physical Force by Sgt. Daino with
"injuries". Therefore the Respondent security officer Adam could'nt have Re-
view the use of Force Audio video Recording because, it will prove
my allegation and statement is true, and Sgt. Daino Falsifying Report
on the FDOC Record(s) violating title 33-208.002(1) and (14), F.A.C.
REMEDY: Review the Fixed wing Audio video Recording on october 12, 2018 in
E-dorm confinement wing two (2) cell 2117 bottom tier approx 8:00-8:30PM
Review the OR Log# 115-181495, expunge the OR and Follow FDOC Policy
Procedure number 602.033(1)(F), and Rule 33-208.002-003, F.A.C. an 602-
210, F.A.Cs to Avoid Reprisal and Retaliation with my life and custody.

october 18, 2018                    Felix Agosto DC# 772216
DATE                          SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:   Ø-1  N/A
                                                                    #    Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____ DC Mail# _____    Institutional Mailing Log #: _____    (Received By)

RECEIVED
OCT 18 2018
DC1-303 (Effective 11/13)
ASST. WARDEN PROGRAMS
OKALOOSA CI

DISTRIBUTION: INSTITUTION/FACILITY (2 Copies)
INMATE'S FILE
INSTITUTIONAL GRIEVANCE FILE

CENTRAL OFFICE
INMATE
INMATE'S FILE - INSTITUTION/FACILITY
CENTRAL OFFICE INMATE FILE
CENTRAL OFFICE GRIEVANCE FILE

Incorporated by Reference in Rule 33-103.006, F.A.C.

**EXHIBIT F**

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: E2-171L
Team Number: 2
Institution: OKALOOSA CI (W)

| TO : (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
| | ☐ Asst. Warden | ☒ Hearing | ☐ Mental Health | ☒ Other Colonel E. Hall |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
| | Felix Agosto | 772216 | E2-171L | A/c | 10-15-18 |

**REQUEST**                           Check here if this is an informal grievance ☒

INFORMAL GRIEVANCE on October 12, 2018 Sgt D. Daino badg# DJD30 Wrotte me inmate Agosto, Felix Dc# 772216 a False Disciplinary Report Log# 115-181495 in soevering order, I was physically abused unecessary use of Physical Force by Sgt. D. Daino and to coverup his action Sgt. Daino Wrotte me a False charge DR, the Fixed wing camera Audio video Recording in E-dorm confinement Wing two(2) cell 217 on october 12, 2018 approximately 8:00 - 8:30 P.M. will show that I did not disobeying any order given by Sgt. Daino. Sgt. Daino violated title 33-208.002(2)(4), F.A.C, no employee Shall Falsify reports or records on the FDOC, and no employee Shall apply physical Force to the person of an inmate excep as provided in Rule 33-602.210, F.A.C, A prisoner has a cause of action when the prisoner alleges that Prison officials Filed disciplinary Report charges based upon False allegations against the prisoner, Audio and video log 2-033.

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): Felix Agosto | DC#: 772216 |

---
**DO NOT WRITE BELOW THIS LINE** --------- RECEIVED --------

**RESPONSE**   115-1810-0125                          DATE RECEIVED: OCT 18 2018
                                                   05a
                                                              Informal Grievances
                                                              (Okaloosa C.I.)

The use of force video was reviewed and is in compliance with procedure. You refused Sgt Daino's verbal order. The DR was truthful and factural as written. ☐

[The following pertains to informal grievances only:]
Based on the above information, your grievance is ___DENIED___ (Returned, Denied, or Approved. If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.)

| Official (Print Name): Ofc R Adams | Official (Signature): Ofc R Adams | Date: 10-17-18 |

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)
                    Incorporated by Reference in Rule 33-103.005, F.A.C.

**EXHIBIT E**

**Witness Statement**

**State of Florida** **Log# 115-181495** **Department of Corrections**

**I. Identifying Inmate Information**

**DC# 772216** **Inmate Name Agosto, Felix**
**Violation Code and Short Title [illegible]**
**Date Report Written 10/12/2018**

**II. Witness**

☐ Staff Member: Name and Position ____________________
☐ Other Individual: Name ____________________
☑ Inmate: DC# **772216** Name **Agosto, Felix**

**III. Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature ____________________ Date __________
Signature of Investigating Officer ____________________ Date __________

**IV. Statement** on october 12, 2018 I was physically abuse assaulted by Sgt Daino while sgt Daino was conducting shower he try to place me in a cold Freeze Shower on the Bottom Tier in E-dorm confinement wing two (2) then SGT. Daino Said you don't want to shower and escorted me back to my cell 2117 Bottom tier and then use physical Force abusing me assaulted me For no Reason and Force me inside the cell 2117 onto the flour and continue to physically abuse me I did not disobeying no order and the Fixed wing Audio video camera Recording on october 12, 2018 will prove my allegation and statement. Inmate Palm in cell 2107 and inmate John daniels and inmate neil cell # 2108 witness everything and my cell mate inmate Holton James and I fear For my life

Witness Signature [signature] Date 10-15-18
Signature of Investigating Officer [signature] Date 10-15-18

DC6-112C (Revised 5-00) Original: Inmate File Copy: Central Office

| | **Witness Statement** | |
|---|---|---|
| **State of Florida** | Log# _115-181495_ | **Department of Corrections** |

**I.**   Identifying Inmate Information

DC#                    Inmate Name

Where did the incident occur

Date of Incident

**II.**   **Witness**

☐   Staff Member:  Name and Position   _____

☐   Other Individual:  Name   _____

☒   Inmate:   DC# _308616_   Name _Robert PALM_

**III.**   **Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____   Date_____

Signature of Investigating Officer_____   Date_____

**IV.**   **Statement** I SAW Seargeant DANO Pull Inmates out for shaves in 2117 when Escorting them to shaves I then SAW MR. DANO Bringing one Inmate back. The Inmate was trying to Go back to the shower At which Time this official Took the Inmate Pulled him into his cell then I SAW the Inmate Got thrown to the Ground not Really Sure why then I him yelling your hurting me which this official was on Top of him when It looked like one of his Legs was Bent in a un natural position then soon As the LT walked out of this cell E217 official Begins to do something to the Inmates Hands which were Already in Restraints

Witness Signature _Robert P. Palm_   Date _6-15-18_

Signature of Investigating Officer _____   Date _10-15-18_

DC6-112C (Revised 5-00)          Original: Inmate File          Copy: Central Office

**Witness Statement**

**State of Florida**     Log# _115-18145_     **Department of Corrections**

**I.**   Identifying Inmate Information

Date _____   Inmate Name _____
_____
_____

**II.**   **Witness**

☐   Staff Member: Name and Position _____
☐   Other Individual: Name _____
☑   Inmate:     DC# _Y62805_     Name _John J Daniels_

**III.**   **Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____     Date _____
Signature of Investigating Officer _____     Date _____

**IV.**   **Statement**

The inmate in 2117 bottom of E-dorm did Nothing
Wrong he was in handcuffs on J.D. and backing
out of his cell for the shower When sargeant
Danio slammed him on the ground. It appeared
as thow sargeant Danio was trying to break the
inmates arm. at No time did I see this inmate resist
or try and fight Back. I seen the whole inccident because
I was on J.D. at the door waiting on showers and his cell
Is right accross from mine.

Witness Signature _John J Daniels_     Date his cell 11-10-15-2008
Signature of Investigating Officer _____     Date _10-15-8_

DC0-112C (Revised 5-00)          Original: Inmate File          Copy: Central Office

| | **Witness Statement** | |
|---|---|---|
| State of Florida | Log# _113-181495_ | Department of Corrections |

**I.** Identifying Inmate Information

**II.** **Witness**

☐ Staff Member:  Name and Position _____
☐ Other Individual:  Name
☒ Inmate:   DC# _D96502_  Name _Butler_ _neal_ _Neal Bobby_

**III.** **Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____  Date_____
Signature of Investigating Officer_____  Date_____

**IV.** **Statement**   I seen sgt Danio ~~kept~~ Jump up and
Down on The Inmate Arm and He
Kept Yelling Please Stop and sgt
Danio Just Kept Push Harderd
and Harden

Witness Signature _Butler nea_   Date _10-15-18_
Signature of Investigating Officer _____  Date _10-15-18_

DC6-112C (Revised 5-00)                Original: Inmate File          Copy: Central Office

| Witness Statement | | |
|---|---|---|
| **State of Florida** | Log# _115-81446_ | **Department of Corrections** |

**I.** Identifying Inmate Information

DC#: _____
Inmate Name: _____
Violation Code and Short Title
Description Written:

**II.** **Witness**

☐ Staff Member: Name and Position _____
☐ Other Individual: Name _____
☒ Inmate: DC# _N01173_ Name _Holton James_

**III.** **Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____ Date _____
Signature of Investigating Officer _____ Date _____

**IV.** **Statement**

Inmate Agosto didnt Refuse to go back to his Cell, they tryed to put us in the Cold Shower on the Lower tier, when inmate Agosto tryed to talk to The L.T about the Cold Shower, Sgt. Danio got Physical with inmate agosto and throw him on his Bell on the floor and started Physically abusing inmate agosto

Witness Signature _James Halt_ Date _10-15-18_
Signature of Investigating Officer _____ Date _1/2-15-18_

DC6-112C (Revised 5-00)        Original Inmate File        Copy: Central Office

EXHIBIT B

2. Florida department of corrections Florida administration code and Policy.





**JULIE L. JONES**
**SECRETARY**

**PROCEDURE NUMBER:**   **602.033**

**PROCEDURE TITLE:**   **VIDEO   CAMERAS/   HOUSING   UNIT   FIXED
CAMERA   DIGITAL   VIDEO   MAINTENANCE
AND RETENTION**

**RESPONSIBLE AUTHORITY:** **OFFICE OF INSTITUTIONS**

**EFFECTIVE DATE:**   **NOVEMBER 27, 2017**

**INITIAL ISSUE DATE:**   **SEPTEMBER 6, 2002**

**SUPERSEDES:**   **NONE**

**RELEVANT DC FORMS:**   **DC1-801, DC2-210, DC6-207, DC6-209, DC6-210, AND DC6-
282**

---

**ACA/CAC STANDARDS:**  **NONE**

**STATE/FEDERAL STATUTES:**  **NONE**

**FLORIDA ADMINISTRATIVE CODE:**  **RULE 33-602.210, F.A.C.**

Procedure 602.033

**PURPOSE:** To provide general guidance and direction for the maintenance and retention of digital recordings produced by recording equipment from fixed security cameras within any housing unit.

**DEFINITIONS:**

(1) **Digital Recorder,** where used herein, refers to a device used to record from multiple video cameras in a digital format to the recorder's hard drive and does not require the storage of or changing of videotapes. A segment or specific timeframe of digital video from the recorder can be transferred to disk when required for review or extended retention.

(2) **Digital Recording Clip,** where used herein, refers to a recorded segment – which can be audio, video, or both – which is downloaded to a disk or electronic file.

(3) **Fixed Video Cameras,** where used herein, refers to video cameras mounted within any housing unit to record the activities of a specified area. These camera systems generally do not have audio capability and do not provide coverage of cell interiors.

(4) **Retention Schedule,** where used herein, refers to a 30-day period in which all surveillance recordings will be maintained for fixed video cameras unless the digital recording of a specified time period requires extended retention for investigative purposes related to criminal activity, inmate discipline, inmate grievance, or inmate litigation, etc.

**SPECIFIC PROCEDURES:**

**(1) VIDEO CAMERAS FOR UTILIZATION DURING USE OF FORCE INCIDENTS:**

(a) Hand-held video camera(s) will be strategically located inside the compound in order to provide for ready access should a use of force incident occur.

1. The video camera will be stored in a locker secured with a numbered security seal to ensure the integrity of the equipment has not been compromised.

2. It is the responsibility of the Shift Supervisor on each shift to daily inspect the locker(s) will be documented on the "Security Seal, Video Camera, and Spit Shield Inspection Log," DC6-282, which will be maintained at each video camera storage location. Additionally, the security seal number shall also be included on the DC6-282.

3. In the event the seal has been tampered with or broken for camera utilization, a Incident Report, DC6-210, will be initiated immediately and the seal replaced. The camera's operation should be checked prior to seal replacement.

4. A perpetual log for the replacement numbered seals will be maintained for daily inspections.

5. Replacement numbered seals will be stored in a secure location accessible only by the Shift Supervisor.

(b) Each video camera will be checked, at a minimum weekly for proper operation.

2

1. This function check will be documented on the video camera and security seal inspection log.
2. Security staff will check the camera by filming a test segment and verifying operation and quality by viewing playback.
3. Fixed position cameras assigned in housing units or towers that are connected to recording devices will also be checked, at a minimum weekly.

(c) In addition to officers designated as first responders by the Shift Supervisor at the beginning of each shift, an officer will also be designated as a recorder (camera operator), along with at least one other officer as an alternate, both of whom have been trained in the use of the video camera. These staff members will be used to video record all use of force incidents and Designated Armed Response Team (DART) deployments.

(d) Upon being advised of a use of force incident, the uninvolved recorder/camera operator or an alternate will respond to the incident and initiate video recording immediately. The staff member utilizing the video camera will perform a function test on the camera to ensure that it is in proper working order to include checking the remaining charge of the battery. The staff member will ensure that no nudity is displayed on the video. This video recording will continue, uninterrupted, until the incident is under control, and the involved inmate is escorted to medical and subsequently, returned to secure housing.

(e) In order to comply with the confidentiality of medical information requirements, video recording of post use of force exams will occur in one of the following manners:
1. Video recording can be done through the window of a closed door if the window is large enough to accommodate adequate viewing of the inmate. If an examination of an unclothed inmate is necessary, a privacy screen will be utilized or the camera operator will adjust the angle of the camera to preclude videotaping the inmate's genitalia.
2. The officer recording the exam will stand at a distance that precludes any conversation between the examiner and inmate being taped, when possible.
3. If this is not possible due to the size and configuration of the examination room, the recording officer will advise both the medical staff member and the inmate to lower their voices if they wish that the conversation remain confidential.
4. If the inmate has to be treated at an outside medical facility or if s/he has to be transported to another Department facility for secure housing purposes, video recording will continue until s/he is loaded and secured in the transport vehicle.
5. Once the inmate is loaded and secured in the transport vehicle (either outside ambulance or Department van), the Shift Supervisor present will indicate recording will conclude by stating the date, time, inmate's name, inmate's DC number, and the destination of the transport.

(f) The Office of the Inspector General will retain and retrieve all related video recordings and reports whenever an inmate makes an allegation of abuse (staff or inmate), or staff misconduct. Additionally, recordings of incidents that are the subject of litigation or administrative proceedings will be retained by the Office of the Inspector General as directed by the appropriate authority.

(2) **FIXED WING CAMERAS:**

3

4

**Procedure 602.033**

(a) Recording equipment connected to the video cameras will be capable of recording, at a minimum frame rate of, five frames per second, per camera and have sufficient storage capacity to retain the recorded video for a minimum of 30 days. All new recorders shall be purchased within a minimum four terabytes (4TB) of storage space.

(b) Duty wardens shall review fixed video cameras a minimum of once per week by viewing a sample segment of the recordings from each confinement/close management/protective management/Inpatient mental health dormitory to ensure that the required 30 minute security checks are being conducted by staff. These checks of the fixed video cameras will be documented weekly in memorandum form to the Warden. The memorandum will include the date, time, and location of the viewed sample segment and any discrepancies and/or notable incidents viewed. The viewed sample segments will be selected from the current period during which the Duty Warden is assigned and should vary as to shift and time of day.

(c) Once per month, the Chief of Security and the Maintenance and Construction Superintendent shall conduct a joint review of all fixed cameras and associated recorders. This shall include the playback and viewing of a sample segment of recording. Additionally, at a minimum, these checks will be used to ascertain the following:

1. readiness and operational status of the equipment, including back-up power;
2. picture and audio clarity and quality;
3. ensuring that there are no sight-line obstructions;
4. checking for and noting 'blind spots';
5. cracked/dirty camera lens;
6. correct time and date stamp on video;
7. minimum of 30 days storage retention; and
8. any other operational area that can affect camera coverage/video recording capability.

(d) Upon completion of the requirements in section 2(c) above, the Chief of Security and the Maintenance and Construction Superintendent will jointly sign and date a memo, addressed to the Warden.

1. The memo shall include:
   a. the date and time of completion of this equipment status check.
   b. the names and titles of staff involved.
   c. any discrepancies found,
   d. how issues have been resolved or are going to be resolved, and
   e. any cost(s) and the timeline involved.
2. This memo will be forwarded to the Warden no later than the next business day after completion of the required check. The original shall be maintained by the Warden and a copy shall be forwarded to the Regional Director within two business days of receipt of the original by the Warden. The original and any supporting documentation shall be maintained by the Warden for three years from the date of completion of the check.

(e) The Housing Sergeant/Officer will check the fixed video cameras at the beginning of the shift to determine if they are operational by visually checking the monitors and recording indicators on the equipment. The function check of the camera system will be captured on

the "Housing Unit Log," DC6-209. Any discrepancies will be immediately reported to the Shift Supervisor, who will in turn notify the Duty Warden and control room and a notation will be made on the "Control Room Log," DC6-207. Addtionally, should a discrepancy be identified, a DC6-210 and a "Maintenance Work Request," DC2-210 will be initiated.

(f) The Shift Supervisor will conduct the same check as detailed in section 2(e) above, during her/his daily rounds and will be responsible for updating and the documentation listed in section 2(e), as appropriate. Documentation above will be updated as needed and the Emergency Action Center will be notified. In order to comply with this requirement, the Warden shall ensure that each Shift Supervisor is provided access (not Administrator rights) via utilization of her/his individual LAN ID and a distinctive password. The Warden will additionally ensure that only one person at each institution has Administrator rights to the recording system.

(g) Fixed camera/recorder system failures/malfunction of a segregation housing unit system or any component of the system will be reported to the Duty Warden and the Emergency Action Center, and an emergency maintenance work order will be submitted. In addition, a handheld video camera will be made available in the confinement unit where the malfunction exists in case it is needed. For camera/recorder failures/malfunctions in other housing units, this will be reported to the Duty Warden and the Emergency Action Center; and an emergency maintenance work order will be submitted.

(h) Requests by inmates for digital recording clips to be retained in excess of the 30-day period in conjunction with formal grievance submissions will be evaluated by a staff member designated by the Warden to determine if the digital recording clips specifically requested provides information supportive of the inmate's allegations or not. If not, the digital recording clips will not be retained and the inmate will be advised of this decision and the basis upon which it is made (i.e., the digital recording clip does not support the alleged issues asserted in the grievance). If the decision is made that the digital recording clip is to be retained, the steps outlined in section 2(j) below will be followed.

(i) Institutions with digital recorders require no maintenance of recorded material.
　　1. These recorders will automatically record over previous recordings on a 30- day cycle.
　　2. If particular digital recording clips are needed, the Warden will ensure that the required digital recording clips are downloaded within the 30-day timeframe.

(j) The following steps will be taken if it is determined that a digital recording has captured a use of force incident or has been requested for further investigation/review:
　　1. If a digital recording device records the incident, a digital recording clip will be produced and saved to disk.
　　2. Immediately upon the removal of a digital recording clip from the recording device, a "Chain of Custody," DC1-801, will be initiated and continued throughout the applicable routing and retention process.
　　3. The digital recording clip will be retained and safeguarded appropriately as determined necessary by the Warden or staff of the Office of the Inspector General.

**Procedure 602.033**

(k) Due to the 30-day retention period for all digital recordings from fixed surveillance cameras, staff will ensure that there are no delays and that established timeframes are met in the completion and/or submission of reports/investigations. This will ensure recorded materials will be available in the event they are required for further investigation.

(l) Public records requests will be handled as outlined in "Public Records Requests," Procedure 102.008.

(3) **COMPOUND ENTRANCE CAMERAS:**

(a) Video cameras shall be located at each pedestrian entrance gate or main entrance gate, to include the sally-port gate. These cameras will have video recording capability and be connected to the institutional recording system.

(b) At least once every week, the Chief of Security shall review a random sampling of the recordings to ensure that authorized searches of all persons entering and exiting through these areas are appropriately conducted. This sampling should include, but not be limited to non-traditional times of entrance/exit by both staff and visitors to include: perimeter post reliefs; after-hours volunteers; staff exiting/entering after beginning of shift, but before scheduled relief; etc.

(c) This check shall be documented on the DC6-207.

(d) If an incident is observed that may require further inquiry, the video capture and chain of custody provisions of this procedure shall apply.

/S/
Chief of Staff

all staff actively involved in any use of force and captured within the view finder of the camera is identified by rank/title and name.

(a) The shift supervisor during any organized use of force shall include in each video recorded markers of the following:

1. Date and time of the recording;

2. Location of the recording;

3. Name and rank of supervisor(s) present;

4. Name and rank of person authorizing use of chemical agent (if applicable);

5. Name and DC number of the inmate involved in the use of force;

6. Name of the camera operator;

7. Brief description of efforts taken to stabilize or control the inmate prior to the application of force;

8. Final warning order administered by a supervisor or incident commander;

9. Clear, concise, and audible verbal warning to the inmate of pending application of force or entry into cell for extraction;

10. Application of chemical agents;

11. Verbal order for a decontamination shower;

12. Decontamination of the inmate;

13. Any medical examination performed after the use of force;

14. Physical escort and placement in a decontaminated cell after incident;

15. Verbal refusals by inmates to participate in decontamination or medical examination (if applicable);

16. The name and rank of each Department staff member present.

(b) Whenever an inmate fails to comply with a lawful order and exhibits a threatening demeanor or disruptive or hazardous behavior, the on-scene supervisor of an organized use of force shall announce a clear, concise, and audible warning to the inmate that force will be administered if there is no immediate compliance and cessation of the behavior.

(c) Video recordings of post use of force medical exams shall be conducted through a window or at a distance in such a manner so as to provide the maximum amount of privacy needed for the exams and so as to limit the disclosure of inmate protected health information to the minimum amount necessary. The fact that the footage is taken through a window or at a sufficient distance is to keep communication between the inmate and medical staff confidential and to ensure that only the minimum amount of protected health information, e.g., visible injuries or the lack therefore, etc., is disclosed. Inmates involved in an organized use of force shall be video recorded continually until they have been placed in a vehicle for transportation or in a secure cell.

(d) Anytime there is a change in the on-scene supervisor or other staff during an application of an organized use of force, a new video recording will be initiated and the requirements in paragraphs (3)(a) and (b) above shall be repeated.

(e) In the event of a reactionary use of force, once the camera operator and shift supervisor arrive on the scene, the shift supervisor -- upon assessing the situation and being properly briefed -- shall:

1. Make a brief statement noting the reason(s) for the use of force. This shall be prior to the conclusion of recording:

2. The rank/title and name of staff involved in the use of force;

3. The rank/title and name of any staff who were present, but not involved in the use of force;

4. The name and DC number of the inmate(s) involved;

5. The type and amount of force used;

6. Any other pertinent information that he or she deems relevant.

(4) Department staff shall use force, organized or reactionary, only as a last resort when it reasonably appears that other alternatives are not feasible to obtain compliance with law or administrative rules or to defend themselves or others against any physical threat of injury or death.

(5) Any use of force shall cease being applied whenever an inmate complies with orders or ceases the behavior for which the use of force was necessary.

(6) Use of force shall not be applied for punishment. Physical restraints such as handcuffs, leg irons, flex cuffs, and other such devices shall only be used for restraint purposes and not for punishment.

(7) Inmates shall not be carried, dragged, or lifted by restraint devices. This shall not be construed to prohibit the use of an escort chair pursuant to > Rule 33-602.212, F.A.C.

(8) Hands-on physical force shall not be used if injury is less likely to occur by using chemical agents, specialty impact munitions, or EIDs. Batons, chemical agents, EIDs, specialty impact munitions, and other authorized less lethal weapons shall not be used on inmates who are assigned to inpatient mental health care in an infirmary, transitional care unit, crisis stabilization unit, corrections mental health institution, or other mental health treatment facility, as such facilities are defined in > Rule 33-404.103, F.A.C., except when attempts by available mental health staff to otherwise de-escalate and resolve the situation are unsuccessful and it appears reasonably necessary to:

(a) Prevent an inmate or inmates from taking control of the health unit, or to subdue a take-over of health unit.

AGOSTO

**33-602.210. Use of Force.**
(1) Prior to any organized use of force, the shift supervisor shall review Form DC4-650B, Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices, to determine whether the inmate has a medical condition that may be exacerbated by the intended force. Form DC4-650B is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01693. The effective date of the form is 12-12. Medical staff shall be consulted about physical conditions of an inmate that may be aggravated by the application of force or chemical agents unless safety concerns prevent prior consultation.
(2) Definitions.
(a) Direct Firing -- The practice of firing specialty munitions directly into a group of rioters with a target area of the waist or below from a minimum distance designated by the manufacturer of the munitions.
(b) Correctional Emergency Response Team -- A team comprised of staff trained in special tactics including the use of lethal force for the intervention and resolution of life-threatening crisis events.
(c) Emergency Action Center -- The unit located in the Central Office charged with receiving reports regarding serious incidents, such as riots and escapes, from all Department of Corrections' (Department) facilities and reporting the information to the proper authorities. This unit also receives requests for criminal histories, warrant confirmations, and offender location requests from law enforcement agencies throughout the United States.
(d) Incident Commander -- The employee responsible for the management of emergency incidents, such as riots and natural disasters.
(e) Less Than Lethal Force -- Any force that is neither intended nor likely to cause death or serious bodily harm.
(f) Organized Use of Force -- Any force that may be administered to control, escort, or geographically relocate any inmate when the immediate application is not immediately necessary to prevent a hazard to any person.
(g) Reactionary Use of Force -- Any force that must be administered quickly or immediately to compel the cessation of an inmate's violence or resistance to orders.
(h) Reasonable Force -- Any force that is not excessive for protecting oneself or another or for gaining an inmate's compliance with a lawful order.

(i) Rapid Response Team -- A team comprised of Correctional Officers specially trained in less lethal and lethal munitions, chemical munitions, crowd control, and riot suppression.
(j) Rubber Ball Rounds -- Multiple pellets fired from cartridges at the lower extremities of rioters and designed to inflict pain compliance.
(k) S-2 -- The mental health classification denoting mild impairment in the ability to meet the ordinary demands of living within general inmate housing (which includes segregation) due to a diagnosed mental disorder. The impairment in functioning is not so severe as to prevent satisfactory adjustment in general inmate housing with provision of mental health services. Clinical management of the disorder may require at least periodic administration of psychotropic medication, which the inmate may exercise his or her right to refuse.
(l) S-3 -- The mental health classification denoting moderate impairment in the ability to meet the ordinary demands of living within general inmate housing, due to a diagnosed mental disorder. The impairment in functioning is not so severe as to prevent satisfactory adjustment in general inmate housing with provision of mental health services. Clinical management of the disorder may require at least periodic administration of psychotropic medication, which the inmate may exercise his or her right to refuse.
(m) Shift Supervisor -- The highest ranking correctional officer of the on-duty shift.
(n) Skip Firing -- The practice of firing specialty impact munitions 5-7 feet in front of rioters, thereby deflecting the munitions into the legs of the rioters.
(o) Serious Bodily Injury -- A physical condition that creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ.
(p) Specialty Impact Munitions -- Munitions designed to incapacitate, distract, and control a subject with a relatively low likelihood of life-threatening injury.
(q) Wooden Baton Rounds -- Multiple wooden projectiles fired from a 37/40-mm weapon, designed to be skip fired into the lower extremities of rioters to inflict pain compliance.
(3) A video camera operator shall commence recording all reactionary use of force incidents upon arrival at the scene as soon as possible. All organized use of force incidents shall be video recorded unless exigent or emergency circumstances prevent such action. Except in the circumstances described in sub-subparagraph (9)(n)2.e., video recordings shall continue uninterrupted from commencement until the situation is stable and under control and the inmate is placed in a secure cell or transport vehicle for transfer. Additionally, the camera operator shall, to the best of his or her ability, ensure that

(b) Prevent an inmate or inmates from taking a hostage or to help free a hostage.

(c) Prevent an inmate or inmates from escaping.

(d) Stop an assault on staff or other inmates when other means of intervention are likely to be ineffective or pose a risk of injury to the intervening staff.

(e) Disarm an inmate in possession of a weapon capable of causing injury to staff when other possible means of disarming the inmate pose a risk of injury to the staff involved.

(9) Use of Chemical Agents. All chemical agents shall be used with caution and in accordance with the manufacturer's instructions.

(a) The following chemical agents are authorized for use by the Department:

1. OC -- Oleoresin Capsicum (pepper spray) -- An inflammatory agent that causes tearing and involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress. OC is the primary chemical agent to be utilized for cell extractions and other in-cell incidents unless circumstances exist as outlined below, and they shall only be used in the manner prescribed herein.

2. CS -- Orthochlorobenzal Malononitrile or Orthochlorobenzylidene Malononitrile -- An irritant agent that causes burning sensation and tearing of the eyes, nasal discharge, and skin and upper respiratory irritation.

a. CS may be used during cell extractions and other in-cell incidents if OC applications previously administered were ineffective in obtaining compliance or ceasing disruptive actions or physically threatening behavior.

b. The warden or designee may authorize the use of CS as an initial primary chemical agent whenever past applications of OC to an inmate were documented on Form DC6-230, Report of Force Used, as having been applied and ineffective. Form DC6-230 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01700. The effective date of the form is 12-12.

c. The warden or designee may authorize the use of CS as an initial or primary chemical agent during in-cell applications whenever an inmate attempts to deploy a shield, barrier, or obstruction in an obvious attempt to avoid contact with an application of chemical agents. Justification for the use of CS whenever an inmate barricades or presents physical obstructions to counter chemical agent applications shall be noted on Form DC6-230, Report of Force Used, by the reporting officer.

(b) Chemical agents shall be used only after other reasonable efforts to control a disorderly inmate or group of inmates have been exhausted.

(c) Chemical agents shall only be used when the use of force is authorized and the level of force is necessary to prevent injuries to staff or inmates including any self-injurious behavior exhibited by inmates.

(d) Any accidental or incidental discharge of a chemical agent by a staff member within any institution shall be reported on Form DC6-210, Incident Report.

(e) Authorization for an organized use of force application of chemical agents within an institution may only be authorized by the warden or designee.

(f) Only staff members who have received training in the use of chemical agents may discharge, carry, possess, or use chemical agents within an institution, except during emergencies such as riots or disasters or at the direction of the warden or designee.

(g) A confinement or close management lieutenant or shift supervisor shall be responsible for the issuance of a final order to an inmate ordering compliance or cessation of disruptive behavior prior to the application of chemical agents. Additionally, a confinement or close management lieutenant, shift supervisor, or staff member of greater rank shall be present and observe the application of chemical agents to inmates in such housing settings.

(h) Any application of chemical agents within an institution shall be noted on Form DC6-230, Report of Force Used. Any officer who uses chemical agents shall record the following on Form DC6-230:

1. Type of agent discharged;

2. Amount of agent discharged;

3. Method of administration;

4. Name of the person who authorized issuance or possession of the chemical agent;

5. Name of person who administered the chemical agent;

6. Amount of the chemical agent used;

7. Reason the chemical agent was used.

(i) Chemical agents shall be stored in the designated main arsenal in a secure manner. The warden shall authorize and designate secure locations where chemical agents shall be stored that are accessible only to officers.

(j) Chemical agents assigned to institutions may not be removed from the facility at any time without authorization from the warden or designee.

(k) All chemical agent dispensers shall be numbered and recorded on Form DC6-216, Chemical Agent Accountability Log. Form DC6-216 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-02950. The effective date of the form is 8-13. Form DC6-216 shall be maintained in any location where chemical

agents are stored. Chemical agent dispensers shall be weighed prior to issuance and upon return to storage. The shift supervisor shall verify the weight of chemical agent dispensers upon return to storage. Additionally, the shift supervisor shall ensure all issued chemical agent dispensers are accounted for and recorded on Form DC6-216. The chief of security shall monitor the canister weights following each use of chemical agents to ensure the contents are consistent after a reported use of force and recorded on Form DC6-216.

(l) Issuance and use of chemical agents:

1. Only correctional officers and staff trained in the use of chemical agents, in possession of a current and valid certification, and assigned to institutions and work camps shall be issued an approved OC dispenser to carry while on duty. Officers who have been issued chemical agent dispensers are authorized to administer or dispense chemical agents during the performance of their duties under reactionary circumstances (including but not limited to self-defense, the defense of others, or in opposition to force) without additional authorization for intervention for self-defense or the defense of others. The warden is authorized to exempt an officer from carrying, possessing, or using chemical agents. Officers assigned to armed perimeter posts may be exempted from the requirement to carry OC by the warden or designee.

2. An MK-9 sized canister or equivalent OC dispenser shall be issued to correctional officers who have received appropriate training, are in possession of a valid certification, and who are assigned to internal security posts, recreation fields, shift supervisor posts, or designated as special response team members within an institution, including work camps. These officers are authorized to administer chemical agents during reactionary disturbance incidents that involve multiple inmates housed in locations where multiple inmates are generally present, such as open bay dorms, dining halls, recreation fields, canteens, and meal lines. This option shall only be exercised in response to mass disturbance critical incidents and as necessary to restore control, stability, or disciplinary order and shall normally not be used indoors.

3. For those security positions assigned to housing units with a secure officer's station, an MK-4 sized canister or equivalent OC dispenser shall be passed on from shift to shift and accounted for on Form DC6-209, Housing Unit Log, at the beginning of each shift with an entry for each canister indicated by canister number and officer initials who is assigned that canister. Form DC6-209 is incorporated by reference in > Rule 33-601.800, F.A.C. Canisters that are not being worn by staff on shifts that have fewer assigned staff will remain in the officer station, stored in a secure, locked cabinet or drawer designated for this purpose. The number of chemical agent canisters assigned to a housing unit shall not exceed the maximum number of staff (officer and sergeant) assigned for the highest staffed shift per the institutional post chart. Any evidence of tampering, broken or missing seal, or signs that the canister is not functional will be immediately reported to the shift officer in charge. Additionally, Form DC6-210, Incident Report, will be completed by the end of the officer's shift and a replacement of the canister will occur. Form DC6-210 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 S. Calhoun Street, Tallahassee, FL 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01697. The effective date of the form is 12-12. The canisters will be inventoried and inspected once per week by the arsenal sergeant with appropriate entry placed on the Housing Log.

4. For those staff assigned to internal security and designated A-Team members, exchange of approved canisters shall occur on the compound, with the canister number and confirmation of seal status and condition of canister called into the control room and notation made on the DC6-281, Control Room Security Equipment/Weapons Check Out/In Log. Form DC6-281 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 S. Calhoun Street, Tallahassee, FL 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-02952. The effective date of the form is 8-13. The canisters will be inventoried and inspected once per week by the arsenal sergeant with appropriate entry placed on the Control Room Log.

5. For those staff assigned to food service, wellness, gate areas, program areas, and other compound posts that are not manned on a 24-hour basis, the staff assigned to the daylight shift shall pick up their canisters at the control room immediately prior to proceeding to their assigned post. The exchange of canisters for their reliefs shall occur on the compound, with the canister number and confirmation of seal status and condition of canister called into the Control Room and notation made on Form DC6-281 Control Room Security Equipment/Weapons Check Out/In Log. The canisters will be inventoried and inspected once per week by the arsenal sergeant with appropriate entry placed on the Control Room Log.

6. Chemical agent dispensers shall be securely encased and attached to the officer's belt. Each chemical agent dispenser shall be secured within a pouch or to a holstering device by a numbered, breakable seal. Officers shall examine the condition of the canister and the safety seal at the time of receiving or being issued any chemical dispenser to ensure that the canister is not damaged and that the seal is intact and report any alteration or broken

seal to the shift supervisor. Shift supervisors shall examine the seal of any chemical dispenser reported to be altered, broken, or manipulated and upon confirmation of alteration, breakage, or manipulation shall report the observation on Form DC6-210, Incident Report, prior to the end of the shift. The sergeant in charge of the arsenal shall maintain a master inventory of all individual chemical agent dispensers in storage. The master inventory shall indicate the weight of each dispenser at the time the original seal is attached and shall annotate the weight of the dispenser any time a dispenser is returned with a broken seal on Form DC6-216, Chemical Agent Accountability Log, and replace the seal or attach a new one. The arsenal sergeant shall report any discrepancies in the weight of the dispenser to the chief of security and complete Form DC6-210.

(m) Use of chemical agents on inmates outside of controlled conditions. Officers may utilize chemical agents whenever an inmate becomes disorderly or disruptive or does not comply with clear and audible orders that have been communicated to cease such behavior. During emergency situations with multiple inmates in an outside area, chemical agents may be applied to quell the disturbance. An inmate shall at no time be removed from his or her assigned cell or placed at an alternate location, have clothing removed, or be restrained for the purpose of chemical agent application. If an officer administers chemical agents while an inmate is handcuffed or wearing restraints, and removal of such restraints was not possible prior to the application, the officer shall record an explanation of the circumstances on Form DC6-230, Report of Force Used.

(n) Use of chemical agents on inmates under controlled conditions:

1. When an inmate in a secure housing unit occupied by other inmates becomes disorderly or disruptive or the officer's ability to provide unit security is adversely impacted by an inmate's behavior, and the inmate refuses to comply with clear and audible orders to cease his or her behavior, the confinement or close management lieutenant, shift supervisor, or person of higher rank shall be contacted and consulted for instructions prior to any application of chemical agents.

2. Whenever the confinement, close management lieutenant, or shift supervisor's efforts to control a disorderly inmate have failed, and the use of chemical agents is necessary to gain control of the inmate while minimizing the risk of injuries to others, the shift supervisor shall ensure the following:

a. Uninvolved inmates in the cell or immediate area are given the opportunity to exit or depart the potentially affected area, if such relocation does not create or cause a hazard to the safety of others.

b. The warden or designee is contacted and gives authorization to use chemical agents in the area.

c. A clear and audible order is given for the inmate to cease the disruptive or dangerous behavior.

d. If the inmate fails to comply with the order of the shift supervisor and continues to disobey lawful orders or continues disruptive behavior, the shift supervisor shall issue a clear and audible final order. During the final order, the shift supervisor shall put the inmate on notice that chemical agents are to be administered imminently if his or her disruptive behavior does not immediately cease.

e. A video recording is not required if, during the same shift, the inmate ceases the conduct creating the disturbance while the shift supervisor and camera operator are present with a camera but resumes such conduct after the shift supervisor and camera operator have departed the area prior to an application of chemical agents. The shift supervisor has the authority at anytime to recommence video tape recording of subsequent incidents, but in all cases where the administration of chemical agents is subsequently required video recording will resume following the final exposure to chemical agents, include a statement referring to the originating incident, and continue from this point until the decontaminating shower is ordered, medical examination is offered, and the inmate is returned to secure, decontaminated housing.

f. The application of chemical agents in the amount of no greater than three (3) one-second bursts may be administered upon an inmate after at least three (3) minutes have elapsed from the time a clear and audible final warning is communicated to the inmate to cease his or her disruptive or dangerous behavior and the inmate does not comply with the orders.

g. If the inmate's disruptive behavior continues after the initial application, a subsequent application of chemical agents in the amount of no greater than three (3) one-second bursts may be administered upon an inmate after at least five (5) minutes have elapsed since the initial chemical agent application.

h. If the inmate does not comply with orders after a minimum of five (5) minutes have elapsed from the conclusion of the second application of chemical agents, the warden or designee shall be consulted to evaluate what further response is necessary to regain compliance or control of the inmate.

(o) Additional applications of chemical agents and forced cell extractions:

1. The warden or designee shall be consulted to evaluate further responses after a third application of chemical agents has been administered, the inmate fails to cease his or her disruptive or dangerous behavior, and such inmate does not comply with orders. Additional copies of Form DC6-230, Report of Force Used, shall be

used to document the incident. The shift supervisor shall ensure all use of force applications are properly documented on Form DC6-230.

2. The warden or designee may authorize subsequent applications of chemical agents as necessary to obtain safety or compliance; however, such applications shall not be administered or discharged upon an inmate after the initial three applications until at least sixty (60) minutes have elapsed from the time of the last application.

(p) Medical requirements:

1. Inmates who have been administered any chemical agent shall be constantly monitored by a staff member or officer for no less than one (1) hour after application. The affected inmate shall remain in a standing or sitting position. The monitoring staff members or officers shall immediately seek medical attention by the appropriate medical staff or competent medical authority any time signs of respiratory distress, labored breathing, excessive or persistent coughing, or chest or arm pain are evident or if unconsciousness occurs or other signs of medical distress are observed. The absence of medical staff on scene does not preclude taking action as an emergency responder.

2. All inmates exposed to chemical agents shall be ordered to shower in cool water and change inner and outer garments within 20 minutes from the last application of chemical agents, unless there is a documentable emergency resulting in an extension of this time frame or unless the inmate refuses to participate in the decontamination process. The shift supervisor or confinement lieutenant shall record the decontamination activities on the following forms:

a. Form DC6-210, Incident Report; or

b. Form DC6-229, Daily Record of Special Housing. Form DC6-229 is incorporated by reference in > Rule 33-601.800, F.A.C.

3. The shift supervisor shall summon a medical staff member to the physical location of an inmate who has been exposed to a chemical application. The medical staff member shall conduct an examination of the inmate after the decontamination process is completed. The health services staff or ranking officer present shall ensure that any inmate who has a history of experiencing or who exhibits symptoms of physical distress as a result of chemical agent exposure is immediately provided all necessary medical attention. Medical staff members shall record any observations and medical actions taken on the following forms, including the presence or non-presence of injury:

a. Form DC4-701C, Emergency Room Record. Form DC4-701C is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee,

Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01695. The effective date of the form is 12-12.

b. Form DC4-708, Diagram of Injury. Form DC4-708 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01696. The effective date of the form is 10-04-07.

4. In addition to completing a medical examination of any inmate who is exposed to chemical agents, the attending medical staff member shall make a mental health referral for any inmate classified as "S-2" or "S-3" on Form DC4-529, Staff Request/Referral, and forward it immediately for a mental health evaluation to be conducted on the inmate. Form DC4-529 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01692. The effective date of the form is 12-12. Mental health staff shall evaluate the inmate no later than the next business day. The mental health staff member who conducts the evaluation shall consult with the shift supervisor and recommend appropriate measures that may be necessary for the safety of the inmate, including placement in isolation management, a transitional care unit, or crisis stabilization as those placements are defined in > Rule 33-404.103, F.A.C.

5. Any time an inmate refuses to take a shower after an application of chemical agents, medical staff shall conduct a cell-front examination and explain in a clear and audible tone the purpose of decontamination and potential physical implications of not completing decontamination. Medical staff members shall record notes of any decontamination consultation on Form DC4-701C, Emergency Room Record.

6. Upon completion of the decontamination consultation with the inmate by a medical services staff member, the shift supervisor shall order the inmate to submit to a decontamination shower. If the affected inmate refuses to participate in a decontamination shower, a second order shall be given by the shift supervisor with a member of the medical services staff or a supervisor physically present when possible. The shift supervisor shall annotate on Form DC6-210, Incident Report, that a second order was administered and the inmate refused compliance.

7. The shift supervisor shall consult with the attending medical services staff member and determine if an inmate requires medical attention or treatment any time decontamination is not completed. Whenever the medical services staff member has observed the inmate who has

refused decontamination post application of chemical agents and determined that reasonable medical attention is not necessary, the shift supervisor shall ensure that the affected inmate is monitored for a minimum of two (2) hours and offered a shower at least every thirty (30) minutes during the two (2) hour observation period. All inmate welfare checks or required physical observations post refusal to submit to decontamination orders shall be recorded on Form DC6-229, Daily Record of Special Housing. The officer assigned to conduct welfare checks or physical observations of an inmate shall without unnecessary delay summon medical attention if he or she at any time observes or suspects that an inmate may be experiencing medical distress.

8. The shift supervisor shall comply with provisions stated in paragraph (10)(h) if, upon consultation with medical services staff, he or she is advised a decontamination shower is necessary for the safety of the inmate or the failure to complete a decontamination shower is a hazard to the inmate. The inmate shall be relocated to a decontamination cell.

a. Upon introduction into a decontamination cell, the inmate who refused or obstructed efforts to participate in a decontamination shower shall be placed in a sitting or standing position for a minimum of forty-five (45) to sixty (60) minutes after the use of chemical agents, including any inmate who must be physically held or is incapacitated, to permit officers to place approved restraining devices on the inmate, e.g., handcuffs.

b. Officers shall use all reasonable and due care to avoid physically placing the inmate in any position that may contribute to positional asphyxia, restricted blood circulation, or interference with physical functions that permit life processes to occur or in any position that causes any physical injury. Restraints shall not be applied in any manner for the purpose of administration of punishment. The inmate shall not be directed, ordered, or required to stand or sit uninterrupted if such action is intended for reasons of punishment or likely to cause injury. Any portion of the inmate's body exposed to or that came into contact with chemical agents, including the eyes, shall be flushed with water as soon as possible after application for at least approximately five (5) to ten (10) minutes or until the affected inmate experiences relief. The inmate should be advised by the officer in charge to avoid rubbing any irritated area with a cloth or towel. No oils, creams, or topical medications shall be applied to the inmate without approval of a member of the medical services staff.

9. The warden or designee may authorize placing an inmate in four point or multipoint restraints after consultation with a member of health services staff. Approval from the warden or designee shall be obtained

prior to any inmate being placed in four-point or multipoint restraints. Health services staff shall review the medical record of the inmate prior to advising the warden or designee of known medical conditions that would affect the health of the inmate should chemical agents be administered or the inmate be placed in four-point or multipoint restraints. A member of the health services staff shall monitor without interruption an inmate post application of chemical agents and when the inmate is subsequently placed in four or multipoint restraints. Medical attention shall be provided, upon detection of physical distress, without unnecessary delay. No inmate shall be restrained in a manner which restricts breathing.

10. Medical services staff members shall record all observations and recommendations on the following forms:

a. Form DC4-701C, Emergency Room Record.

b. Form DC4-708, Diagram of Injury.

c. Form DC4-701, Chronological Record of Health Care. Form DC4-701 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01694. The effective date of the form is 4-8-10.

(10) Non-deadly Force. In accordance with > Section 944.35, F.S., officers are authorized to apply lawful and reasonably necessary physical force to:

(a) Defend themselves or others from actions that are likely to cause injury or death;

(b) Prevent the escape of a convicted felon from the custody of a correctional institution, any facility where an inmate is not permitted to depart without authorization, or as necessary to gain custody of an escaped inmate;

(c) Prevent the escape of an inmate during transport or while outside a correctional institution or facility;

(d) Prevent damage to property;

(e) Quell a disturbance;

(f) Overcome an inmate's physical resistance to a lawful command;

(g) Prevent an inmate from inflicting any self-injury or from attempts to commit suicide; or

(h) Reasonably restrain an inmate to permit the administration of necessary medical treatment.

(11) Only reasonable, lawful, and the minimal amount of force necessary shall be employed to control the situation. Force shall not be used solely as a response to verbal abuse. Utilization of the custodial touch, with the hand firmly grasped around the inmate's triceps or elbow, during internal transport of restrained inmates when resistance is not encountered shall not be considered a use of force when the transport hold is for the safety of

the inmate or officer. The warden or designee shall be consulted and must authorize any organized use of force prior to application. The warden or designee shall be notified without unnecessary delay any time a reactionary use of force incident occurs and circumstances did not permit obtaining authorization prior to the use of force. The person who was responsible for requesting authorization to use force shall prepare, date, and sign Form DC6-232, Authorization for Use of Force, either prior to or immediately after the end of the shift when force was used. Form DC6-232 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01701. The effective date of the form is 9-99. If the authorization for an organized use of force is granted after normal working hours, the authority granting the action shall complete and sign Form DC6-232 within one day following the incident, excluding weekends and holidays.

(12) Any time force is used, the officer initially using force shall complete Form DC6-230, Report of Force Used. The completed form must contain a clear and comprehensive narrative of the circumstances that led to the use of force, the specific justification and necessity for the use of force and a description of the actual events that occurred as well as the post-event actions. An incident report prepared by the author of the DC6-230, Report of Force Used, may be referenced in Section A., Narrative of Pre-event, and attached to the report to provide additional detail regarding the justification and necessity for using force. If more than one officer was involved in the use of force, the initial officer using force shall complete the report. Any participant who objects to information recorded by the reporting officer or who has additional observations to add to the narrative or description of the incident written by the reporting officer shall complete and attach Form DC6-230, Report of Force Used. No officer or employee shall receive discipline for providing updated information to a use of force report, provided the updated information is presented without unnecessary delay after discovery of the discrepancy. Updates or addendums recorded on any Form DC6-230, Report of Force Used, should be completed and forwarded to the warden not later than one (1) business day (excluding weekends and holidays) following the date that the original Form DC6-232, Authorization for Use of Force, is signed and dated.

(a) Form DC6-230, Report of Force Used, shall be completed by those staff involved in any application of force, reactionary or organized, that occurred during their shift. Form DC6-230 shall be completed no later than the end of the shift during which the use of force occurred. The warden or designee is authorized to permit a delay of completing required use of force reports for up to 72 hours when circumstances prohibit completion of the reports by the end of the shift. All reports must be typed. No use of force report may be altered, changed, or destroyed by any employee. Officers may submit amendments to a report at any time with authorization from the warden or designee. The warden or designee shall then appoint a staff member of equal or higher rank than those involved in the use of force incident to collect all pertinent information and required documentation. This information shall include the reports of all involved staff who do not agree with the account as reported in the DC6-230 or the statements of staff witnesses, inmate witnesses, or the inmate subject. All inmate statements (subject and witnesses) shall be made in writing using Form DC6-112C, Witness Statement. Form DC6-112C is incorporated by reference in > Rule 33-601.313, F.A.C. Any employee who witnesses but does not participate in a use of force and suspects inappropriate action shall complete Form DC6-210, Incident Report. The warden shall ensure that Form DC4-701C, Emergency Room Record, and Form DC4-708, Diagram of Injury, are included in the review of all uses of force and also forwarded with the rest of the required documentation to the Office of the Inspector General -- Use of Force Unit. The Office of Inspector General field offices within each region shall provide the institutions, via electronic mail, with a use of force number once one is assigned and entered into the Office of Inspector General electronic logging system.

(b) The warden or designee shall conduct a preliminary review of facts recorded in reports to determine if the application or demonstration of force was lawful and a procedurally appropriate application. All use of force incidents involving physical force will be reviewed by a designee of the rank of Correctional Officer Major or above and shall include a review of all videotapes of the incident. The warden shall ensure that any designee that reviews any use of force incident conducts the review in a comprehensive manner and that, in addition to procedural concerns, the review ensure that the force used was necessary, justified, proper, and not excessive. Any time improperly applied or unlawful use of force is indicated in a report, the warden shall personally review the incident. The warden shall personally review the reports, and all videotapes of any use of force incident that results in outside medical treatment for the involved inmate;  this includes transfers to another correctional facility specifically for medical treatment. The warden shall consult with the Health Service Administrator or other medical personnel as appropriate, regarding the nature of the injuries and required treatment determined to be necessary by the outside medical entity and incorporate this information

into the determination if the force used was excessive, improper, or unnecessary.

(c) If during any part of the review process there is any indication of excessive, improper, or unnecessary force, the reviewer will notify the warden, who shall conduct a personal review of all pertinent information, reports, documentation, and videotapes and notify the Office of the Inspector General -- Chief or Assistant Chief of Investigations in Central Office within one business day.

(d) The warden or designee shall review the information and note any inappropriate actions in memorandum and attach the information to Form DC6-230, Report of Force Used. The warden or designee's signature in the Warden's Review signature block on Form DC6-230 indicates that the review of the reports, and videotapes as required, did or did not reveal, in addition to procedural concerns, any indication of excessive, improper, or unnecessary force. All videotape recordings of force applications and the original and one copy of Form DC6-230 shall be forwarded to the Office of Inspector General within eleven (11) business days. Requests for extensions for DC6-230s to be forwarded after eleven (11) days shall require authorization from the Assistant Secretary of Institutions and the Inspector General or designee. Requests for extensions for submission of DC6-230s beyond eleven (11) days may be granted if required staff is unavailable for signatures due to extended leave or similar circumstances, e.g., a staff member was injured in the use of force, etc., and major incidents occurring at the institution necessitate an extension, e.g., a riot or other major disturbance, nature disaster evacuation, etc.

(e) The warden shall keep all original completed forms and a copy of Form DC6-230, Report of Force Used, until notified that the final review by the Office of Inspector General is complete. All original reports pertaining to a use of force shall be retained by the warden or designee.

(f) The Office of Inspector General shall report a disposition to the warden of any use of force within fourteen (14) business days of receipt. The warden shall be noticed of any extension to the review granted by the Inspector General or designee prior to the expiration of the fourteen (14) business days. The Inspector General shall notify the warden that a case has been reviewed and action was appropriate or a further review has commenced.

(g) Any time a witness of a reported use of force chooses to make a written statement, or is a use of force participating staff member and chooses to provide additional information not annotated in the reporting officer's initial Form DC6-230, Report of Force Used, submission, such person shall complete Form DC6-230.

No employee may interfere with or obstruct such reporting or order any participant or witness involved in the use of force to alter, change, or not produce a written report of an incident in which the employee was involved or which he or she observed.

→ (h) Upon review of the submitted documents, the Office of Inspector General shall notify the warden in writing or by electronic mail of the findings. All video ← recordings submitted with use of force reports shall be retained and maintained by the Office of Inspector General in accordance with records retention statutes. The Office of Inspector General shall notify the regional director and warden any time a reasonable suspicion or probable cause is found that the force administered by a staff member was not in compliance with law, rule, or procedure. The Office of Inspector General or the warden, upon referral by the Office of Inspector General, shall conduct an investigation of the incident. Any staff member who is a subject of an investigation based on suspicion or allegation that force administered with their participation was not in compliance with this rule shall be notified by written letter when the matter is being investigated by the Office of Inspector General. Staff members shall not disclose or discuss any information concerning a use of force administrative investigation until receiving notice that a determination has been issued by the Office of Inspector General or warden. Wardens shall complete Form DC6-296, Disapproved Use of Force/Warden Disposition Report, should their review of referred cases lead to a determination that force was not appropriately used. All disciplinary actions shall be ← forwarded to the Human Resources Section upon completion. Form DC6-296, Disapproved Use of Force/Warden Disposition Report, is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01703. The effective date of the form is 7-25-02.

(i) The Assistant Secretary of Institutions, regional director, or warden shall be responsible for issuing any corrective action pursuant to a finding of non-compliance with this rule. Copies of the employee's report, the warden's summary, and the Office of Inspector General review and determination shall be kept in the inmate's file pursuant to public records retention law. Form DC2-802, Use of Force Log, shall be placed in every employee's personnel file. Form DC2-802 is hereby incorporated by reference. Copies of this form are available from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500, http://www.flrules.org/Gateway/reference.asp?No=Ref-01691. The effective date of the form is 2-7-00. This form shall be maintained by the servicing personnel office and

shall contain a record of every use of force report completed by the employee.

(j) The warden or designee shall be responsible for submitting accurate information to the personnel office in order to maintain Form DC2-802. Any use of force reports completed prior to April 15, 1998, shall remain in the file and be retained for the applicable retention period.

(k) The Office of Inspector General shall notify the warden of any officer involved in eight or more use of force incidents in an eighteen month period.

(l) Any incident that necessitates the drafting of Form DC6-230, Report of Force Used, shall be reported to the Emergency Action Center (EAC).

(m) Any employee or officer who witnesses, has reasonable cause to suspect, or has knowledge that any inmate has been a victim or subject of an unlawful battery or has been abused in violation of law or the Department's administrative rules shall without unnecessary delay report the incident to the warden or designee and complete Form DC6-210, Incident Report, describing his or her observations, knowledge, or suspicion. No employee shall commit a battery on or engage in cruel or inhuman treatment of any inmate. The warden or designee shall forward a copy of all reports involving allegations of inmate abuse, neglect, or battery to the Office of Inspector General without unnecessary delay.

(n) Officers may use reasonable physical force to restrain an inmate, upon supervision and direction of a physician or medical practitioner, for the purpose of providing necessary treatment or for the safety of an employee. The attending Qualified Health Care Provider who directs or observes medically necessary use of force shall prepare Form DC6-232, Authorization for Use of Force. Officers who use force pursuant to a physician or medical practitioner's request shall complete Form DC6-230, Report of Force Used, when actual force is used, or Form DC6-210, Incident Report, when restraints are applied with no physical resistance by the inmate, and the form shall be forwarded to the warden.

(o) The attending physician or medical practitioner shall complete Form DC4-701C, Emergency Room Record, and Form DC4-708, Diagram of Injury, with applicable data or the letters "N/A" used to indicate inapplicability. The attending physician or medical practitioner shall document the presence or absence of any injury in his or her records whenever force has been applied. Every physical examination of an inmate patient who has been the subject of an application of force shall be documented with specificity by the attending physician or medical practitioner to include extent of injury, type of injury, and a description of any injury. Any time a physician or attending medical practitioner reports reasonable suspicion of abuse of an inmate to the warden

or the Office of Inspector General, it shall be reported on Form DC6-210, Incident Report.

(p) Any employee or officer who participates in the application of reactionary or organized use of force and receives or experiences any injury shall report such injury to the officer in charge. Injured staff shall be offered an opportunity to receive a medical examination. Should the employee or officer decline a post-use of force medical examination, he or she shall sign Form DC4-711A, Refusal of Health Care Services, indicating an examination was offered but declined. In those cases where an injury is claimed but not substantiated by medical examination, the statement by the medical provider shall indicate this, and the documentation shall be sufficient to support that no injury was found upon examination. Form DC4-711A is incorporated by reference in > Rule 33-401.105, F.A.C.

(q) When the use of four-point or five-point psychiatric restraints is authorized, and the inmate does not offer resistance to the application of the restraints, the completion of Form DC6-210, Incident Report, shall be required. The application of the restraints will be videotaped. The videotape, Form DC6-210, Incident Report, Form DC6-232, Authorization for Use of Force Report, Form DC4-701C, Emergency Room Record, and Form DC4-708, Diagram of Injury, shall also be completed in their entirety with applicable data or the letters "N/A" used to indicate inapplicability and shall be forwarded to the warden or acting warden for review within one working day. Each institution shall retain the reports for the applicable retention period. If at any time prior to or during the application of the psychiatric restraints, the inmate offers resistance to the application, the steps outlined in subsection (4) shall be followed.

(13) Use of Deadly Force. For the purposes of this rule, deadly force refers to force that is likely to cause death or great bodily harm. An officer is authorized to use deadly force only when the officer believes that such force is necessary to prevent imminent death or great bodily harm to him or herself or another.

(a) Use of Firearms. In order for all concerned to be aware of their responsibilities, the procedures set forth in this rule shall be readily available at all institutions and facilities for staff review.

(b) Firearms or weapons shall be issued to an officer only upon instructions of the warden, duty warden, chief of security, or shift supervisor by the arsenal officer or the officer designated to issue weapons. Officers shall not intentionally discharge a firearm at or in the direction of another person except under the following circumstances and after all reasonable non-lethal alternatives have been exhausted, and there is no reasonable danger to innocent bystanders:

1. To prevent an escape of an inmate who is actively attempting to flee custody;

2. To prevent any conveyance to gain unauthorized entry into or exit from a correctional institution;

3. To prevent serious or life threatening injury to themselves or another person;  or

4. To quell a riot.

(c) Shot guns are approved for use by the Department's designated armed response team, Rapid Response Teams, Correctional Emergency Response Teams and/or other trained staff as authorized by the Assistant Secretary of Institutions for use during riots and mass disturbances. The type of authorized lethal or non-lethal ammunition used will be at the discretion of the Incident Commander.

(d) Weapons to be used shall be designated by the person in charge.

(e) Firearms shall not be discharged:

1. In any case where there is a reasonable belief that the life of a bystander may be endangered by discharge of the firearm;

2. From any moving vehicle unless such action is reasonably believed necessary to protect oneself or another from imminent death or great bodily harm;

3. As a warning, except during escapes;

4. Until the employee is sure that an escape is occurring or has occurred and he or she reasonably believes that the person to be fired upon is an escapee that is serving a sentence for a violation of a felony;

5. Unless the officer has positively identified an escape is occurring and the target is a Department inmate;

6. Except after all reasonable non-lethal alternatives have been exhausted;  or

7. On the mere suspicion that a crime, no matter how serious, has been committed.

(f) No officer shall discharge any firearm except as authorized by Florida law.

(g) Because helicopters or other aircraft may be used during an escape or assault, the following policy shall apply:

1. When it can be done safely, actions other than firing weapons, such as waving arms in a manner to indicate disapproval to enter an area, shall be made in an attempt to cause the aircraft to leave.

2. If these attempts fail, the aircraft shall be allowed to land.

3. All inmates shall be kept away from the aircraft.

4. The aircraft shall be secured using armed security staff and shall be prevented from being flown away by securing the flight equipment with locks and chains without causing damage to the aircraft.

5. If the landing occurs due to an in-flight emergency, e.g., engine failure, staff shall maintain security of the aircraft and all occupants until their removal from the site.

6. Once the aircraft lands, efforts shall be directed to stop any inmate from boarding the aircraft. Staff are authorized to shoot any inmate attempting to escape in accordance with this rule. When circumstances permit, a verbal warning to halt and a warning shot shall be fired prior to the inmate reaching the aircraft to board.

7. If weapons are fired from an aircraft, Department personnel are authorized to return fire and use deadly force to protect the themselves and others upon property of the institution.

8. Firearms shall not be used on departing aircraft after leaving contact with the ground. Immediate notification, without delay, shall be made to the law enforcement agency of local jurisdiction and the Office of Inspector General upon an aircraft landing on Department property. The Office of Inspector General shall notify the Florida Department of Law Enforcement, Federal Bureau of Investigation, and the Federal Aviation Administration.

9. All inmates shall receive orientation in regard to this subsection of the rule. This orientation shall contain instructions indicating that should any aircraft attempt to land on or near the property of any Department facility, inmates are required to move away from the aircraft. Movement toward the aircraft by an inmate shall be viewed as an escape attempt and shall subject the inmate to the use of deadly force to prevent him or her from escaping.

10. This subsection of the rule shall be made a part of the Department's orientation program at all reception centers.

(h) Use of a conveyance to gain unauthorized entry into or exit from a correctional institution or facility. The institution or facility shall take the following steps to prevent any conveyance or vehicle from being used to gain unauthorized forced entry into or forced exit from its perimeter area:

1. Time permitting, a verbal order to halt shall be issued followed by a warning shot if the vehicle fails to stop.

2. If the vehicle does not stop and continues to be driven or operated in a manner that indicates the driver intends to or is in the process of forcibly entering or exiting the perimeter, officers may use deadly force to prevent serious injury or death to any person or to prevent the escape of an inmate.

(i) Any officer who discharges a firearm shall report the incident on Form DC6-210, Incident Report. Any officer who has fired a weapon during the performance of his or her duty, time permitting, shall secure the scene and immediately notify his or her supervisor and the Office of Inspector General. The senior officer in charge at the scene of the incident shall ensure

all evidence is undisturbed, including locations of empty cartridges, until processed by a law enforcement agency or the Office of Inspector General.

(j) Any officer who accidently or negligently discharges a Department firearm or any firearm upon institutional property shall report the incident to the warden or designee without unnecessary delay and shall complete Form DC6-210, Incident Report.

(14) Use of Deadly Force to Prevent Escape or to Recapture Escapee. Officers are authorized to use force, including deadly force, as necessary to prevent the escape of an inmate from a correctional institution.

(a) Escape attempts from inside an institutional perimeter where armed perimeter staff are assigned:

1. A loud verbal warning shall be made, if possible, instructing the inmate to stop or halt prior to the inmate's contact with any inner fence in institutions that have a double fence. A warning shot may be safely fired prior to any inmate's attempt to cross or pass over, through, or under the inner fence. The firearm shall not be fired at the inmate until he or she has begun to cross or pass over, through, or under the inner fence.

2. A loud verbal warning shall be reasonably made where possible instructing the inmate to stop or halt and a warning shot safely fired prior to the inmate's contact with the fence. A firearm shall not be fired at the inmate until he or she has begun to cross, or to pass over, through, or under the fence in institutions that have a single fence.

3. Warning shots are authorized only as provided herein. In all other instances where deadly force is authorized during inmate escape attempts, a loud verbal warning shall be issued if time and circumstances permit.

(b) Apprehension of escaped inmates once they are outside an institutional perimeter.

1. Officers are considered to be in active pursuit of an escaped inmate who has fled from an institution or supervised work detail so long as the escape commander determines that the escape recovery efforts are active. An officer is authorized to use deadly force, after giving a loud verbal warning for the inmate to stop or halt the escape attempt, when the inmate is demonstrating a refusal to cease active flight or escape from an institution or supervised work detail. A firearm shall not be fired if it creates a hazard to persons other than the inmate.

2. The officer in charge of the incident shall be the Incident Commander until relieved by a higher authority or the incident is turned over to a law enforcement agency or the Office of Inspector General. The Incident Commander of the escape attempt shall determine when active recapture efforts are terminated. Upon order of incident termination, the Incident Commander of the escape attempt may provide assistance to any law enforcement agency that is conducting an investigation of the incident. Officers who are utilized to assist outside law enforcement agencies are authorized to use deadly force pursuant to Florida law.

3. Officers may provide assistance to any law enforcement agency that is seeking to capture or take into custody any inmate who has failed to return from a furlough or non-supervised outside assignment or who has escaped from any work release center. Correctional officers who are utilized to assist outside law enforcement agencies are authorized to use deadly force pursuant to Florida law.

(c) Escape attempts by inmates who are being transported or escorted outside institutional perimeters, e.g., court appearances, hearings, and medical visits, or while being supervised while in a hospital for treatment, are included within the purview of this subsection.

(15) Other authorized uses of force. The use of electronic immobilization devices (EIDs), batons, chemical agents, specialty impact munitions, or other less lethal weapons within institutions shall be authorized only by the warden or designee. Such weapons shall be utilized by officers who have completed training on their use and shall be used in accordance with manufacturer specifications.

(a) Use of EIDs and less lethal weapons. EIDs shall not be used on anyone other than an inmate during an authorized use of force or upon any person to prevent serious injury or death. EIDs authorized by the Department include:

1. Handheld EIDs, which shall be the intermediate level of force alternative, issued primarily for the purpose of transportation and supervision of inmates outside the institution;

2. Electronic shields, which may be used by force cell extraction teams;  and

3. Electronic restraint belts, which are authorized to be placed on an inmate for appearance in court, during transportation, or when the inmate is determined to be high risk or to have a history of violent behavior.

4. If possible, the shift supervisor shall counsel with the inmate, issue the final order, and be present prior to the use of an EID at an institution or during work detail or transport.

5. Handheld EIDs shall be issued to unarmed officers on any inmate transport or any outside hospital visit where firearms are issued. The chief of security or, in his or her absence, the shift supervisor shall determine the number of officers who will be issued firearms and EIDs during the transportation or movement of inmates.

6. An inmate shall be provided a medical examination and treatment as necessary any time he or she has been subject to an application of an EID or less lethal weapon. Medical staff shall, upon completing the medical examination, make a mental health referral for each inmate who is classified with a mental health grade

of S-2 or S-3. A referral shall be made upon Form DC4-529, Staff Request/Referral, and forwarded to mental health staff as soon as possible. Mental health staff shall evaluate an inmate no later than the next working day to determine whether a higher level of mental health care (for example, isolation management, transitional care, or crisis stabilization) is indicated.

7. The application of force by an EID or less lethal weapon shall be reported by completion of Form DC6-230, Report of Force Used, by the officer who deployed the device.

8. EIDs and other less lethal weapons shall be stored and maintained in either the main arsenal or the control room mini-arsenal. The warden may authorize, in writing, the storage of one handheld unit and one shield in the confinement unit or close management unit. All EIDs or less lethal weapons shall be secured in a locked cabinet when not in use. The arsenal sergeant shall be responsible for the proper documentation of the maintenance, storage, and issue of EIDs and less lethal weapons.

9. All EIDs and other less lethal weapons shall be accounted for in the same manner as firearms.

10. There shall be no attempt to alter, tamper with, or repair any EID or less lethal weapon. Devices shall be sent to an authorized repair station if a malfunction occurs or repair is necessary. Any EID or less lethal weapon that is dropped or is subject to possible damage shall be immediately tested to determine if it is safe and properly functioning. EIDs shall not be used after the application of any chemical agents.

(b) Specialty impact munitions. Specialty impact munitions shall be used primarily by the Department's designated armed response teams, Rapid Response Teams, Correctional Emergency Response Teams and/or trained staff as authorized by the Assistant Secretary of Institutions for use during riots and disturbances and to respond to staff assaults. They are intended as a less lethal alternative to the use of deadly force. Specialty impact munitions shall not be used on anyone other than an inmate during an authorized use of force.

1. The following specialty impact munitions have been approved for use by the Department:

a. 37/40-mm rubber ball pellet rounds;

b. 12 gauge rubber ball pellet rounds -- high velocity;

c. 12 gauge rubber ball pellet rounds -- low velocity;

d. 12 gauge drag stabilized (bean bag) rounds;

e. 37/40-mm wooden baton rounds (skip fired 6 feet in front of target, no direct fire);

f. Stinger rubber ball grenades (stun grenade);

g. 40-mm impact munitions (OC, marking and inert foam) long range;  and

h. 40-mm impact munitions (OC, marking and inert foam) short range.

2. Specialty impact munitions engagement distance will be in accordance with training and dependent on the situation and the level of force required to resolve the situation.

3. Selection and deployment of specialty impact munitions during a riot or disturbance or other instance where less lethal force options are needed shall be authorized by the Secretary, regional director, or warden or designee.

4. Specialty impact munitions shall only be used after all other reasonable alternatives to regain control have been exhausted and their use is necessary. They are intended to be used as an interim force response between the use of chemical agents and lethal force.

5. Specialty impact munitions shall not be deployed in the direction of any individual in a manner contrary to the manufacturer's directions or at a distance of less than that recommended by the manufacturer, unless the threat of bodily harm or death justifies the escalation to deadly force.

6. Storage of Specialty Impact Munitions.

a. Specialty impact munitions shall be stored and maintained in the main arsenal.

b. Specialty impact munitions shall not be mixed with lethal munitions. Weapons designated to deploy specialty impact munitions shall be marked in a manner to alert staff of their intended use.

c. All specialty impact munitions shall be accounted for in the same manner as firearms and ammunition.

7. After each use of specialty impact munitions, exposed inmates shall be examined by medical personnel.

8. In any case where specialty impact munitions are deployed, the incident shall be recorded on Form DC6-230, Report of Force Used.

(c) Pepperball Launching System (PLS). The PLS shall be used primarily by restricted labor squad supervisors and exercise officers for confinement, close management, maximum management, and death row populations. The PLS is intended for the dispersal of chemical agents in situations where the use of aerosol-type agents would not be effective due to weather conditions or when their use could subject the officer or uninvolved inmates to injury. The PLS shall only be employed by officers trained in their use and effects.

1. The Secretary shall designate those institutions authorized to use the PLS.

2. In controlled situations when time constraints are not an issue, the PLS can only be used if authorized by the warden or designee. The warden or designee shall only authorize trained and certified officers to use the PLS.

3. The PLS is authorized for use to quell mass disturbances, violent events, assaults, and fights among inmates assigned to restricted labor squads. Authorized activation of the PLS by staff assigned to restricted labor squads does not constitute deadly force.

4. PLS is authorized for use in confinement, close management, maximum management, and death row recreation areas to quell mass disturbances, violent events, assaults, and fights among inmates.

5. PLS is classified as less-than-lethal at all distances, but, unless the incident necessitates otherwise, it should be primarily utilized at a distance of five (5) feet or greater to prevent the inmate from attempting to take control of the launcher.

6. Written authorization from the warden or designee shall be received prior to utilization of the PLS for situations other than those described in subparagraphs 3. and 4. above. This written authorization shall detail the reasons it was necessary to utilize the PLS in addition to or in place of aerosol-type chemical agents.

7. All subsequent reports, medical requirements, and reviews required for the use of chemical agents as outlined in this rule shall be completed after the use of the PLS.

8. Each assigned PLS system shall be numbered, maintained, and inventoried by the shift supervisor or designee on Form DC6-216, Chemical Agent Accountability Log.

9. Noise flash distraction devices. Noise flash distraction devices shall be used primarily by the Department's Rapid Response Teams, Correctional Emergency Response Teams and/or other trained staff as authorized by the Assistant Secretary of Institutions for the purpose of creating a momentary diversion to assist correctional staff in restoring order in hostile situations. These situations include hostage rescue, crowd control and certain escape and recapture efforts.

a. The following noise flash distraction devices have been approved for use by the Department:

(I) Hand-launched, reloaded noise flash distraction devices;

(II) Hand-launched, single use noise flash distraction devices;

(III) Shotgun-launched (aerial distraction) noise flash distraction devices.

(16) Medical Attention Following Use of Force. Appropriate medical treatment shall be provided immediately or, in the case of a riot or other man-made or natural disaster, as soon as possible following resolution of the riot or disaster. Any treatment or follow-up action shall be documented on Form DC6-230, Report of Force Used. A Qualified Health Care Provider shall examine any person physically involved in a use of force to determine the extent of injury, if any, and shall prepare a report that shall include a statement of whether further examination by a physician is necessary. Any noticeable physical injury shall be examined by a physician, and the physician shall prepare a report documenting the extent of the injury and the treatment prescribed. Such report shall be completed within one (1) business day of the incident and shall be submitted to the warden for initial review. The qualified health provider and physician shall use Form DC4-701C, Emergency Room Record, to document an examination following use of force. Form DC4-708, Diagram of Injury, shall be used along with Form DC4-701C to document observed or known physical injuries. A copy of the report, including referenced forms, shall be attached to Form DC6-230. The original reports shall be filed in the inmate's medical record.

(17) No weapon shall be issued for any purpose other than the authorized use of force or to a certified training officer for the purpose of approved training without prior written authorization from the warden or designee.

Amended Nov. 5, 2013.
Authority: > 944.09 FS.  Law Implemented > 776.07, > 944.09, > 944.35 FS.

WEST'S FLORIDA ADMINISTRATIVE CODE
TITLE 33. DEPARTMENT OF CORRECTIONS
CHAPTER 33-602. SECURITY OPERATIONS
Current with amendments available through March 31, 2014.

# DISCIPLINARY PROCEEDINGS

**33-601.301    Inmate Discipline - General Policy.**

(1) Inmate behavior that is not in compliance with department rules shall be corrected through the disciplinary process, which includes informal disciplinary intervention.

(2) Informal disciplinary intervention consists of group and individual counseling in lieu of formal disciplinary action. These corrective techniques are employed when deviations from rules occur due to lack of understanding or as the result of carelessness or faulty habits, and are designed to eliminate future disciplinary violations and to develop acceptable standards of behavior.

(3) The goals and purposes of discipline and informal disciplinary intervention, the terms used, as well as the procedures outlined in this rule will be incorporated into the staff training program. A copy of Rules 33-601.301-.314, F.A.C., and all revisions thereto will be made available to all employees.

(4) Every inmate shall have access to Rules 33-601.301-314, F.A.C. Inmates in open population shall have access to these rules from the inmate library, law library, or any other area accessible to inmates as deemed appropriate by the warden. Inmates who are not in open population shall have access to these rules through their housing officer in the confinement unit. Inmates in institutions or facilities without libraries shall have access to these rules from the classification office, the security shift supervisors office, or any other area accessible to inmates as deemed appropriate by the warden. Inmates shall be notified of any change by posting and circulation. These rules shall be translated into any language native to five percent or more of the statewide inmate population. These translations shall be made

available to inmates. When a literacy or language problem prevents an inmate from understanding the rules, a staff member or translator shall assist the inmate in understanding the rules.

(5) The provisions of Rules 33-601.301-314, F.A.C., shall be applicable to correctional facilities and programs operated by the department and to correctional facilities operated by private vendors under contract with the department.

## AUTHORITY

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 945.04 FS.

## HISTORY

New 3-12-84, Formerly 33-22.01, Amended 12-30-86, 10-1-95, Formerly 33-22.001, Amended 2-12-15.

**33-601.302    Inmate Discipline - Terminology and Definitions.**

The following terms, as defined, shall be standard usage throughout the Department:

(1) Classification Officer - As used herein, refers to any classification officer position, including senior classification officer and classification supervisor.

(2) Contact Card - Refers to Form DC6-256, a written log used to document behavior of an inmate, other than an inmate in administrative confinement, disciplinary confinement or close management. Correctional officers maintain this card in the inmates assigned dormitory. Form DC6-256 is incorporated by reference in paragraph 33-601.313(1)(c), F.A.C.

(3) Corrective Consultation - A written reprimand for a violation of rules of such a minor nature that no disciplinary report is necessary.

(4) Department Head - The staff person in charge of a work unit at a correctional facility.

(5) Designating Authority - The classification supervisor responsible for the review of disciplinary reports prior to hearing to determine if the disciplinary report is in accordance with due process requirements and Rules 33-601.301-.314, F.A.C., and whether it shall be designated as minor or major as defined by subsections 33-601.302(11) and (12), F.A.C.

(6) Disciplinary Hearing - The procedure used to provide administrative due process requirements for inmates charged with violating the rules of the Department.

(7) Disciplinary Report - A formal method of charging an inmate with a rule violation. The disciplinary report is an Offender Based Information System (OBIS) computer screen entry into the Automated Discipline and Integrated Offender System (ADIOS).

(8) Disciplinary Team - A team made up of at least two staff persons, one of whom shall be a classification officer, senior classification officer or classification supervisor, who serves as team chair at the direction of the warden, and a correctional officer lieutenant or above, who will be responsible for hearing disciplinary reports. The correctional officer chief shall designate a correctional officer sergeant as a substitute team member only if neither a lieutenant nor captain is available and only when such substitution is absolutely necessary.

(9) Hearing Officer - An employee who will be responsible for hearing disciplinary reports designated as minor.

(10) Investigator - The staff member assigned to investigate infractions, conduct interviews and collect evidence relating to the disciplinary infraction.

(11) Major Violation - Any rule violation where the maximum penalty is 30 DC and 30 GT or greater, or where the maximum penalty

is less than 30 DC and 30 GT and the designating authority has determined that based upon one or more of the criteria listed in subsection 33-601.302(12), F.A.C., it is assigned to the disciplinary team as a major disciplinary report.

(12) Minor Violation - Any rule violation for which the maximum penalty that could be imposed is less than 30 days disciplinary confinement or 30 days loss of gain time shall be considered for assignment to the hearing officer as a minor disciplinary report based on:

(a) The nature and circumstances of the offense;

(b) The inmates disciplinary history;

(c) The period of time that has elapsed since the inmates last disciplinary report.

(13) Rehearing - A process to reconsider the disciplinary report due to discovery of an error at any time after a finding of guilt.

(14) Staff Assistant - An employee, appointed by the warden, whose name is placed on a list maintained by the disciplinary team and who is assigned by the team to assist the inmate. A staff assistant is not to take the position of an advocate or defense attorney. A staff assistant is assigned to an inmate under the following circumstances:

(a) To explain the charges or disciplinary procedures to the inmate,

(b) To assist the inmate when the disciplinary team determines that the inmate is illiterate or does not understand English,

(c) When the inmate has a disability that would hinder his or her ability to represent himself or herself,

(d) When the complexity of the issue makes it unlikely that the inmate will be able to properly represent himself.

(15) Shift Supervisor - The correctional officer in charge of security on any work shift.

(16) Witness - Any person having information relevant to facts in dispute of the case.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 944.09 FS.

**HISTORY**

New 3-12-84, Formerly 33-22.002, Amended 12-30-86, 10-1-95, Formerly 33-22.002, Amended 5-21-00, 2-11-01, 9-16-04, 7-25-06, 1-28-07.

## 33-601.303    Reporting Disciplinary Infractions.

(1) When any employee or person supervising inmates witnesses an act or has reason to believe that an act has been committed by an inmate which is in violation of the rules or procedures of the Department and that employee determines that the infraction can be properly disposed of without a formal disciplinary report, the employee shall take the necessary action to resolve the matter. The employee may decide to reprimand the inmate verbally or in writing through use of Form DC6-117, Corrective Consultation of Inmate.

(a) A verbal reprimand is any employees verbal counseling to the inmate designed to motivate the inmate to comply with, or to clarify the rules of prohibited conduct, departmental rules or procedures or institutional regulations. Verbal reprimands will be documented on the inmates contact card, Form DC6-256. Form DC6-256 is incorporated by reference in paragraph 33-601.313(1)(c), F.A.C.

(b) If the employee decides to reprimand the inmate in writing, the employee shall issue the inmate a Corrective Consultation, Form DC6-117. Form DC6-117 is incorporated in Rule 33-601.313, F.A.C. A copy of the corrective consultation will be provided to the inmate within twenty-four hours of the writing of the corrective consultation and a copy will be placed in the inmates institutional file.

(2) If the employee cannot resolve the matter through a verbal reprimand or corrective consultation, the employee shall consult with and obtain approval from his or her supervisor regarding preparation of a formal disciplinary report, unless the employee is at the department head level or correctional officer lieutenant level or above.

(3) When it appears that laws of the state have been violated, the Office of the Inspector General shall be notified, who will in turn contact the State Attorney when deemed appropriate. If the State Attorney decides to prosecute, his office shall be consulted as to the suitability of disciplinary action being taken by the institution prior to the prosecution being concluded.

(a) If the State Attorney has no objections, formal disciplinary action shall proceed.

(b) If the State Attorney objects to disciplinary action prior to prosecution, the file shall be flagged so that the investigation and disciplinary process can be completed once the criminal prosecution has been resolved.

(c) Failure to notify the state attorney prior to taking disciplinary action is not grounds for dismissal of the disciplinary report.

(4) The commission of acts that should normally result in consideration for formal disciplinary action shall not be subject to such action when these acts are directly associated with an inmates intentional self-injurious behavior.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 944.09, 945.04 FS.

**HISTORY**

New 3-12-84, Formerly 33-22.04, Amended 12-30-86, 10-1-95, Formerly 33-22.004, Amended 5-21-00, 2-11-01, 9-22-09.

**33-601.304   Preparation of Disciplinary Reports.**

(1) Only one violation shall be included in each disciplinary report. Separate disciplinary reports shall be used for multiple offenses.

(2) The statement of facts shall include:

(a) A description of the violation, including date, time and place;

(b) The specific rules violated;

(c) A formal statement of the charge;

(d) Any unusual inmate behavior;

(e) Any physical evidence and its disposition;

(f) Any immediate action taken; and

(g) Any other specific facts necessary for an understanding of the charge.

(3) The completed disciplinary report shall be turned in to the shift supervisor.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 944.34, 945.04 FS.

**HISTORY**

New 3-12-84, Formerly 33-22.005, Amended 12-30-86, 10-1-95, Formerly 33-22.005, Amended 5-21-00, 2-11-01, 3-22-05.

**33-601.305   Inmate Discipline - Investigations.**

The investigating officer shall initiate the investigation of the infraction within 24 hours of the writing of the disciplinary report. The investigating officer is responsible for the following:

(1) Interviewing the charging staff member.

(2) Interviewing the charged inmate. When interviewing the charged inmate the investigator is responsible for the following:

(a) Delivering the charge to the inmate by reading the charge and statement of facts to the inmate.

(b) Ensuring that the inmate has been provided a written copy of the charges.

(c) Appointing a staff assistant if necessary.

(d) Obtaining the inmates version of the infraction.

(e) Asking the inmate if there are any witnesses or evidence to offer in the inmates behalf.

(f) Completing and obtaining the inmates signature on the Witness Disposition, Form DC6-112B, and the Documentary or Physical Evidence Disposition, Form DC6-151. Form DC6-112B and Form DC6-151 are incorporated by reference in Rule 33-601.313, F.A.C.

(g) Completing Form DC6-2028, Disposition of Videotape/Audiotape Evidence, when necessary. Form DC2-2028 is incorporated by reference in Rule 33-601.313, F.A.C.

(3) Interviewing additional persons who may have information pertaining to the infraction, including those who are listed in the statement of facts.

(4) Reviewing documentary or physical evidence referenced by the charging staff person or identified by the charged inmate on Form DC6-151, Documentary or Physical Evidence Disposition. When the evidence is a videotape or audiotape identified by the inmate, the inmate must also include a written statement on Form DC6-151 describing what he expects the tape to show. Failure to complete and sign Section II on Form DC6-151 will result in a waiver of the opportunity to have documentary or physical evidence presented at hearing. The investigator shall determine whether, based upon review of the tape itself or the capabilities of the particular taping equipment, the tape described by the inmate does or does not provide evidence to support the inmates statement. If the investigator determines that the tape provides evidence to support the inmates statement, he shall

prepare a summary for the investigative report. If the investigator determines that the tape does not provide evidence to support the inmates statement, the inmate will be provided with the following written statement in the basis of findings section of the disciplinary report: Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmates statement." The investigator shall provide on Form DC6-2028, Disposition of Videotape/Audiotape Evidence, a detailed description of why the tape did not provide evidence to support the inmates statement. In the interest of institutional security, this form shall not be provided to the inmate, but shall be retained with the other disciplinary report documentation.

(5) Recording the results of the investigation on the Disciplinary Investigative Report, Form DC6-112A. Form DC6-112A is incorporated by reference in Rule 33-601.313, F.A.C.

AUTHORITY

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 945.04 FS.

HISTORY

New 10-1-95, Formerly 33-22.0055, Amended 5-21-00, 2-11-01, 3-22-05, 7-10-06.§ 1:

## 33-601.3055    Inmate Discipline - Use of Confidential Informants During Investigation.

The investigator shall interview the informant and obtain a statement of the incident in question. This information shall be recorded by the investigator in the disciplinary investigative report. The investigator shall also document whether the informant has direct or indirect knowledge of the case, whether the informant has provided information in the past, and whether the information has been reliable,

unreliable, or both. If the informant has allegedly provided confidential information in the past, the investigator will document to whom and confirm with the staff member in the disciplinary investigative report. The investigator will document only the informants social security number for identification purposes on the witness disposition form after the charged inmate reviews and signs the form.

AUTHORITY

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 945.04 FS.

HISTORY

New 2-11-01.

## 33-601.306    Disciplinary Team and Hearing Officer.

(1) A person shall not serve as the hearing officer or as a member of the disciplinary team, or participate in the deliberations when they are:

(a) A witness or the person who wrote the charge;

(b) The investigating officer;

(c) The person charged with review of the results of the disciplinary hearing;

(2) The hearing officer shall hear all disciplinary reports designated as minor. At any time before the inmate enters a plea, the inmate may request that the case be referred to the disciplinary team.

(3) The disciplinary team shall hear all disciplinary reports designated as major or when requested by the inmate as in subsection (2) above.

AUTHORITY

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 944.719, 945.04 FS.

HISTORY

New 10-1-95, Formerly 33-22.0056.

## 33-601.307   Disciplinary Hearings.

(1)(a) No hearing shall commence prior to 24 hours following the delivery of the charges except when the inmates release date does not allow time for such notice or the inmate waives the 24 hour period. In such cases, an explanation shall be provided in the basis of findings section of the disciplinary report. The inmate may waive the 24-hour waiting period. In such cases, a waiver must be signed by the inmate, witnessed by an employee, and copies attached to each copy of the disciplinary report. Form DC6-112D, 24 Hour/Refusal to Appear Waiver Form, shall be used for this purpose. The disciplinary team or hearing officer shall provide an explanation in the basis of findings section whenever the waiver process is utilized. Form DC6-112D is incorporated by reference in Rule 33-601.313, F.A.C.

(b) The inmate charged shall be present at the disciplinary hearing unless a confirmed medical condition makes the inmate unable to attend, the inmate demonstrates disruptive behavior, either before or during the hearing, that impedes the process or poses a threat to the safety of others or the security of the institution, or the inmate has waived his right to be present. If the inmate waives the right to be present or refuses to be present, Form DC6-112D, 24 Hour/Refusal to Appear Waiver Form, shall be signed by the inmate and witnessed by an employee. If the inmate refuses to sign the form, this shall be noted and signed by the employee. When an inmate waives the right to be present at the hearing, the inmate may not submit a written closing statement to the disciplinary team or hearing officer in place of the oral closing statement permitted in paragraph (1)(g). If the inmates disruptive conduct makes it necessary to remove the inmate from the hearing, the hearing shall be conducted in the

inmates absence. The reason for the inmates absence shall be explained in the basis of decision section of the disciplinary report.

(c) The hearing officer or disciplinary team member shall read the charge, ask the inmate if the charge is understood, and explain the range of penalties that could be imposed if there is a finding of guilt.

(d) The inmate shall be asked whether staff assistance is required or desired for the hearing. If in the opinion of the hearing officer or disciplinary team the inmate needs staff assistance, such assistance shall be assigned.

(e) In the case of minor violations the hearing officer shall explain to the inmate that he may request that the case be referred to the disciplinary team.

(f) The hearing officer or disciplinary team shall read the statement of facts to the inmate and the inmate shall be asked to plea.

(g) If the inmate pleads guilty," no further evidence needs to be heard. If the inmate pleads not guilty," evidence is to be presented, including witness statement forms obtained from witnesses. If evidence is not revealed to the inmate, the reason(s) shall be documented in the comment section of Form DC6-112B, Witness Disposition Form, the comment section of Form DC6-151, Documentary or Physical Evidence Disposition or the comment section of Form DC6-2028, Disposition of Videotape/Audiotape Evidence, depending on the nature of the evidence, and in the witness comments section in the Departments automated database. Forms DC6-112B, DC6-151, and DC6-2028 are incorporated by reference in Rule 33-601.313, F.A.C. The inmate may make only an oral closing statement concerning the infraction for consideration by the hearing officer or disciplinary team. In the event the inmate refuses to enter a plea, it shall be treated as a not guilty plea insofar as hearing procedures are concerned. A no contest plea shall be handled as a guilty plea.

(h) The hearing officer or disciplinary team shall ensure the following in accordance with Rule 33-601.308, F.A.C.:

1. That a decision of guilt or innocence is made only on the official charge listed on the disciplinary report;

2. That the disciplinary action is proportionate to the infraction;

The hearing officer or the disciplinary team may utilize available resource personnel such as health services staff, work supervisors, or other personnel in a consultative capacity. When consultations occur as part of the hearing process it shall be documented in the basis of findings section of the Disciplinary Report.

(2) The hearing officer or chairman of the disciplinary team has the authority to require the following actions:

(a) That other supporting documents be presented;

(b) That the employee filing the charge personally appear at the hearing;

(c) That the investigating officer appear at the hearing;

(d) That any witness(es) appear at the hearing;

(e) That any other individuals appear at the hearing to clarify information or facts related to the disciplinary report, and

(f) That further investigation be conducted, or evidence presented, or statements presented of unavailable witnesses.

(3) The inmate may request that witnesses appear at the hearing, but inmate witnesses shall not be routinely called before the disciplinary team or hearing officer to provide live testimony for the following reasons:

(a) Multiple hearings are routinely scheduled at one time and the presence of witnesses during these hearings presents a potential security risk for the facility and the safety of staff and inmates as well as a diversion of additional security staff from assigned posts.

(b) The routine presence of inmate witnesses during hearings would cause a disruption in the orderly operation of the facility, as it removes inmates from routine work assignments and programs.

(c) The testimony of witnesses requested by the charged inmate shall be presented at the hearing through Form DC6-112C, Witness Statement Form, unless the inmate:

1. Has completed and signed the witness request form during the investigation;

2. Makes a request at the hearing for a witness to appear to provide live testimony; and

3. The disciplinary team or hearing officer determines that the reason provided by the charged inmate for requesting live testimony overcomes the burden on institutional staff caused by the retrieval and escort of live witnesses as well as the diversion of security staff from assigned posts due to the potential security risk that may result from the appearance of live inmate witnesses and the disruption to the assignments and activities of inmate witnesses. Form DC6-112C is incorporated by reference in Rule 33-601.313, F.A.C.

(d) Failure to sign and complete Form DC6-112B, Witness Disposition Form, during the investigation constitutes waiver of the opportunity to call witnesses either live or by written statement. Form DC6-112B must be used for listing witnesses. Listing witness names on any other document, including Form DC6-112C, Witness Statement, will not result in their being considered.

(e) Additional witnesses. A request for an additional witness who was not listed on the witness request form will be granted if the inmate makes the request at hearing for the additional witness, the expected testimony proffered by the charged inmate indicates that the testimony is material, relevant, and non-repetitive and the inmate presents extraordinary circumstances which prevented him from naming the witness during the investigation. The testimony of the

additional witness shall be presented by written statement unless the procedure of paragraph 33-601.307(3)(c), F.A.C. is followed.

(f) In no case shall a witness be called live or by written statement if his testimony would be irrelevant, immaterial or repetitive.

(g) Witnesses shall not be called or certain information disclosed if doing so would create a risk of reprisal, undermine authority or otherwise present a threat to the security or order of the institution. The inmate witnesses must be willing to testify by means of an oral or written statement provided to the investigating officer, hearing officer, or the disciplinary team.

(h) If the disciplinary team or hearing officer utilizes confidential informant information during the hearing, the disciplinary team or hearing officer shall determine whether the informant has direct or indirect knowledge of the events in question. The disciplinary team or hearing officer shall consider the informants reliability by analyzing the informants past record for providing accurate or inaccurate information. The disciplinary team or hearing officer shall not accept assurance alone from an officer as to the authenticity of the informants information. Hearsay and second-hand knowledge not corroborated by other evidence shall not be used to support a finding of guilt. Unless supported by other evidence, information provided by a single informant shall not be used to support a finding of guilt unless the information is especially compelling. The disciplinary team or hearing officer shall document the information used to determine guilt and the reliability of the information in the basis of decision section of Form DC6-112E, Disciplinary Hearing Worksheet, Form DC6-112E is incorporated by reference in Rule 33-601.313, F.A.C. If disclosure of the information would endanger the informant or adversely affect institutional security and order, the disciplinary team or hearing officer shall document the information and the reasons for not revealing it to

the inmate in the comment section of Form DC6-112B, Witness Disposition Form.

(i) If a witness is requested by the disciplinary team or hearing officer to appear at the hearing and is unavailable the witness statement form shall be accepted as testimony. Signed witness statements used as testimony shall be read to the charged inmate at the hearing except as provided in paragraphs (a) and (c) above. Where a witness statement is not read or the inmate witness does not appear at the hearing as requested, the reason shall be recorded on Form DC6-112B, Witness Disposition Form.

(j) The charged inmate shall not be permitted to question or cross examine witnesses during the hearing.

(k) The only persons present during disciplinary team deliberations shall be the disciplinary team, employees being trained, and others whom the warden, the chief of security, or the classification supervisor have previously authorized to be present after having determined that these persons will not disrupt the hearing and will benefit by observing the proceedings.

(4) The original charge cannot be reduced by the disciplinary team to what might be termed a lesser included offense." Up to the point of the disciplinary team or hearing officer announcing their decision to the inmate, the hearing may be postponed.

(a) The entire disciplinary report may be returned for further review, investigation or correction.

(b) If further review suggests a different charge should have been indicated or that additions, deletions or changes should be made in the statement of facts (change section narrative) then the originator shall rewrite the disciplinary report, a copy of the new or corrected disciplinary report shall be delivered to the inmate, a new investigation shall be prepared and the disciplinary report shall be scheduled for a hearing. The original report shall not be processed. Notation of this

occurrence shall be incorporated in the findings of the disciplinary team or hearing officer with an indication of the reason that the disciplinary report was rewritten and delayed.

(c) The inmate shall be informed of the final decision by the hearing officer or disciplinary team and the basis for that decision.

(d) The hearing officers electronic signature and name or the electronic signature and names of all members of the disciplinary team shall be typed or printed on the Disciplinary Report.

(5)(a) The warden, or designee, of an institution or facility shall determine how an inmates personal property is to be managed when that inmate has to appear at a disciplinary hearing by evaluating the following factors:

1. Maintenance of proper accountability of inmate property;

2. The likelihood of disruptive and belligerent behavior on the part of the inmate in the event that the inmate is found guilty at the disciplinary hearing; and

3. The physical layout of the institution.

(b) The warden, or designee, is authorized to require an inmate to bring all of the inmates personal property to the disciplinary hearing if it is determined that this is necessary after evaluating the factors set out above.

(6) Notwithstanding any other rule to the contrary, when an inmate escapes or is otherwise absent from Department custody, the Department may conduct a disciplinary hearing in the inmates absence at the institution in which the inmate was last confined. Any gain time forfeiture imposed in accordance with this section shall be immediately effective to modify the inmates release date. When the inmate returns to custody the Warden shall have the charges reheard before a disciplinary team within 60 days after the inmates arrival at a permanent institution. The disciplinary team shall ensure that the inmate has all rights required for a hearing as set forth in this rule.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09 FS.

**HISTORY**

New 3-12-84, Formerly 33-22.06, Amended 12-30-86, 10-1-95, 12-10-97, 5-19-98, Formerly 33-22.006, Amended 5-21-00, 2-11-01, 3-22-05, 10-12-05, 7-17-07, 12-3-14.

## 33-601.308   Disciplinary Team, Hearing Officer Findings and Action.

(1) The disciplinary team or hearing officers findings shall enumerate the specific facts derived from the disciplinary report, the disciplinary investigative report or the witness statements and what specific evidence was used in the disciplinary teams or hearing officers conclusion.

(2) The disciplinary team or hearing officer shall make one of the following findings:

(a) Dismiss the charge. If the charge is dismissed the disciplinary report shall not be posted or placed in the inmate file. The dismissal of a disciplinary report may occur due to procedural errors, technical errors or duplication of charges. A dismissal is without prejudice and may be rewritten and reprocessed.

(b) Find the inmate not guilty. If the inmate is found not guilty the disciplinary report shall not be posted or placed in the inmate file. The inmate shall be found not guilty when the facts do not support the charge.

(c) Find the inmate guilty.

(3) If the inmate has been held in administrative confinement pending the disciplinary hearing and the decision is not to impose disciplinary confinement as part of the disciplinary action, the

disciplinary team or hearing officer shall notify the confinement supervisor who shall coordinate the release of the inmate from administrative confinement. If the confinement supervisor discovers other pending issues or actions, the institutional classification team will be required to immediately review the case.

(4) If the inmate is found guilty the disciplinary team shall impose any one or a combination of the below actions. The hearing officers authority is limited to paragraphs (a) through (j) below:

(a) Reprimand the inmate;

(b) The disciplinary team or hearing officer may impose a penalty and then suspend all or any portion of the penalty and place the inmate on a specific term of probation. The maximum probationary period shall not exceed the maximum term of disciplinary confinement possible for a given charge. Probation can only be violated by a guilty finding for a new infraction, including infractions based on non-compliance with the conditions of probation set forth in the original disciplinary report, committed during the term of the probation. Successful completion of the period of probation shall not result in the disciplinary report being expunged;

(c) Suspend any or all routine mailing or visitation privileges for a period not to exceed 180 days. This alternative is available only when the infraction cited is a violation of Rule 33-601.314, F.A.C., Section 9, 9-14 or 9-15 or when the evidence in a disciplinary report for another infraction clearly indicates that the cited infraction occurred during the inmates exercise or utilization of mailing or visiting privileges.

(d) Suspend any other privileges for a period of time not to exceed 60 days;

(e) Assign extra duty assignments during leisure hours;

(f) Assign the inmate to a disciplinary squad for a period not to exceed the time permitted for confinement on that charge;

(g) Assign the inmate to a restricted labor squad for a period not to exceed the time permitted for confinement on that charge;

(h) Assign the inmate for individual review and counseling;

(i) Determine the disposition of contraband items;

(j) Require inmates to pay for damaged, destroyed or misappropriated property or goods, whether state or personal;

1. If two or more inmates are each found to be responsible for the loss or destruction of an item they each shall be liable for an equal portion of the full amount. For example, if the total loss is $ 75 and three inmates are found to be responsible for the loss, each inmate will be required to pay $ 25. The total amount collected shall not exceed the amount of the loss.

2. Payment for damaged, destroyed or misappropriated property shall be at the replacement value and inmate or staff labor costs shall not be included. However, outside labor costs may be charged when the damage is the result of a deliberate destructive act. In such cases, the disciplinary team chairman or hearing officer shall prepare a memo, forward a copy to the service center and place a copy in the inmate file at the local institution detailing the cost involved. The total cost shall be reflected in the disciplinary report.

3. If an inmate does not have sufficient funds to cover the repair or replacement costs, a notation shall be made on the inmates bank account for possible future payment. Should the inmate ever receive money at a facility during the current commitment or during service of continuing consecutive commitments, excepting the release gratuity, the department will be paid prior to issuing funds to the inmate.

4. Costs for medical services resulting from injury may not be imposed.

(k) Assign the inmate to disciplinary confinement on a part-time basis with continued participation in assigned work or programs. Part-time confinement shall not exceed the maximum disciplinary

confinement time permitted for the violation. A part of a day of confinement will be equal to a full day of confinement.

(l) Place the inmate in disciplinary confinement for a period of time not to exceed the maximum penalty for the violation as found in Rule 33-601.314, F.A.C. If an inmate has been placed in administrative confinement pending a disciplinary hearing and the team subsequently recommends a term of disciplinary confinement, the disciplinary team shall consider the time served in administrative confinement in determining the total number of days of recommended disciplinary confinement. Disciplinary confinement shall be utilized only as a last resort;

(m) Recommend loss of accrued gain time up to the maximum penalty prescribed in Rule 33-601.314, F.A.C. A specific number of days recommended for forfeiture shall be indicated. Whenever loss of gain time is recommended, a determination must be made that the inmate has accrued sufficient gain time in order for the forfeiture to be processed unless the recommendation is for a loss of unearned gain time. Even though by definition inmates serving a life term, certain mandatory sentences or death sentences cannot earn or lose gain time, the team is authorized to recommend loss of gain time for these inmates for two reasons: first, this is an indication of the seriousness of the disciplinary action and second, it may be applicable if the life or death sentence is eventually converted to a term of years. Pursuant to Section 944.28(2)(b), F.S., forfeiture of unearned gain time shall be considered when the inmate has been involved in misconduct and the inmate has not accrued enough gain time to achieve the desired corrective results.

(n) Remove inmates on supervised community release from the program and assign them to a designated facility;

(o) Require inmates assigned to work release centers to participate in the work release program to pay the cost of substance abuse analysis test(s) administered when the result(s) are positive.

(5) Any disciplinary action, except loss of gain time, that is being imposed with any other disciplinary action should be clearly stated in the basis of findings as to the concurrent or consecutive requirements. If the disciplinary team or hearing officer does not specifically state concurrent or consecutive requirements, the disciplinary action shall be considered consecutive.

(6) Loss of gain time shall not be concurrent with any other loss of gain time and shall be cumulative.

## AUTHORITY

Rulemaking Authority 944.09, 945.091 FS.

Law Implemented 20.315, 944.09, 945.04, 945.091 FS.

## HISTORY

New 3-12-84, Formerly 33-22.08, Amended 11-13-84, 12-30-86, 6-25-89, 7-17-90, 10-1-95, 11-25-98, 8-5-99, Formerly 33-22.008, Amended 5-21-00, 2-11-01.

## 33-601.309    Inmate Discipline - Review and Final Action.

(1) The chief correctional officer at a work release center, or the senior staff person at a contract facility shall review the disciplinary action and recommend approval, modification or disapproval to the warden.

(2) The warden acts as the final reviewing and approving authority for all disciplinary reports in which the recommended penalty does not exceed a loss of more than 365 days of gain time.

(3) The regional director of institutions acts as the final reviewing authority for all disciplinary reports in which the recommended penalty exceeds 365 days loss of gain time.

(4) The warden or regional director of institutions shall approve, modify downward or disapprove the recommended disciplinary action. The above mentioned or the deputy assistant secretary - programs is authorized to direct a rehearing of the disciplinary report as provided for in Rule 33-601.310, F.A.C. The review shall be limited to the matters contained in the disciplinary report. If new evidence or procedural error is discovered, the warden or regional director shall remand the disciplinary report to the hearing officer or disciplinary team for a rehearing as provided for in Rule 33-601.310, F.A.C. Review of each disciplinary report is the responsibility of the warden or regional director and cannot be delegated to other staff members.

(5) When the warden is the reporting officer of a disciplinary report the regional director of institutions shall act as reviewing and approving authority.

(6) In the case of privately operated correctional institutions, the correctional services administrator position in the regional office is the final approving authority for all disciplinary reports, except those as defined in subsection 33-601.309(3), F.A.C.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

**HISTORY**

Law Implemented 20.315, 944.09, 944.275, 944.28, 944.719, 945.04 FS.

New 3-12-84, Formerly 33-22.09, Amended 12-30-86, 10-1-95, Formerly 33-22.009, Amended 5-21-00, 2-11-01, 3-22-05.

## 33-601.310  Inmate Discipline - Rehearings.

(1) If an error is discovered at any time after an inmate has been found guilty of a disciplinary infraction, the warden, the facility administrator of a private facility, or the deputy director of institutions (classification) or designee is authorized to cause a rehearing to take place within 30 days of the discovery of the error or the receipt of a successful grievance or appeal. The individual ordering the rehearing shall note the specific reasons for the rehearing on the disciplinary report. A rehearing shall not be held following a finding of not guilty.

(2) The investigation may incorporate those portions of the previous investigation that are not affected by the need for the rehearing. The rehearing shall proceed according to the provisions of Rule 33-601.307, F.A.C. No inmate is authorized to request a rehearing.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 944.719, 945.04 FS.

**HISTORY**

New 10-1-95, Formerly 33-22.0105, Amended 5-21-00, 2-11-01.

## 33-601.311  Inmate Discipline - Miscellaneous Provisions.

(1) Interstate Compact Cases. Inmates confined in this Department on interstate transfer are to be disciplined in the same fashion as anyone sentenced within the state of Florida. Following the review process, a copy of all disciplinary reports on interstate corrections compact cases (institutions) shall be forwarded to the interstate corrections compact administrator in the Bureau of Classification and Central Records, who will then forward the



disciplinary report to the sending state for information and concurrence.

(2) Transfers.

(a) If, in the course of conducting disciplinary procedures, a job reassignment or transfer is indicated, it shall be handled as classification matters are normally handled at that institution and not as a disciplinary decision.

(b) If it becomes necessary to transfer an inmate who is awaiting disciplinary action, the team hearing should be held prior to the transfer. Exceptions to this shall be made in circumstances where the situation dictates immediate transfer before the disciplinary hearings can be held. A memorandum explaining the circumstances precluding the scheduling of the hearing shall be sent with the inmate record at the time of the transfer. The sending institution shall complete the heading section, identifying the inmate and charge, and statement of facts, of the disciplinary report. The disciplinary investigation report shall be completed by the sending institution if time permits, and forwarded to the receiving institution. The receiving institution shall complete the inmate notification, the disciplinary investigation report and the designating authority review, if not completed prior to transfer. The Team/Hearing Officer Findings and Action, shall be completed by the receiving institution after the hearing and approved by the warden.

(c) If it becomes necessary to transfer an inmate who is serving a disciplinary penalty to another institution and the sending institution feels this disciplinary penalty should continue at the receiving institution, the sending institution shall attach a copy of the disciplinary report to the inmate file, and attach a complete cover memorandum requesting that the penalty be continued at the receiving institution.

(3) Should disagreements occur between the facility administrator of a privately operated correctional institution and the classification staff pertaining to disciplinary matters, the regional director of institutions shall be responsible for resolution.

(4) Once an employee has written a disciplinary report and submitted it to the shift supervisor, any rejection, disapproval, dismissal or finding of not guilty shall be communicated to the employee who initiated the report by the official making the decision, along with the reason for the rejection, disapproval, dismissal or finding of not guilty. This feedback is intended to foster overall improvement of the discipline process.

(5) The director of classification and programs is authorized to order a disciplinary report expunged from the inmate record in cases affecting the integrity of the disciplinary process or procedures. No inmate has the right to request the expunging of a disciplinary report in conjunction with this subsection.

AUTHORITY

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 944.719, 945.04 FS.

HISTORY

New 3-12-84, Formerly 33-22.11, Amended 12-30-86, 5-24-90, 10-1-95, Formerly 33-22.011, Amended 5-21-00, 2-11-01, 7-8-03, 10-7-12.

**33-601.312    Telephonic or Video Disciplinary Hearings.**

(1) Disciplinary hearings through telephone or video communication are authorized in the event an inmate has been transferred to another facility and a disciplinary hearing is pending.

(2) The conduct of the Disciplinary Hearing shall conform to all provisions of Rule 33-601.307, F.A.C.

(3) The disciplinary report, disciplinary investigative report, and disciplinary report worksheet should be completed at the institution where the inmate notification is delivered to the inmate.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

**HISTORY**

Law Implemented 20.315, 944.09, 944.719, 945.04 FS.

New 10-1-95, Formerly 33-22.0115, Amended 5-21-00.

## 33-601.313    Inmate Discipline - Forms.

(1) The following forms used in implementing the provisions of this chapter are hereby incorporated by reference:

(a) DC6-112E, Disciplinary Hearing Worksheet, effective 3-22-05.

(b) DC6-112A, Disciplinary Investigative Report, effective 5-21-00.

(c) DC6-256, Housing Officers Contact Card, effective 2-11-01.

(d) DC6-112D, 24 Hour/Refusal to Appear Waiver Form, effective 5-21-00.

(e) DC6-112C, Witness Statement Form, effective 8-28-06.

(f) DC6-112F, Disciplinary Report Worksheet, effective 7-11-06.

(g) DC6-151, Documentary or Physical Evidence Disposition, effective 3-22-05.

(h) DC6-112B, Witness Disposition Form, effective 12-5-10.

(i) DC6-117, Corrective Consultation of Inmate, effective 5-21-00.

(j) DC6-202B, Disposition of Videotape or Audiotape Evidence, effective 3-22-05.

(2) Copies of these forms can be obtained from the Forms Control Administrator, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

**AUTHORITY**

Rulemaking Authority 944.09 FS.

Law Implemented 20.315, 944.09, 945.04 FS.

**HISTORY**

New 10-1-95, Formerly 33-22.0117, Amended 5-21-00, 2-11-01, 3-22-05, 7-11-06, 8-28-06, 12-5-10.

Current with chapters in effect from the 2011 First Regular Session of the Twenty-Second Legislature through October 1, 2011

**943.1395. Certification for employment or appointment; concurrent certification; reemployment or reappointment; inactive status; revocation; suspension; investigation**

(1) The commission shall certify, under procedures established by rule, any person for employment or appointment as an officer if:

(a) The person complies with > s. 943.13(1)-> (10); and

(b) The employing agency complies with > s. 943.133(2) and > (3).

(2) An officer who is certified in one discipline and who complies with > s. 943.13 in another discipline shall hold concurrent certification and may be assigned in either discipline within his or her employing agency.

(3) Any certified officer who has separated from employment or appointment and who is not reemployed or reappointed by an employing agency within 4 years after the date of separation must meet the minimum qualifications described in > s. 943.13, except for the requirement found in > s. 943.13(9). Further, such officer must complete any training required by the commission by rule in compliance with > s. 943.131(2). Any such officer who fails to comply with the requirements provided in > s. 943.131(2) must meet the minimum qualifications described in > s. 943.13, to include the requirement of > s. 943.13(9).

(4) The certification of an officer who fails to comply with > s. 943.135(1) shall be inactive, and the officer may not be employed or appointed as an officer until he or she complies with the provisions of > s. 943.135(1).

*Tallahassee Inspector General*

(5) The employing agency must conduct an internal investigation if it has cause to suspect that an officer is not in compliance with, or has failed to maintain compliance with, > s. 943.13(4) or > (7). If an officer is not in compliance with, or has failed to maintain compliance with, > s. 943.13(4) or > (7), the employing agency must submit the investigative findings and supporting information and documentation to the commission in accordance with rules adopted by the commission. The commission may inspect and copy an employing agency's records to ensure compliance with this subsection.

(6) The commission shall revoke the certification of any officer who is not in compliance with the provisions of > s. 943.13(4) or who intentionally executes a false affidavit established in > s. 943.13(8), > s. 943.133(2), or > s. 943.139(2).

(a) The commission shall cause to be investigated any ground for revocation from the employing agency pursuant to > s. 943.139 or from the Governor, and the commission may investigate verifiable complaints. Any investigation initiated by the commission pursuant to this section must be completed within 6 months after receipt of the completed report of the disciplinary or internal affairs investigation from the employing agency or Governor's office. A verifiable complaint shall be completed within 1 year after receipt of the

(b) The report of mileage on all records or information provided to or developed by the commission during the course of an investigation conducted by the commission are exempt from the provisions of > s. 119.07(1) and > s. 24(a), Art. 1 of the State Constitution and, except as otherwise provided by law, such information shall be subject to public disclosure only after a determination as to probable cause has been made or until the investigation becomes inactive.

2. However, not more than 30 days before the results of an investigation are to be presented to a probable cause panel, an officer who is being investigated, or the officer's attorney, may review any documents or other information regarding the investigation which was developed by or provided to the commission.

(c) When an officer's certification is revoked in any discipline, his or her certification in any other discipline shall simultaneously be revoked.

(7) Upon a finding by the commission that a certified officer has not maintained good moral character, the definition of which has been adopted by rule and is established as a statewide standard, as required by > s. 943.13(7), the commission may enter an order imposing one or more of the following penalties:

(a) Revocation of certification.

(b) Suspension of certification for a period not to exceed 2 years.

(c) Placement on a probationary status for a period not to exceed 2 years, subject to terms and conditions imposed by the commission. Upon the violation of such terms and conditions, the commission may revoke certification or impose additional penalties as enumerated in this subsection.

(d) Successful completion by the officer of any basic recruit, advanced, or career development training or such retraining deemed appropriate by the commission.

(e) Issuance of a reprimand.

(8)(a) The commission shall, by rule, adopt disciplinary guidelines and procedures to administer the penalties provided in subsections (6) and (7). The commission may, by rule, prescribe penalties for certain offenses. The commission shall, by rule, set forth aggravating and mitigating circumstances to be considered when imposing the penalties provided in subsection (7).

(b) 1. The disciplinary guidelines and prescribed penalties must be based upon the severity of specific offenses. The guidelines must provide reasonable and meaningful notice to officers and to the public of penalties that may be imposed for prohibited conduct. The penalties must be consistently applied by the commission.

2. On or before July 1 of each odd-numbered year, the commission shall conduct a workshop to receive public comment and evaluate disciplinary guidelines and penalties. The commission chair shall appoint a 12-member advisory panel, composed of six officers and six representatives of criminal justice management positions, to make recommendations to the commission concerning disciplinary guidelines.

*subsection 943.1395 (5), Florida Statutes, specifies that*

(c) For the purpose of implementing the penalties provided in subsections (6) and (7), the chair of the commission may appoint one or more panels of three commissioners each to determine probable cause. In lieu of a finding of probable cause, the probable cause panel may issue a letter of guidance to the officer.

(d) When an employing agency disciplines an officer and the officer's employment is continued or reinstated by the agency, the Criminal Justice Professionalism Program shall review the sustained disciplinary charges and disciplinary penalty to determine whether the penalty conforms to the disciplinary penalties prescribed by commission rule, and, in writing, notify the employing agency and officer of the results of the review. If the penalty conforms to the disciplinary penalty provided by rule, the officer and employing agency shall be notified, by a letter of acknowledgment, that no further action shall be taken. If the penalty does not conform to such disciplinary penalty prescribed by rule, the officer and employer shall be notified, in writing, of further action to be taken. The commission shall adopt rules establishing procedures for administering this subsection.

(e) An administrative law judge assigned to conduct a hearing under > ss. 120.569 and > 120.57(1) regarding allegations that an officer is not in compliance with, or has failed to maintain compliance with, > s. 943.13(4) or > (7) must, in his or her recommended order:

1. Adhere to the disciplinary guidelines and penalties set forth in subsections (6) and (7) and the rules adopted by the commission for the type of offense committed.

2. Specify, in writing, any aggravating or mitigating circumstance that he or she considered in determining the recommended penalty.

Any deviation from the disciplinary guidelines or prescribed penalty must be based upon circumstances or factors that reasonably justify the aggravation or mitigation of the penalty. Any deviation from the disciplinary guidelines or prescribed penalty must be explained, in writing, by the administrative law judge.

(9) Each person employed pursuant to > s. 943.131 is subject to discipline by the commission. Persons who have been subject to disciplinary action pursuant to this subsection are ineligible for employment or appointment under > s. 943.131.

(a) The commission shall cause to be investigated any conduct defined in subsection (6) or subsection (7) by a person employed under > s. 943.131 and shall set disciplinary guidelines and penalties prescribed in rules applicable to such noncertified persons.

(b) The disciplinary guidelines and prescribed penalties must be based upon the severity of specific offenses. The guidelines must provide reasonable and meaningful notice to officers and to the public of penalties that may be imposed for prohibited conduct. The penalties must be consistently applied by the commission.

(c) In addition, the commission may establish violations and disciplinary penalties for intentional abuse of the employment option provided by > s. 943.131 by an individual or employing agency.

(10) An officer whose certification has been revoked pursuant to this section shall be ineligible for employment or appointment under > s. 943.131.

## CREDIT(S)

Laws 1984, c. 84-258, § 12; Laws 1985, c. 85-224, § 8; Laws 1986, c. 86-187,§ 10; Laws 1987, c. 87-186, § 2; Laws 1988, c. 88-51, § 2; Laws 1992, c. 92-131, § 5; Laws 1993, c. 93-252, § 12; Laws 1994, c. 94-252,§ 1; Laws 1995, c. 95-408, § 3. Amended by Laws 1996, c. 96-406, § 445, eff. July 3, 1996; Laws 1996, c. 96-410, § 319, eff. Oct. 1, 1996; Laws 1997, c. 97-102, § 1850, eff. July 1, 1997; Laws 2003, c. 2003-278, § 4, eff. July 11, 2003; Laws 2004, c. 2004-289, § 2, eff. July 1, 2004; Laws 2010, c. 2010-62, § 6, eff. July 1, 201

EXHIBIT C

3. Medical Records Report.



# SCHRYVER MEDICAL, LLC

a TridentUSA HEALTH SERVICES company
800-638-3240
Radiology Interpretation

PATIENT NAME: FELIX AGOSTA
DATE OF BIRTH: 09/25/1975
ID/MRN: 772216
PHYSICIAN: Szalai ANP, Shelia
FACILITY: CENTURY C.I. FL00004^Medical^^CENTURY C.I.&FL00004 RM: Medical , FL
DATE OF SERVICE: 08/29/2017 13:09:34
HISTORY: Right hip pain S/P use of force, Hx of ORIF Right Knee,

**Hip RT 2v:**
Technique: Right hip, 2 views.
Comparison: 02/08/2017.
Findings:
There is no radiographic evidence of acute fracture or dislocation. The patient is status post ORIF with intramedullary rod and screw fixation of a healed intertrochanteric fracture. The alignment is near anatomic. Soft tissues are unremarkable. The bony mineralization is mildly decreased.

**IMPRESSION:**
1. No radiographic evidence of acute fracture or dislocation. If symptoms persist, consider follow-up radiographs in order to evaluate for initial radiographically occult fracture. In comparison with prior exam, findings are stable.
2. Status post ORIF with intramedullary rod and screw fixation of an intertrochanteric fracture with near anatomic alignment.
3. Mild osteoporosis demonstrated.

**KNEE RT 2V:**
Technique: Right knee, 2 views.
Comparison: None.
Findings:
No radiographic evidence of acute fracture or dislocation. Intramedullary rod distal femur The patella, distal femur, proximal tibia and fibula are intact. There is no deep sulcus sign to suggest anterior cruciate ligament tear. There is no joint effusion. The bony mineralization is normal. Mild narrowing of the medial and patella-femoral joint spaces.

**IMPRESSION:**
1. No definite radiographic evidence of acute fracture or dislocation.
2. Intramedullary rod distal femur.
3. No joint effusion.
4. Mild osteoarthritis.

RECEIVED

AUG 2 9 2017

MEDICAL RECORDS
CENTURY CI

*W. ... mb*
*8/29/17*

*F. Witter MD*
*Century CI*

**MobilexUSA**

# RADIOLOGY REPORT

**THIS REPORT IS BASED SOLELY UPON THE RADIOGRAPHIC EXAMINATION.**
**CORRELATION WITH THE CLINICAL EXAMINATION IS ESSENTIAL.**

**CONFIDENTIALITY NOTICE**: This facsimile (including any accompanying documents) is intended for the use of MobilexUSA or the use of the named addressee(s) to which it is directed, and may contain information that is privileged or otherwise confidential. It is not intended for transmission to, or receipt by, anyone other than the named addressee(s) or person(s) authorized to deliver it to the named addressee(s). If you received this facsimile in error, please report the error by calling the MobilexUSA Privacy Office toll free at 866.686.1717, and providing your name, telephone number and the date. Once you have reported the error, someone from the Privacy Office will contact you within one business day. They may ask you to fax back the information you received so that the company can correct its records and prevent further miscommunication. Please keep the information in a secure place until you are contacted by the Privacy Office and complete the return of the information to that office. Once this is done, please destroy all copies of the mistakenly sent information, without forwarding it. Thank you for your cooperation.

**Facility:** CALHOUN CI - 9906
19562 SE INSTITUTION DRIVE
BLOUNTSTOWN, FL 32424-5156

**DOS:** 04/30/2018
**Case:** 26820833

**Patient:** AGOSTA, FELIX
**Number:** 772216

**DOB:** 09/25/1975   **Age:** 42
**Room:** (MED REC)

**Examination:**

HIP UNI W OR W/O PELVIS 2-3 V, RIGHT

Results: No acute fracture or dislocation. Sacroiliac joints are symmetric. Postop changes from right proximal femur internal fixation

Conclusion: No acute fracture of the hips. Hardware appears intact

Electronically signed by REGINO PADUA CUBE, M.D. 4/30/2018 6:26:29 PM EDT.

**Radiologist:**       **Date:**   04/30/2018       **Time:**   06:26pm ET

**Received in Medica[l]**

MAY 0 1 2018

Calhoun CI

M.Balogun/ARNP
Taylor Ci
Calhoun Ci
5/1/18

REGINO CUBE,MD/LE
RADIOLOGIST
**Physician:** SIMEON VILCHEZ, MD

Please call 1-800-940-0389, option 2, with any questions regarding this report.

South East Region
13773 ICOT BLVD
CLEARWATER, FL 33760
800.940.0389

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
# INMATE SICK-CALL REQUEST

Date: _August 19, 2017_   Time: _____

Inmate Name: _Felix Agosto_   DC#: _772216_

Housing assignment: _H1103 C_

Job assignment: _N/A_

**K. SHELL RN**
**CENTURY CI**

Problem:

☐   Pass/pass renewal

NURSING STAFF ONLY

8/20/17   *signature*
Date Received & Triaged   Signature/Stamp

☐   Medication renewal

☐   Need information (explain): _____

Routine   Urgent   Emergency
8/21/17   *signature*
Date Seen   Signature/Stamp

Lyons, V. LPN
Century C. I.

☐   Mental Health

☐   Dental

☒   Medical (explain): _My Right hip, With the Rod Pin and screw it hurt a lot everytime I move I can't laid down on the Right side because of the Pain. I need to see the doctor_

_*signature*_
_a~_

When did problem/symptoms start? _on August 17, 2017, I was physical abuse by a correctional officer Sergeant._

*Analgesic Bal*
1330

ARNP Saw
8/8/17
2:40
*signature*

Inmate Name _Felix Agosto_
DC# _772216_   Race/Sex _H/M_
Date of Birth _9-25-75_
Institution _Century C. I._

Distribution:  Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise
destroy copy)
This form is not to be amended, revised, or altered
without approval by the Office Health Services-
Administration

DC4-698A (Revised 6/11/08)   Incorporated by Reference in Rule 33-402.101, F.A.C.

# FLORIDA DEPARTMENT OF CORRECTIONS
## OFFICE OF HEALTH SERVICES
## DIAGRAM OF INJURY



Date of occurrence  8/17/17

Time of occurrence  1440

Date injury assessed by medical  1440  8/17/17

Time injury assessed by medical 1440

☒ No injury identified

Description of injury  N/A

Staff Signature

S. POTTER RN
CENTURY CI

**Inmate Name**

**Agosta, Felix**
**DC# 772216 H/M**
**DOB 9/25/1975**

x

This form is not to be amended, revised, or altered without approval by the Office of Health Services- Administration

DC4-708 (Revised 10/07)

Incorporated by Reference in Rule 33-602.210, F.A.C.

**FLORIDA DEPARTMENT OF CORRECTIONS**
**PRE-SPECIAL HOUSING HEALTH EVALUATION**

| Institution: 106 | Date: 8/17/17 | Time: 1440 | | | | |
|---|---|---|---|---|---|---|
| Post Use of Force? ☑No ☐Yes | M | S | W | T | I | SD |
| If yes, was DC4-701C completed? ☐No ☐Yes | | | 2 | | | Ø |

Is inmate demonstrating strange/bizarre behavior or thinking about/threatening/engaging in self-harmful behavior?
☑No ☐Yes→ Describe:

Current Medical Complaint? ☑No ☐Yes → Describe condition and treatment:

Vital Signs: T 97.5 P: 8 R 20 BP: 126/84 Wt: 137   Allergies (list): NKDA

Infirmities or impairment? ☐No ☐Yes→ List findings:

Medications? ☐No ☐Yes→List current medication/s (including psychotropic meds) in table below.

| Medication | Dose | Frequency | Renewal | | Pending Appointments (per inmate/medical record) | | |
|---|---|---|---|---|---|---|---|
| | | | Yes | No | Type | Date | N/A |
| Naproxen | 250mg | BID | ☑ | | Dental | | |
| | | | | | Mental Health | | Ø |
| | | | | | CIC Type: | | |
| | | | | | Special Appt: | | |
| | | | | | Dx Studies | | |

Arrangements for Medication Administration: ☐ Self  ☐ Nursing Staff  ☑ N/A  Via Security
Inmate medication delivered to health care staff? ☐No ☐Yes →Disposition: Via Security
Are there any apparent acute medical/mental health reasons, including any thoughts, threats or gestures of self-injurious behavior, that preclude placement in special housing? ☑No ☐Yes →Explain on back and refer inmate to clinic
Document any other pertinent information on the back
Health Record Reviewed? ☐No ☑Yes → Reason:
Inmate educated on how to access medical, dental and mental health care? ☐No ☑Yes → Reason:

Completed DC4-529 Mental Health Referral for S2/S3? ☑N/A ☐No ☐Yes → Reason:

Completed DC4-650B Risk Assessment? ☐No ☑Yes → Reason:

Clinician notified of inmates medical condition/s that may be exacerbated by use of
Chemical Agents? ☑No ☐Yes        Electronic Immobilization Devices? ☑No ☐Yes

R. McQueen RN
Century CI
Staff member signature/title/name stamp

Agosta, Felix
DC# 772216 H/M
DOB 9/25/1975

Sex _____

DC4-769 (Revised 3/12/14)                    Page 1 of 2
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration

### FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

| | |
|---|---|
| **Allergies:** NKDA | |

**DATE/TIME**

8-8-17    IN: OTRL                    Pass Eval / P. Screening

1240

**VITAL SIGNS**

T: 98°          P: 65
R: 17           BP: 100/55
W: 140   lbs. O2: 97

S: "I have a rod in my leg, it hurts all the time"

O: Inmate reports chronic pain due to history of ORIF ® femur, chronic pain ¶ X ray confirmed hardware

A: low bunk, no push/pull/lift, no prolong standing pass issued — chronic pain

P: Naproxen 250 mg PO BID —
Pass issued —

                              Sheila Szalai NP

Noted 8/8/17 1333 WPM)                    S. SZALAI ARNP-BC
S. POTTER RN CENTURY CI                   CENTURY CI

---

| | |
|---|---|
| **Inmate** Agosta, Felix | S- Subjective Data |
| **DC#** DC# 772216 H/M | O- Objective Data |
| **Date** DOB 9/25/1975 | A- Assessment of S and O Data |
| **Instit** | P- Plan |
| | E- Education |

FLORIDA DEPARTMENT OF CORRECTIONS
**EMERGENCY ROOM RECORD**

**Check all that apply:** ☒ **Inmate** ☐ **Employee** ☐ **Visitor**
☒ **Post-Use-of-Force Exam** ☐ **Injury** ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: _Approx 1450_    Time of exam: _Approx 1515_

Description of occurrence: Inmate brought to medical exam room in H2 confinement after pre confinement + use of force — inmate states "They slammed me on floor in ridcap and sprayed me. I have a pin in my Rt. Hip + Im blind in Left leg. Both eye and hip had earlier surgery." I am a law suit

Post Use of Chemical Agent Instructions: Shower without soap? ☐ N/A ☒ Yes ☐ Refused→ ☐ educated on importance of showering
☐ Report any difficulty breathing ☐ Remain in upright position ☐ Do Not apply lotion to the skin ☐ Splash cool water to eyes 5-10 minutes

Vital Signs: Temperature _97.8_ Pulse _88_ Respiration _18_ O2 Sat _94_ % Blood Pressure _138/80_

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:_____

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☒ C/O pain? If checked, where? _Lt eye + Lt hip pain_

Examination summary: Lungs clear — Post use of force exam — Inmate walked to medical room with O assistance, continuously talking and talking down to security. Refused to stand on scale 1st then did — Both sclera reddened in eyes Rt pupil reactive Lt eye blind (from carpentry Tob sup Rt.) Claims has previously had surgery at (L) eye + Rt hip - states scheduled to see Dr.

Physician notified? ☒ No ☐ Yes   Name:_____ Time:_____   will

Treatment provided? ☐ No ☒ Yes   If yes, describe: _Sent for review (p hours)_ _Assessment_

Response to Treatment: Continuously talking down to security about threats of law suit, improper rights etc.

Disposition: ☐ Population ☒ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☐ Other (explain):
H2

Discharge Instructions and Education: will v on Dr. Appt — wash eyes with lots of clean water + hands washed — S/C if no Dr. visit

Health Care Provider's Signature and Stamp: _Powell_ Date/Time: _8/17/17 / 1530_

Reviewing Physician's Signature and Stamp: _F. Witter MD Century CI_ Date/Time: _8/22/17 1108_

**Name** _Agosta Felix_   Inmate Distribution: White—Health Record
**DC#** _772216_ **Race/Sex** _H/m_   Canary—Inspector General
**Date of Birth** _9/25/75_   Pink—Local Requirements
**Institution** _Cen C I_   White—Safety Officer/Designee
Employee Distribution: Canary—Employee Copy / Pink—DESTROY

DC4-701C (Effective 12/12)

A. Powell, SRN
Century C.I.

Florida Department of Corrections
Radiology Request Form

# Radiology

## PLEASE WRITE LEGIBLY

In the best interest of the patient and referring physician, this examination will not be performed if pertinent clinical information and tentative clinical diagnosis are not provided below: ☐ Diabetic

List allergies:

Ⓡ hip ORIF by hx; involved in altercation - c/o Ⓡ hip pain

NKA

☑ Ambulatory  ☐ Portable  ☐ Stretcher  ☐ Wheelchair

Physician Name (Print) and Name Stamp:

Date of Request: 4/25/18

| X-RAYS | | FLUOROSCOPY | MRI SCANS | ULTRASOUNDS |
|---|---|---|---|---|
| ☐ Ankle R ☐ L ☐ | ☐ Shoulder R ☐ L ☐ | | ☐ Cervical Spine | ☐ Abdomen complete |
| ☐ Cervical Spine | ☐ Sinuses | | ☐ Head/Brain Stem | ☐ Breast |
| ☐ C. Spine, complete | ☐ Skull | | ☐ Hip R ☐ L ☐ | ☐ Gallbladder |
| ☐ Chest | ☐ Sternum | | ☐ Lower Ext, any joint R ☐ L ☐ | ☐ Inguinal Area |
| ☐ Chest, PA and LAT | ☐ T. M. Joints | | ☐ Lower Ext, no joint R ☐ L ☐ | ☐ Liver |
| ☐ Chest PPD | ☐ Thoracic Spine | | ☐ Lumbar Spine | ☐ Lower Ext. R ☐ L ☐ |
| ☐ Clavicle R ☐ L ☐ | ☐ Tibia & Fibula R ☐ L ☐ | | ☐ Neck | ☐ Neck/Soft Tissue/Thyroid |
| ☐ Coccyx | ☐ Wrist R ☐ L ☐ | | ☐ Pelvis | ☐ Paracentesis |
| ☐ Cystogram | **FLUOROSCOPY** | | ☐ Thoracic Spine | ☐ Pelvis |
| ☐ Elbow R ☐ L ☐ | ☐ Arthrogram [      ] | | ☐ Upper Ext, any joint R ☐ L ☐ | ☐ Renal |
| ☐ Facial Bones | ☐ Barium Enema | | ☐ Upper Ext, no joint R ☐ L ☐ | ☐ Scrotum |
| ☐ Femur R ☐ L ☐ | ☐ Cystogram | | | ☐ Thoracentesis |
| ☐ Fingers R ☐ L ☐ | ☐ Esophagram | | | ☐ Upper Ext. R ☐ L ☐ |
| ☐ Foot R ☐ L ☐ | ☐ I.V. Pyelogram | | | |
| ☐ Forearm R ☐ L ☐ | ☐ Lumbar Puncture | | | **VASCULAR STUDY** |
| ☑ Hand R ☐ L ☐ | ☐ Myelogram [      ] | | | ☐ Abdominal Aorta |
| ☑ Hip R ☑ L ☐ | ☐ Venogram R [      ] | | **NUCLEAR MEDICINE** | ☐ Abdominal Aorta with doppler |
| ☐ Humerus R ☐ L ☐ | ☐ U. G. I. Series | | ☐ Bone 3 Phase - Infection | ☐ Arterial Doppler, Lower Ext R ☐ L ☐ |
| ☐ Knee R ☐ L ☐ | ☐ U. G. I. and Small Bowel | | ☐ Bone (Whole Body) | ☐ Arterial Doppler, Upper Ext R ☐ L ☐ |
| ☐ KUB | **CAT SCANS** | | ☐ Cardiac - MUGA | ☐ Carotid Duplex |
| ☐ KUB and UPT | ☐ Abdomen | | ☐ Cardiac -Stress | ☐ Dialysis Graph Duplex R ☐ L ☐ |
| ☐ Lumbar Spine | ☐ Cervical Spine | | ☐ Ceretec - Infection (labeled WBC) | ☐ Vein Mapping for Dialysis R ☐ L ☐ |
| ☐ L. Spine, complete | ☐ Chest | | ☐ Gallbladder (CCK) | ☐ Venous Duplex Lower Ext R ☐ L ☐ |
| ☐ Mandible | ☐ Facial/TMJ | | ☐ Gallbladder (HIDA) | ☐ Venous Duplex Upper Ext R ☐ L ☐ |
| ☐ Nasal Bones | ☐ Head | | ☐ Gallium | |
| ☐ Orbits | ☐ Lower Ext. R ☐ L ☐ | | ☐ Liver/Spleen | **Exams not mentioned above:** |
| ☐ Os Calcis R ☐ L ☐ | ☐ Lumbar Spine | | ☐ Pulmonary V/Q | |
| ☐ Pelvis | ☐ Orbit | | ☐ Renal | |
| ☐ Ribs R ☐ L ☐ | ☐ Pelvis | | ☐ Thyroid and Uptake | |
| ☐ Sacrum | ☐ Soft Tissue Neck | | ☐ Thyroid - Parathyroid | |
| ☐ Scapula | ☐ Thoracic Spine | | ☐ Gallbladder (CCK) | |
| ☐ Scoliosis Series | ☐ Upper Ext. R ☐ L ☐ | | | |

Date Performed: _____

Time Performed: _____

Where Performed: _____

Technologist Name/stamp: _____

Is permanent camp a private institution? No ☐ Yes ☐
Clinic/hospital room number _____

R/S

R/S 4/30

AGOSTO, FELIX
DC# 772216
hispanic | male
DOB: 09/25/1975

_____
_____
_____

DC4-703D (issued 4/3/12)

Order # 26820833

**Florida Department of Corrections**
**Radiology Request Form**

# Radiology

### PLEASE WRITE LEGIBLY

In the best interest of the patient and referring physician, this examination will not be performed if pertinent clinical information and tentative clinical diagnosis are not provided below: ☐ Diabetic

List allergies:

(R) hip pain s/p use of force, history of ORIF, (R) knee

NKDA

☒ Ambulatory  ☐ Portable  ☐ Stretcher  ☐ Wheelchair

Physician Name (Print) and Name Stamp:

Sheila Szalai NP   S. SZALAI ARNP-BC

Date of Request:
8-23-17

| X-RAYS | | CENTURY C MRI SCANS | ULTRASOUNDS |
|---|---|---|---|
| ☐ Ankle R ☐ L ☐ | ☐ Shoulder R ☐ L ☐ | ☐ Cervical Spine | ☐ Abdomen complete |
| ☐ Cervical Spine | ☐ Sinuses | ☐ Head/Brain Stem | ☐ Breast |
| ☐ C. Spine, complete | ☐ Skull | ☐ Hip R ☐ L ☐ | ☐ Gallbladder |
| ☐ Chest | ☐ Sternum | ☐ Lower Ext, any joint R ☐ L ☐ | ☐ Inguinal Area |
| ☐ Chest, PA and LAT | ☐ T. M. Joints | ☐ Lower Ext, no joint R ☐ L ☐ | ☐ Liver |
| ☐ Chest PPD | ☐ Thoracic Spine | ☐ Lumbar Spine | ☐ Lower Ext. R ☐ L ☐ |
| ☐ Clavicle R ☐ L ☐ | ☐ Tibia & Fibula R ☐ L ☐ | ☐ Neck | ☐ Neck/Soft Tissue/Thyroid |
| ☐ Coccyx | ☐ Wrist R ☐ L ☐ | ☐ Pelvis | ☐ Paracentesis |
| ☐ Cystogram | **FLUOROSCOPY** | ☐ Thoracic Spine | ☐ Pelvis |
| ☐ Elbow R ☐ L ☐ | ☐ Arthrogram [ | ☐ Upper Ext, any joint R ☐ L ☐ | ☐ Renal |
| ☐ Facial Bones | ☐ Barium Enema | ☐ Upper Ext, no joint R ☐ L ☐ | ☐ Scrotum |
| ☐ Femur R ☐ L ☐ | ☐ Cystogram | | ☐ Thoracentesis |
| ☐ Fingers R ☐ L ☐ | ☐ Esophagram | | ☐ Upper Ext. R ☐ L ☐ |
| ☐ Foot R ☐ L ☐ | ☐ I.V. Pyelogram | | |
| ☐ Forearm R ☐ L ☐ | ☐ Lumbar Puncture | | **VASCULAR STUDY** |
| ☐ Hand R ☐ L ☐ | ☐ Myelogram [ | | ☐ Abdominal Aorta |
| ☒ Hip R ☒ L ☐ | ☐ Venogram R ☐ L ☐ | **NUCLEAR MEDICINE** | ☐ Abdominal Aorta with doppler |
| ☐ Humerus R ☐ L ☐ | ☐ U. G. I. Series | ☐ Bone 3 Phase - Infection | ☐ Arterial Doppler, Lower Ext R ☐ L ☐ |
| ☒ Knee R ☒ L ☐ | ☐ U. G. I. and Small Bowel | ☐ Bone (Whole Body) | ☐ Arterial Doppler, Upper Ext R ☐ L ☐ |
| ☐ KUB | **CAT SCANS** | ☐ Cardiac - MUGA | ☐ Carotid Duplex |
| ☐ KUB and UPT | ☐ Abdomen | ☐ Cardiac -Stress | ☐ Dialysis Graph Duplex R ☐ L ☐ |
| ☐ Lumbar Spine | ☐ Cervical Spine | ☐ Ceretec - Infection (labeled WBC) | ☐ Vein Mapping for Dialysis R ☐ L ☐ |
| ☐ L. Spine, complete | ☐ Chest | ☐ Gallbladder (CCK) | ☐ Venous Duplex Lower Ext R ☐ L ☐ |
| ☐ Mandible | ☐ Facial/TMJ | ☐ Gallbladder (HIDA) | ☐ Venous Duplex Upper Ext R ☐ L ☐ |
| ☐ Nasal Bones | ☐ Head | ☐ Gallium | |
| ☐ Orbits | ☐ Lower Ext. R ☐ L ☐ | ☐ Liver/Spleen | **Exams not mentioned above:** |
| ☐ Os Calcis R ☐ L ☐ | ☐ Lumbar Spine | ☐ Pulmonary V/Q | |
| ☐ Pelvis | ☐ Orbit | ☐ Renal | |
| ☐ Ribs R ☐ L ☐ | ☐ Pelvis | ☐ Thyroid and Uptake | |
| ☐ Sacrum | ☐ Soft Tissue Neck | ☐ Thyroid - Parathyroid | |
| ☐ Scapula | ☐ Thoracic Spine | | R. McQueen RN |
| ☐ Scoliosis Series | ☐ Upper Ext. R ☐ L ☐ | | Century Cl |

Date Performed: _____   Time Performed: _____

Where Performed: _____   Technologist Name/stamp: _____

Is permanent camp a private institution? No ☐ Yes ☐
Clinic/hospital room number_____

Agosta, Felix
DC# 772216  H/M
DOB 9/25/1975

DC4-

**FLORIDA DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**DIAGRAM OF INJURY**



*Annotations on diagram:*
- Bad eye pt. States Blind From car pentray Accident
- Reddened Sclera in eyes watery Lf. eye
- Face + neck Reddened no lumps or bleeding
- Chest Clear
- Claims hip hurts "previous Surgery"
- Index fingers + Thumbs with Dark Brown Stains

Date of occurrence __8/17/17__   Time of occurrence __Approx 1450__
Date injury assessed by medical __8/17/17__   Time injury assessed by medical __Approx 1515__

☐ No injury identified

Description of injury (See Above) — c/o eyes burning left eye + head pain — also hip (Rt) pain — no Bruising Swelling or broken Skin noted —

Staff Signature _____   A. Powell, SRN  Century C.I.

Inmate Name __Agosto Felix__
DC# __772216__   Race/Sex __H/m__
Date of Birth __9/25/75__
Institution __Cen CI__

writt mls 8/12/17
F. Witter MD
Century CI

This form is not to be amended, revised, or altered without approval by the Office of Health Services- Administration

DC4-708 (Revised 10/07)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

# INMATE REQUEST

Mail Number: _____
Team Number: 4
Institution: Mayo C.I.

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | HSA<br>☒ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name<br>Felix Agosto | DC Number<br>772216 | Quarters<br>C3216 | Job Assignment<br>N/A | Date<br>11/27/17 |
|---|---|---|---|---|---|

Check here if this is an informal grievance ☐

## REQUEST

I was tranfer to this Institution on 11-06-17 and I was told by the Medical Health Services staff that my Refill of my medication was already place in the Computer, also when I was access For Pre-Confinement I was told that they were goin to check on my medication Refill "Naproxen 250 Mg" but I have not Received my medication can you please look into this Issue of my Refill because I need my medication Naproxen 250 mg. I'm currently at Administrative Confinement.

Thank you For Your Time!

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

DC#: 772216

Inmate (Signature): Felix Agosto

**RECEIVED**
NOV 28 2017
Medical Records
Mayo C.I.

DO NOT WRITE BELOW THIS LINE

DATE RECEIVED: _____

## RESPONSE

Look for your name on KOP call out

[The following pertains to informal grievances only:
Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name): A. Gardner, LPN<br>Mayo CI | Official (Signature): [signature] | Date: 12-5-17 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
...may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as ...ed by Rule 33-103.006, F.A.C, attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no ...n 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

(Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

EXhibit A

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1712-223-010 | MAYO C.I. ANNEX | C32162 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy has been received, reviewed and evaluated. Upon speaking with the pharmacy nurse, she stated that she answered an inmate request and sent it back to you on 12/4/17. Your medication has been ordered and upon arrival, you will be placed on the KOP list to pick it up. This medication is not considered a chronic illness medication and you have access to Ibuprofen in the dormitory.

Based on the foregoing, grievance is hereby DENIED.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

You may obtain further administrative review of your complaint by completing form DC1-303, providing attachments and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, FL 32399-2500.

Should this document contain confidential healthcare information it is intended for the addressee only. Unauthorized release or disclosure may violate State and Federal Laws.

A. Hill, Assistant Warden

_E. Campbell_   DR. ERROL E. CAMPBELL
RMD Region II

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 12 6 17 DATE |
|---|---|---|

DATE MAILED TO INMATE:

12 7 17

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: C3216
Team Number: 4
Institution: Mayo C.I.

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | HSA ☒ Medical ☐ Mental Health | ☐ Dental ☐ Other _____ |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters C3216 | Job Assignment N/A | Date 11/27/17 |
|---|---|---|---|---|---|

**REQUEST**      Check here if this is an informal grievance ☐

I was Tranfer to this Institution on 11-06-17 and I was told by the Medical Health Services staff that my ReFill of my medication was already place in the Computer, also when I was access For Pre-Confinement I was told that they were goin to check on my medication ReFill "Naproxen 250 Mg" but I have not Received my medication can you please look into this Issue of my ReFill because I need my medication Naproxen 250 mg. I'm currently at Administrative Confinement.

Thank you for your Time!

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto    DC#: 772216

RECEIVED
NOV 28 2017
Medical Records
Mayo C.I.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**      DATE RECEIVED:

Look for your name on KOP call out

The following pertains to informal grievances only:

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

Official (Print Name): A. Gardner, LPN    Mayo CI    Official (Signature): [signature]    Date: 12-5-17

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DCI-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

AGOSTO, Felix _____ 772216 _____ MAYO C.I. _____
Last    First    Middle Initial           DC Number         Institution

---

### Part A – Inmate Grievance

GRIEVANCE OF MEDICAL NATURE, in accordance 33-103.008, F.A.c.
I was tranFer to this Institution MAYO C.I. on 11-06-17, and I
was told by the "Health Services Assistance" Nurse that my reFill
oF my medication "Naproxen 250 mg" For the Pain was already
placed in the Computer, but I did not receive my medication
the reFill dated was 11-09-2017, I was access For Pre-confi-
nement Physical on 11-20-17, and the nurse that access me For
Pre-confinement told me that he was going to look For my
medication "Naproxen 250 mg" For the Pain but I've not Receive
my medication, I have mention several times to the "nurses"
that make the Round at Confinement about my medication but
I still have not Receive my medication yet, I've a nother
reFill For this month december but I have not Receive yet
the reFill For November 09, 2017, and I was seen by the
nurse Concern my medication when I was access For Pre-
confinement on 11-20-2017. Can you Please check what seen
to be the Problem about my medication For the Pain "Naproxen
250 mg", as soon as Posible because I'm on "Pain".
Thankyou Kindly, ResPectFully submitted.

---

december 03, 2017                          Félix Agosta   Dc# 772216
_____                        _____
DATE                                       SIGNATURE OF GRIEVANT AND D.C. #

**BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

Ø /          N/A
#            Signature

---

### INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Assistant Warden's Office

[stamp:]
DEC 0 4 2017
MAYO CI

Submitted by the inmate on: _____
                            (Date)

Receipt for Appeals Being Forwarded to Central Office

Institutional Mailing Log #: 1712-223-010

L. Dedge
(Received By)

DISTRIBUTION:    INSTITUTION/FACILITY          CENTRAL OFFICE                      COMP: 07G Medical
                 INMATE (2 Copies)             INMATE                             DR #: _____
                 INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY  DR: _____
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE          DUE: 12/11/17
                                               CENTRAL OFFICE GRIEVANCE FILE

C1-303 (Effective 11/13)              Incorporated by Reference in Rule 33-103.006, F.A.C.

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: 02-1425
Team Number: 1
Institution: Calhoun C.I. (105)

105-1802-0023

| TO: (Check One) | ☐ Warden | ☐ Classification | ☐ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☒ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other _____ |

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters D2-1425 | Job Assignment H/m | Date 01/05/18 |
|---|---|---|---|---|---|

**REQUEST**     Check here if this is an informal grievance ☒

ON February 01, 2018 apProx. 10:45 A.M. I was in the Medical department Building on a dental callout, Nurse W.W. Matthew LPN or ARNP was assisting a inmate with his medication, and I approach Nurse Matthew and ask him about my Prescrib medication "Naproxen" For the pain on my lower back, right hip, and right Femur bone and nurse Matthew stated I don't have time to check For your Medication submit a nother sickcall Request and close the Pill window on my face, nurse Matthew violated Title 33-208.002 (6) F.A.C; Rules of Conduct, no employee shall refuse to truthfully answer question specifically relating to the Performance of his official duties. Address please My complain With Nurse Matthew because I'm on Pain and I need my Medication.

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto        DC#: 772216

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE** Mailed to I/M. 2/7/18        DATE RECEIVED: FEB 5 18

med window between 11am and 1pm is for those that are on the list to pick up medications, not for answering questions. He is correct to direct you to the inmate request or sick call systems to receive an answer, as well as have documentation of your answer. As discussed in Grievance Response 1801-105-077, your Naproxen was not renewed and you may access sick care to address.

The following pertains to informal grievances only:

Based on the above information, your grievance is RETURNED (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name):  A. McDowell, RN | Official (Signature): | Date: 2/6/18 0855 |
|---|---|---|

Director of Nursing
Calhoun Ci

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303A, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse      1802-105-041

TO: ☒ Warden   ☐ Assistant Warden   ☐ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

Agosto, Felix _____ 772216 ____ Calhoun C.I. (105)
Last    First    Middle Initial        DC Number        Institution

Part A – Inmate Grievance

MEDICAL NATURE

Grievance APPeal, Informal Log # 105-1802-0023, attached.
The Responded stated that nurse LPN Matthew was correct,
knowing that LPN Matthew violated Title 33-208.002 (6) F.A.C.,
and the Responded director of nursing again answer For me to
submit For the third time another Sick call Request, when I
already been threat For the Same ongoing Problems, on my
Permanent Ijuries, when I arrived to this Institution CCI,
on 12-29-17 I submited a Follow up sick call Request because my
medication For the Pain "Naproxen" 250 mg were done and I've
Pain, Sick call Reference number 122917O710SC co-Pay $5.00
Reference number 013018296688, and the Nurse that access my
Follow up Sick call said to wash the call out For my medication
and to see the doctor, I did not Receive my medication and
I did not see the doctor, and the Health services director
of Nursing A. McDowell. RN wants me to submit another sick
call to discuss again about my Pain on my lower back, Right hip
and Right Femur bone a ongoing Pain and Permanent Ijuries,
which my Medical Record had "all" my Problems and threatment.
RELIEF SOUGHT: I Need my medication For the Pain
and Refund my $5.00 co-Pay back to my account, Reference
number 122917O710SC, 013018296688.

February 09, 2018
DATE

Felix Agosto DC# 772216
SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

Mailed 2/19/18 E. Mays                        Ø 1     N/A
                                              #      Signature

INSTRUCTIONS

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____
                (Date)                                                        (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY          CENTRAL OFFICE
                 INMATE (2 Copies)             INMATE
                 INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                 INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                               CENTRAL OFFICE GRIEVANCE FILE
DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

MAILED/FILED
WITH AGENCY CLERK

JUN 15 2018

Department of Corrections
Bureau of Inmate Grievance Appeals

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 18-6-10803 | NWFRC ANNEX. | J4110L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Appeal Denied:

Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.

It is determined that the response made to you by Dr. Vilchez on 2/16/18 appropriately addresses the issues you presented.

All inmate self-initiated sick call visits that are determined to be of a non-emergent nature will incur a co-payment including request for medication and pass renewals (whether they are prescribed or not). A pre-existing or continuing condition does not carry any relevancy for relief under the Rule. This practice is in keeping with the Florida Statutes.

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Michelle Schouest, IISC

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

MEDICAL

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED

MAR 09 2018

Bureau of Inmate Grievance Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden ☐ Assistant Warden ☒ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| AGOSTO, Felix | | M72216 | Calhoun C.I. (105) |
|---|---|---|---|
| Last First | Middle Initial | DC Number | Institution |

| Part A – Inmate Grievance | 18-6-10803 |
|---|---|

GRIEVANCE APPEAL Response Log# 1802-105-041, attached, with Inform.
The Responded MD S. Vilchez stated that I only signed For sick call one
time only, but Review of my medical record will prove that I have x-Ray
done two (2) time, medication prescribe "naproxen" For the Pain on the joint
by MD Molina at jackson C.I. by nurses. szalai at century C.I. and
again by nurse S.zalai at century C.I. due to a Physical abuse by the
Correctional officer at century C.I. the health services never Follow up on my
ongoing Injuries or my Pain on the joints, upon tranfer to this Institution
Calhoun C.I. the health services never Followup on my medical Problems
and I submitted a sick call Request Followup For the ongoin Pain on my
lower back, Right hip joint and muscle, and Right Femur bone joint and
muscle, the medical staff nurse that access my sick call Followup said that
I would be Prescribe "naproxen" For the Pain, but I never Receive the
medication or see the MD S. Vilchez at this Institution Calhoun c.I. this
MD S. Vilchez work also at Gulf C.I. and took my medical Health slip
Pass Knowing I have Permanent Injuries, and when I was Realese From
confinement the MD S. Vilchez give me back my medical Health slip Pass
and charge me the co-Pay $5.00. Now this MD S. Vilchez work at this
Institution Calhoun C.I. and ▇▇▇▇▇▇▇ deny my medication For the Pain
and want me to continue to submit sick call Request Knowing I've
a ongoin Problem on my body.
**REMEDY:** Review my medical Record and the MD S. Vilchez unProfe-
sional "Performance", and Refund my $5.00 Medical co-Pay back to
my account, reference number 122917071DSC, 013018296688, and
I need my medication For the "Pain".

| February 22, 2018 | Felix Agosto DC# 772216 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

Ø / N/A
# Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on: 2/26/18     Institutional Mailing Log #: 18-105-42     N Mayensteo
(Date)                                                                              (Received by)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE | Mh    105 |
|---|---|---|---|
| | INMATE (2 Copies) | INMATE | |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION./FACILITY | |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE | |
| | | CENTRAL OFFICE GRIEVANCE FILE | |

DC1-303 (Effective 11/13)

2/23/18

Incorporated by Reference in Rule 33-103.006, F.A.C.

1802-105-041

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1712-223-010 | MAYO C.I. ANNEX | C32162 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy has been received, reviewed and evaluated. Upon speaking with the pharmacy nurse, she stated that she answered an inmate request and sent it back to you on 12/4/17. Your medication has been ordered and upon arrival, you will be placed on the KOP list to pick it up. This medication is not considered a chronic illness medication and you have access to Ibuprofen in the dormitory.

Based on the foregoing, grievance is hereby DENIED.

Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

You may obtain further administrative review of your complaint by completing form DC1-303, providing attachments and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, FL 32399-2500.

Should this document contain confidential healthcare information it is intended for the addressee only. Unauthorized release or disclosure may violate State and Federal Laws.

A. Hill, Assistant Warden

DR. ERROL E. CAMPBELL
RMD Region II

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 12 6 17 DATE |
|---|---|---|

DATE MAILED TO INMATE:

12 7 17

FLORIDA DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden      ☐ Assistant Warden      ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse, on the behalf of:**

AGOSTO, Felix _____ 772216. MAYO C.I.
Last    First    Middle Initial       DC Number       Institution

---

Part A – Inmate Grievance

GRIEVANCE OF MEDICAL NATURE, in accordance 33-103.008, F.A.C. I was tranfer to this Institution Mayo C.I. on 11-06-17, and I was told by the "Health Services Assistance" Nurse that my refill of my medication "Naproxen 250 mg" For the Pain was already placed in the Computer, but I did not receive my medication the refill dated was 11-09-2017, I was access For Pre-Confinement Physical on 11-20-17, and the nurse that access me For Pre-Confinement told me that he was going to look For my medication "Naproxen 250 mg" For the Pain but I've not receive my medication, I have mention several times to the "nurses" that make the Round at Confinement about my medication but I still have not receive my medication yet, I've a nother refill For this month december but I have not Receive yet the refill For November 09, 2017, and I was seen by the nurse Concern my medication when I was access For Pre-Confinement on 11-20-2017. Can you please check what seen to be the problem about my medication For the Pain "Naproxen 250 mg", as soon as Posible because I'm on "Pain". Thank you Kindly, Respectfully submitted.

december 03, 2017
DATE

Felix Agosto DC# 772216
SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

∅ 1        N/A
(# )        Signature

---

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Assistant Warden's Office

DEC 0 4 2017

Submitted by the inmate on: _____
(Date)
MAYO CI

Receipt for Appeals Being Forwarded to Central Office

Institutional Mailing Log #: 1712-223-010

L. Dedge
(Received by)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE | COMP: 07G Medical |
|---|---|---|---|
| | INMATE (2 Copies) | INMATE | DR #: _____ |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY | DR: _____ |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE | DUE: 12/11/17 |
| | | CENTRAL OFFICE GRIEVANCE FILE | |

DC1-303 (Effective 11/13)                Incorporated by Reference in Rule 33-103.006, F.A.C.

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1807-115-056 | OKALOOSA C.I. | C3203L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Inmate Agosto, your Formal Grievance seeking Administrative Remedy has been received, reviewed, and evaluated with the following findings:

According to the pharmacy computer your medication was filled on 7-24-18 and you should have received it by now. If you have problems receiving your prescribed medications then it is your responsibility to access sick call to address it with the medical staff. There will not be a copay charged for sick call to address only the medication if the prescription is current.

Based upon the above information, your grievance is Denied.

You may obtain further Administrative Review of your complaint by obtaining form DC1-303, request for Administrative Remedy or Appeal, completing the form, providing attachments as required by Chapter 33-103.007 (3) (a) and (b) F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 S. Calhoun Street, Tallahassee, Florida 32399-2500.

| Dr. Luis Lopez Review CHO Centurion of Florida Okaloosa Correctional Institution | | 8-24-18 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| AGOSTO, Felix | 772216 | Okaloosa C.I. (J15) |
|---|---|---|
| Last    First    Middle Initial | DC Number | Institution |

1807-115-056                                      Med 07a

| Part A – Inmate Grievance |
|---|

GRIEVANCE OF MEDICAL NATURE, Persuant 33-103.008(1), F.A.C., while in E-Dorm Confinement I submitted my Prescribe medication Refill Naproxen 500 mg, License Practice Nurse Hughes LPN Pickup my Refill, but I have not Received my medication Prescription Naproxen 500mg.

RELIEF SOUGHT: I'm in need of my medication Naproxen 500 mg, can I get my medication it's being over three(3) weeks that I submitted my Refill, Review of my Medical Records will Prove that I have a Refill.

| JULY 16, 2018 | Felix Agosto DC# 772216 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

Ø 1          N/A
#          Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

**Receipt for Appeals Being Forwarded to Central Office**

Submitted by the inmate on JUL 16 2018                  Institutional Mailing Log #:_____    _____
                    (Date)                                                                                    (Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1807-115-056 | OKALOOSA C.I. | C3203L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY.
UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Inmate Agosto, your Formal Grievance seeking Administrative Remedy has been received, reviewed, and evaluated with the following findings:

According to the pharmacy computer your medication was filled on 7-24-18 and you should have received it by now.  If you have problems receiving your prescribed medications then it is your responsibility to access sick call to address it with the medical staff.  There will not be a copay charged for sick call to address only the medication if the prescription is current.

Based upon the above information, your grievance is Denied.

You may obtain further Administrative Review of your complaint by obtaining form DC1-303, request for Administrative Remedy or Appeal, completing the form, providing attachments as required by Chapter 33-103.007 (3) (a) and (b) F.A.C. and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 S. Calhoun Street, Tallahassee, Florida 32399-2500.

| Dr. Luis Lopez-Viera CHO<br>Centurion of florida<br>Okaloosa Correctional Institution | | 8-24-18 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: E-3205-L
Team Number: _____
Institution: M.C.I

| TO: (Check One) | ☐ Warden | ☐ Classification | ☑ Medical | ☐ Dental |
|---|---|---|---|---|
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other Ms. Rose |

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | AGOSTO, FELIX | B-77221 6 | E-3205-L | INSIDE GR. | 4-25-12 |

## REQUEST

Check here if this is an informal grievance ☐

Ms. Rose; I was told that I can get a CD for 25.00 that has the digital record of my Ey-Ray's taken on or about January 25, 2012. Can my brother send a check or money order to have the disc sent to him, and Do I have to sign a Release for those medical records -

Thank you.

*Felix Agosto*

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE  12-05-25-CON

DATE RECEIVED: ~~Health Services~~  MAY 0 4 2012

I am not sure if that can be done by me. Please write our Health information Staff Ms Jones She maybe able to give you the information you are wanting.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | *illegible* Rose | Date: 5/10/12 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )

Incorporated by Reference in Rule 33-103.019, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

INMATE REQUEST
S. DANiels SHSA

Mail Number: B4-105L
Team Number: 4
Institution: M.C.I

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☑ Medical<br>☐ Mental Health | ☐ Dental<br>☐ Other _____ |
|---|---|---|---|---|

| FROM: Inmate Name<br>Felix AgosTo | DC Number<br>772216 | Quarters<br>B4-105L | Job Assignment<br>N/A | Date<br>05/14/12 |
|---|---|---|---|---|

**REQUEST**                                           Check here if this is an informal grievance ☐

MS. Daniels I would like to know if the
Disc of the X-Ray Done on 01-25-2012 Canbe
Send to my Family since you told me that they
Cant make a Copy Printout of the X-Rays.

Felix AgosTo Dc#772216

All requests will be handled in one of the following ways:  1) Written Information or   2) Personal Interview.  All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

RESPONSE   12-05710-HA                    DATE RECEIVED:   MAY 17 2012
                                                          Health Services

As advised at our previous meeting
Your family can receive the disc
Upon receipt of the required payment
If you want to process this request
Submit an inmate request to attention
medical record. An invoice will be
completed and forwarded for payment.

[The following pertains to informal grievances only:
Based on the above information, your grievance is _____. (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): S. DANIELS SHSA MARTIN CI | Date: 05/17/12 |
|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file

This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by the appropriate person.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to.  If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective )
                    Incorporated by Reference in Rule 33-103.019, F.A.C.

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
JUN 18 2019
Department of Corrections
Inmate Grievance Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden   ☐ Assistant Warden   ☒ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

AGOSTO FELIX _____ 772216 _____ F.S.P. West Unit (206)
Last   First   Middle Initial          DC Number          Institution

| Part A – Inmate Grievance | 9-6-22962 |
|---|---|

GRIEVANCE APPEAL Response Log# 1905-206-019, The Responding state that I refuse, the second Sick-call I submitted Regarding my restricted activity Pass not being renewed, which is a lie and False statement, I did not signed any Refusel medical Papers or denied treatment, the medical Health Assistance service staff are Fabsifying documents, I'm currently at Y-dorm confinement, and I have not being to the clinician to see a Provider medical staff, and they are refusing my medical Sick-call Request Preventing me to see the doctoR concern my medical Condition, and the Health assistance service employee violated the Americans with disabilities ACT, title II, do to the Facts that I'm disaible do to the surgery I had on my Right Leg Femur bone which has a Rod Pin From hip to knee with two(2) screw, and my medical Condition is affecting my ability, and the medical Registral, nurse, Practice (ARNP) The unproffecional identifying medical negligent conduct, Place the inmate in a danger situation with the inmate Health, and need to be investigate and evaluated according with the inmate medical condition and the Americans with disabilities ACT, title II.

REMEDY: I need to see the doctoR (MD) at F.S.P. West Unit (206) Regarding my medical condition, because the Health assistance service staff are preventing to Process my numerous inmate Sick-call Request I submitted Concerning the Restricted activity Health slip/Pass DC4-7010, of no Prolong standing more that 15 minute, no Pull, Push, or lift more that 20 Pound, do to the Facts that I have a surgery on my Right Femur leg, do to a car Accident on 1997. See Exhibit A attached, with the Responding Grievances Response

JUNE 10, 2019 _____               Felix Agosto DC# 772216
DATE                                SIGNATURE OF GRIEVANT AND D.C. #

**BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**   θ/1   N/A
                                                                          #    Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED
JUN 10 2019
FSP WEST UNIT GRIEVANCES

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log # 206-1906-1001

1905-206-019

J morgan
(Received By)

7h (206)

**DISTRIBUTION:**   INSTITUTION/FACILITY            CENTRAL OFFICE
                    INMATE (2 Copies)               INMATE
                    INMATE'S FILE                   INMATE'S FILE - INSTITUTION/FACILITY
                    INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
                                                    CENTRAL OFFICE GRIEVANCE FILE

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1905-206-019 | FSP WEST UNIT | Y1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAWS.

Your request for Administrative Remedy was received at this office and it was carefully evaluated.  Records available to this office were also reviewed.

Review of your medical file shows you were seen at sick call on 5/22/19 regarding your request for pass renewal for low bunk and restricted activity; you were informed by the sick call nurse that your chart would be forwarded to the clinician to review your request for pass renewal.

The clinician reviewed your chart on 5/24/19 and only renewed the low bunk pass.

On 5/29/19 you refused sick call regarding your request about the restricted activity pass not being renewed.  If you are experiencing medical issues and/or concerns you can access sick call at your discretion to be evaluated and if medically indicated you will be referred for further evaluation.

Please note that it is the responsibility of your current health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults, medication prescriptions, diagnostic testing, lab work, or passes based on medical justification.  You may not agree with the treatment regimen and you have the right to refuse treatment at any time, but that does not mean that you are not being provided adequate care.

Grievance is hereby denied.

Should you elect to obtain further administrative review, you may do so by obtaining Form DC1-303, Request for Administrative Remedy or Appeal to the Bureau of Inmate Grievances, 501 South Calhoun Street, Tallahassee, FL, 32399-2500 within the specified time frame.

| | | |
|---|---|---|
| G. Espino, M.D. FSP Site Med. Dir | J-M-Cullen | 6-6-19 |
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

RETURNED TO INMATE
JUN 0 7 2019

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
# INMATE SICK-CALL REQUEST

Date: 5-28-19          Time: _____

Inmate Name: Agosto, Felix      DC#: 772216

Housing assignment: Y1-103L

Job assignment: N/A

Problem:

[X] **Pass/pass renewal**

[ ] **Medication renewal**

[ ] **Need information (explain):** _____

[ ] **Mental Health**

[ ] **Dental**

[X] **Medical (explain):** I renew My bottom bunk and Restricted activity
Health slip/Pass on 5-24-19. I was Issue the Low/bottom bunk
Pass but the Restricted activity was not on the Health slip/Pass
I'm suppose to have the Restricted activity and no prolong
standing due to the surgery on My Right Femur bone, From hip to
Knee I have a Rod Pin with two screw holding the bone
toghoter, I renew this Health slip/Pass every year, I need
to see the Medical director (Doctor).

When did problem/symptoms start? This is the Second Inmate Sick-Call
Request I submitted Regarding My Health slip/Pass
renewal, and My Medical Pass is on the computer

_____

_____

Inmate Name Agosto, Felix
DC# 772216          Race/Sex W/M
Date of Birth 9-25-75
Institution F.S.P. - West Unit (306)

Distribution: Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise
destroy copy)
This form is not to be amended, revised, or altered
without approval by the Office Health Services-
Administration

DC6-698A (Revised 6/11/08)          Incorporated by Reference in Rule 33-402.101, F.A.C.

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
# INMATE SICK-CALL REQUEST

Date: JUNE 9, 2019                    Time: _____

Inmate Name: Felix Agosto     DC#: 772216

Housing assignment: Y1-103, Y-dorm Confinement

Job assignment: N/A

Problem:

☑ Pass/pass renewal

☐ Medication renewal

☐ Need information (explain): _____

☐ Mental Health

☐ Dental

☑ Medical (explain): I'm submitted this sick-call Request for the third time Regarding my Health slip/pass Form DC4-701D Restricted activity, Restrictions, I cant stand more than 15 minutes on my legs, or push, pull, or lift more that 20 Pound, I need to see the medical director in-site doctor to be reevaluated concerning my medical condition, I had surgery on my right leg tumor on 1997 do to car in a major accident.

When did problem/symptoms start? I had a car Accident on 1997 and I renew this Health slip/pass every year since I been on the Department of correction custody CF DoC on 2006

Inmate Name: Agosto, Felix
DC#: 772216                    Race/Sex: H/M
Date of Birth: 9-25-75
Institution: E.S.P. West Unit (700)

Distribution: Original – Nursing Supervisor
Pink – Inmate (special housing only otherwise destroy copy)
This form is not to be amended, revised, or altered without approval by the Office Health Services Administration

DC4-698A (Revised 6/11/08)          Incorporated by Reference in Rule 33-402.101, F.A.C.

DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES

EXHIBIT A

# INMATE SICK-CALL REQUEST

EXHIBIT A

Date: MAY 21, 2019                    Time: _____

Inmate Name: Felix Agosto             DC#: 772216

Housing assignment: Y-dorm Confinement Y2-103 L

Job assignment: N/A

Problem:

☑ Pass/pass renewal  Low bottom bunk/Restrictive Activity

☐ Medication renewal

☐ Need information (explain): _____

☐ Mental Health

☐ Dental

☑ Medical (explain): The medical Pass I renewed every year
and also I have a problem with my right hand
palm and wrist it hurt a lot I think I may
have a fracture because when I move my hand
I feel a lot of Pain on my Palm and wrist

_____

When did problem/symptoms start? The medical pass I renew every year
but the problem with my hand started three
weeks ago.

_____

Inmate Name Agosto, Felix
DC#: 772216                    Date _____ Time 1955
Date of Birth 9-25-76
Institution F.S.P. West Unit (CONF)

Distribution: White-MR: Nursing Supervisors
Pink - Inmate (copy of housing only otherwise
destroy copy)
This form is not to be amended, revised, or altered
without approval by the Office Health Services
Administration

DC4-698A (Revised 6/11/08)        Incorporated by Reference in Rule 33-402.101, F.A.C.

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1908-206-018 | FSP WEST UNIT | L1142S |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAWS.

Your request for Administrative Remedy was received at this office and it was carefully evaluated.  Records available to this office were also reviewed.

Review of your medical file shows the response provided to you in Informal Grievance 206-1908-0020 was appropriate as your issue had been responded to you in Formal Grievance 1908-206-009.  You were also informed in the response in Informal Grievance 206-1908-0020 that your allegations against Nurse Singletary had been reported for further review.

Grievance is hereby denied.

Should you elect to obtain further administrative review, you may do so by obtaining Form DC1-303, Request for Administrative Remedy or Appeal to the Bureau of Inmate Grievances, 501 South Calhoun Street, Tallahassee, FL, 32399-2500 within the specified time frame.

| G. Espino, M.D. State Med. Dir | | 8/29/19 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

RETURNED TO INMATE
AUG 2 7 2019

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

AGOSTO Felix _____ 772216 _____ F.S.P. West Unit (200)
Last    First    Middle Initial    DC Number    Institution

---

| Part A – Inmate Grievance |
|---|

GRIEVANCE APPEAL, Informal grievance Log# 206-1908-0020, attached.
In accordance with title 33-103.006(2)(e)(F)(g)(h), F.A.C., The Respondet
Authority Administrated assistance A. Andrews, Return my complaint
without action based on the Formal grievance Log# 1908-206-009, of
Medical Nature that I submitted Regarding my medical Condition,
The Respondent Authority ignored the Facts of my Informal grievance
Log# 206-1908-0020, attached, concerning LPN nurse Don Singletary
UnProfesinal behavior, and misconduct, while Performing her services
as a Medical Staff Health For the inmates. ~~_____~~ on 8-7-19,
approximatly 7:55 A.M. I was at the medical department building
R: my second sick call 0729191320, do to the Fact that the medical
provider "nurses" are denieing me medical treatment, and nurse
Don Singletary Counduct her duty with ProFane language against
me, and verbaily threatme by using the Doc security officers
to Place me on confinement and have more problems worst on my
medical condition.
REMEDY: nurse Don Singletary violated title 33-208.002, F.A.C., and
this complaint need to be address Properly to Prevent any Reprisal,
Retaliation, and Harrasment by security staFF, and care of my life
and Health.

August 16, 2019 _____    Felix Agosto DC# 772216
DATE    SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:    -O- / N/A

07M    # / Signature

---

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

AUG 1 6 2019    Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on:    Institutional Mailing Log #: 1908-206-018    J. Morgan
FSP WEST UNIT/GRIEVANCES    (Received By)

DISTRIBUTION:    INSTITUTION/FACILITY    CENTRAL OFFICE
    INMATE (2 Copies)    INMATE
    INMATE'S FILE    INMATE'S INSTITUTION/FACILITY
    INSTITUTIONAL GRIEVANCE FILE    CENTRAL OFFICE INMATE FILE
    CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)    Incorporated by Reference in Rule 33-103.006, F.A.C.

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: L1-1425
Team Number: 6
Institution: F.S.P. West Unit (206

| TO: (Check One) | ☐ Warden  ☒ Asst. Warden | ☐ Classification  ☐ Security | ☐ Medical  ☐ Mental Health | ☐ Dental  ☐ Other ____ |
|---|---|---|---|---|

| FROM: | Inmate Name  Felix Agosto | DC Number  772216 | Quarters  L1-1425 | Job Assignment  H/S | Date  8-8-19 |
|---|---|---|---|---|---|

**REQUEST**                                    Check here if this is an informal grievance ☒

Informal Grievance: on 8-7-19 approximatly 7:55 A.M. I was at the Medical Department RE: Sick call 0729191320, do to the fact that Medical Provider are denieing me Medical treatment, and LPN Nurse R. Singletary Don started to use Profane Language and verbail threat me to Place me on Confinement, and to shut MY <del>####</del> "Fucking" mouth or she would call security to "beat me up" so I have a real Injury, Nurse R. Sigletary is in violation title 33-208.002, F.A.C. and need to be addressed this complaint to prevent any Retaliation, Harrasment, or Reprisal by security staff with my Health and life.

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto                          DC#: 772216

DO NOT WRITE BELOW THIS LINE                    **RECEIVED**

**RESPONSE**
27m

206-1908-0020                                    DATE RECEIVED:   AUG 08 2019

Your grievance is being returned without further processing in accordance with Rule 33-103.014(1)(m). A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before. It in formal grievance # 1908-206+069. Your allegations on Don Singletary has been reported for further review.

FSP WEST UNIT GRIEVANCES

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _Returned_. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Print Name):  A. Andrews  Admin. Asst.  FSP | Official (Signature):  [signature]  **RETURNED TO INMATE**  AUG 13 2019 | Date: 8/13/19 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 15 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 11/18)

Incorporated by Reference in Rule 33-103.005, F.A.C.

EXHIBIT A

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**INMATE SICK-CALL REQUEST**

EXHIBIT A

Date: MAY 21, 2019          Time: _____

Inmate Name: Felix Agusto          DC#: 772216

Housing assignment: Y-dorm Confinement Y2-103L

Job assignment: N/A

Problem:

☑ Pass/pass renewal  Low bottom bunk/Restrictive Activity

☐ Medication renewal

☐ Need information (explain): _____

☐ Mental Health

☐ Dental

☑ Medical (explain): The medical Pass I renewed every year
and also I have a Problem with my Right hand
Palm and wrist it hurt a lot I think I may
have a Fracture because when I move my hand
I Feel a lot of Pain on my Palm and wrist

When did problem/symptoms start? The medical Pass I renew every year
but the Problem with my hand started three
weeks go.

Inmate Name: Agusto, Felix

DCR 772216

Date of Birth 9-25-75

Institution E.C.P. West / Y

Distribution: Original—Nursing Supervisor
Pink—Inmate (Sick call bottom only otherwise
destroy copy)
This form may not be amended, revised, or altered
without approval by the Office Health Services
Administration

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1905-206-016 | FSP WEST UNIT | Y1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy has been received, reviewed, and evaluated.

The DR Hearing Team Members reviewed and considered all information, documentation and evidence available at the time of the Disciplinary Hearing, to include the Statement of Facts as it was written for Disciplinary Report #206-20190306.

1. The Official Officer writing the Statement of Facts was documented in section I on the charging Disciplinary Report Worksheet, which you received a copy of on 05/20/2019. It is also documented on the DC6-112F, Disciplinary Worksheet in section II, in accordance with Chapter 33-601.304, Preparation of Disciplinary Reports.

2. Per Chapter 33-601.304 (2) (a-b), which cites the following: 2. The Statement of Facts shall include: (a) A description of the violation, including date, time and place; (b) The specific rule violated. Based on the Statement of Facts which state "I was counseling with Inmate AGOSTO, Felix #772216, concerning his bunk, it was at this time Inmate AGOSTO stated to me Fuck you with all the bull shit, just keep going and don't fucking talk to me." This statement was sufficient in the support and substantiation of the charge of 1-4, Disrespect to Officials, in accordance with Chapter 33-601.314, Rules of Prohibited Conduct and Penalties for Infractions.

3. Video evidence supports the Statement of Facts that "I was counseling Inmate Agosto, Felix DC#772216, concerning his bunk." and your claim that "Sgt Rodriguez stop by my bunk N1-103s and order me to take the wash cloth off the head of the bunk. Then order me to stand up and follow her to the laundry room.". It was documented as such on the DC6-151, Documentary or Physical Evidence Disposition, in accordance with Chapter 33-601.305 (4)(5), Inmate Discipline – Investigations. Summary of tape review states: Based on camera review, Sgt Rodriguez did in fact counsel with the Inmate and place him in the laundry room in hand restraints.

4. The Disciplinary Hearing Team comprised of the Team Chairman and one Team Member ensured all aspects of Chapter 33-601.308, Disciplinary Team Hearing Officer Findings and Action, were appropriately considered and documented the results of the Hearing in the database. At which time you received a copy of the Disciplinary Report Hearing information.

You have failed to provide evidence, information or documentation that would warrant the consideration of overturning this DR. Upon further review and investigation of your Formal Grievance, it is noted that there have been no violations of rule or procedures in the processing of this DR.

Therefore your Formal Grievance is denied.

You may obtain further Administrative Review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

N. Jones,
Classification Officer

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 6-6-19 DATE |
|---|---|---|

RETURNED TO INMATE
JUN 0 7 2019

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1905-206-019 | FSP WEST UNIT | Y1103L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAWS.

Your request for Administrative Remedy was received at this office and it was carefully evaluated.  Records available to this office were also reviewed.

Review of your medical file shows you were seen at sick call on 5/22/19 regarding your request for pass renewal for low bunk and restricted activity; you were informed by the sick call nurse that your chart would be forwarded to the clinician to review your request for pass renewal.

The clinician reviewed your chart on 5/24/19 and only renewed the low bunk pass.

On 5/29/19 you refused sick call regarding your request about the restricted activity pass not being renewed.  If you are experiencing medical issues and/or concerns you can access sick call at your discretion to be evaluated and if medically indicated you will be referred for further evaluation.

Please note that it is the responsibility of your current health care staff to determine the appropriate treatment regimen for the condition you are experiencing, including specialty consults, medication prescriptions, diagnostic testing, lab work, or passes based on medical justification.  You may not agree with the treatment regimen and you have the right to refuse treatment at any time, but that does not mean that you are not being provided adequate care.

Grievance is hereby denied.

Should you elect to obtain further administrative review, you may do so by obtaining Form DC1-303, Request for Administrative Remedy or Appeal to the Bureau of Inmate Grievances, 501 South Calhoun Street, Tallahassee, FL, 32399-2500 within the specified time frame.

| G. Espino, M.D. FSP Site Med. Dir | | 6-6-19 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

RETURNED TO INMATE

JUN 0 7 2019

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

[ ] **Third Party Grievance Alleging Sexual Abuse**

TO: [X] Warden      [ ] Assistant Warden      [ ] Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

AGOSTO, FELIX                 772216          F.S.P.-West Unit (206)
Last   First   Middle Initial          DC Number              Institution

| Part A – Inmate Grievance |
| --- |

GRIEVANCE of a Medical Nature, In accordance with title 33-103.008, F.A.C; on MAY 24, 2019 I renew my Health slip/Pass, which had Low/bottom bunk, and Restricted activity dou to the surgery I had on my right Femur bone and I have a Rod Pin with two (2) screw From hip to Knee, when I received my renewal Health slip/Pass, Form DCN-7010 (2/96) the pass only had Low/bottom bunk, and no Restricted activity, I renew this Health slip/Pass every year with the Restricted activity and the assistant Registral Nurse practice (ARNP), C. Ibe took off my Restricted activity knowing that my Medical Records show my Medical Problems, and I need this pass for my Health and Safety with my life.

ADMINISTRATIVE REMEDY: I need the Restricted activity Health slip/pass Form DCH-7010 (2/96), no prolong standing, no Push, or lifting more the 15 pound, dou to the surgery on my Right Femur bone which had a Rod Pin From hip to Knee with two(2) screw holding the Femur bone toghter, I renew this Medical Pass every year and ARNP, C. Ibe took the Restricted activity off my Health slip/Pass Low/bottom bunk when I renew the Pass on 5-24-19, my Medical Record will Prove that I renew the same Pass since I being on the Department of Corrections custody June, 2006, low/bottom bunk, and Restricted activity, See the First Sick-call Request I submitted For renew my Health slip/Pass, attached to this grievance as EXHIBIT A. Also The computer show my Health slip/Pass From last Year.

MAY 28, 2019                           _Felix Agosto_ DC# 772216
DATE                                    SIGNATURE OF GRIEVANT AND D.C. #

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:      0 / N/A

07E                                                              #      Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to ~~RECEIVED~~ at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**RECEIVED**

MAY 2 8 2019                    Receipt for Appeals Being Forwarded to Central Office

FSP WEST UNIT GRIEVANCES

Submitted by the inmate on: _____ Institutional Mailing Log #: _1905-206-019_

_J. Morgan_
(Received by)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
| --- | --- | --- |
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1802-105-041 | CALHOUN C.I. | D2142S |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR ADDRESSEE(S) ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

Your Request for Administrative Remedy or Appeal was received, reviewed and evaluated.

Review finds that since your arrival to Calhoun CI in December, you have only signed up once for sick call. When seen by the nurse on 12/29/17 for joint pain, the nurse stated that your medical record would be given to the doctor to evaluate a need for medication based on x-rays, history and documentation. Based on previous lab tests, the doctor denies the need for Naproxen at this time. Policy states that you may be seen by the nurse up to three times before referral is made to see the doctor. Lab work has been ordered as a follow up however, for further complaints of pain sick call is available. Medical treatment is found appropriate.

Based on the above consider your grievance Denied.

If you are not satisfied with the response you received at the institutional level; you may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

| | | |
|---|---|---|
| S. Vilchez, MD<br>Medical Director<br>Calhoun CI | ADK AWP | 2-16-18 |
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

FLORIDA DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ Third Party Grievance Alleging Sexual Abuse     1802-105-041

TO: ☒ Warden     ☐ Assistant Warden     ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

Agosto, Felix         772216      Calhoun C.I. (105)
Last    First    Middle Initial      DC Number        Institution

---

**Part A – Inmate Grievance**

MEDICAL NUTURE

Grievance Appeal, Informal Log# 105-1802-0023, attached.
The Responded stated that Nurse LPN Matthew was correct,
knowing that LPN Matthew violated Title 33-208.002 (a) F.A.C.,
and the Responded director of nursing again answer for me to
submit for the third time a nother sick call Request, when I
already been threat for the same ongoing Problems, on my
Permanent Ijuries, when I arrived to this Institution CCI,
on 12-29-17 I submited a follow up sick call Request because my
medication for the Pain "Naproxen" 250mg were done and I've
Pain, sick call Reference number 1229170710 SC co-Pay $5.00
Reference number 013018296688, and the Nurse that access my
Follow up sick call said to wash the call out for my medication
and to see the doctor, I did not Receive my medication and
I did not see the doctor, and the Health services director
of Nursing A. McDowell, RN, wants me to submit a nother sick
call to discuss again about my Pain on my lower back, Right hip,
and Right Femur bone a ongoing Pain and Permanent Ijuries,
which my Medical Record had "all" my Problems and threatment.
**RELIEF SOUGHT:** I need my medication for the Pain
and Refund my $5.00 co-Pay back to my account, Reference
number 1229170710 SC, 013018296688.

February 09, 2018
DATE

Felix Agosto DC# 772216
SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

Mailed 2/19/18 E. May

Ø / N/A
#     Signature

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled to processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

**INSTRUCTIONS**

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____     Institutional Mailing Log #: _____     _____
                          (Date)                                                           (Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

HS06 0 772216                                                    01/17/17 15:52:57
    HSSB006         HEALTH CLASSIFICATION & CONSIDERATIONS            PAGE 001
DOC NO. OFFENDER NAME              RELEASE DTE RACE    SEX    BIRTH DATE   AGE
772216  AGOSTO, FELIX             02/20/2020 HISPANIC  MALE   09/25/1975   41
                               MEDICAL INFORMATION
     CONTACT STAFF            ACTION TYPE/REMARK        START-DATE    END-DATE

MILLER,PAM            APPROVED FOR WORK RELEASE         02/11/2015

MOLINA, ROBERTO       REDUCED ACTIVITY-SPEC. RES       10/28/2016   10/28/2017
                         NO P,P,L>20, NO PROLONG STAND>15
MOLINA, ROBERTO       LOW BUNK PASS                     10/28/2016   10/28/2017


          F4=Return to Front Page
          End of Records

Page 1 of 2

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: Y1-103 L
Team Number: 6
Institution: F.S.P. West Unit (2)

| TO: (Check One) | ☐ Warden ☒ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Felix Agosto | DC Number 772216 | Quarters Y1-103L | Job Assignment N/A | Date 6-5-19 |

**REQUEST**       Check here if this is an informal grievance ☒

INFORMAL Grievance: on 5-24-19, the Medical Health Services, Assistance Resgistral Nurse Practice (ARNP) C-I be, renew my Health slip Pass DC4-701D (2/96), low/bottom bunk, but negligently Failed to renew my Restricted activity, no Prolong standing more than 15 minute, no Push, Pull, or lift more than 20 Pound, I renew this Health slip Pass every year do to the surgery on my Right leg Femur bone, which have a Rod Pin, From hip to knee and two (2) screw, I submitted a couple of inmate sick-call Request, to see the doctor Medical director (MD) but my sick-call have being denied and they don't Process my sick-call Request, the medical staff negligent conduct, are in violation of title II of the Americans with disabilities Act, my Medical Record verified my medical condition affecting my ability continuation attached →

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): Felix Agosto     DC#: 772216

DO NOT WRITE BELOW THIS LINE

RECEIVED JUN 08 2019 MEDICAL RECORDS FSP-WEST

**RECEIVED**
DATE RECEIVED: JUN 05 2019

**RESPONSE**   ONE     FSP WEST UNIT GRIEVANCES

It is the responsibility of health care staff to determine appropriate treatment regiment including passess. There is no indication that you have been denied access to medical or denied medical care you may not agree with treatment, but that does not mean that you are not being provided adequate care.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is **Denied**. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

Official (Print Name): R. Singletary   DON (Signature): R. Singletary   Date: 6/6/19

RETURNED TO INMATE JUN 07 2019

Original: Inmate (plus one copy)   FSP
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective

# GRIEVANCE CONTINUATION SHEET

NAME: Agosto Felix     DC#: 772216     DATE: 6-5-19

☒ INFORMAL  ☐ FORMAL  ☐ CENTRAL OFFICE APPEAL

do to the surgery on my Right Leg Femur bone, the Health Services assistance are Prevenent my medical condition to be evaluate by the (MD) medical director, doctor and the Health assistance Services, and the assistance, Regestral nurse, Practice (ARNP) C. Ibe, won't referral me to see the inside (MD) at F.S.P. - west unit doctor For medical treatment, and renewal of my Health slip/Pass DC4-7010 (2/96), Restricted activity For no Prolong standing more that 15 minute, no Push, Pull, or lift more than 20 pound, I need to see the Medical director (MD) inhouse Doctor at F.S.P. West Unit (206) conserning my Medical Condition, and medical negligent Conduct, violation of the Americans with disabilities Act, by the Health assistance Service Corizon employees, Thank You kindly Respectfully Submitted.

Felix Agosto DC# 772216
Signature of Grievant

Page 2 of 2

MR. MICHAEL BOOKER

FLORIDA DEPARTMENT OF CORRECTIONS
REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☒ Warden   ☐ Assistant Warden   ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

| AGOSTO, FELIX | 772216 | Okaloosa C.I. (115) |
|---|---|---|
| Last   First   Middle Initial | DC Number | Institution |
| 1810-115-121 | | 07h Med. Jorda |

---

**Part A – Inmate Grievance**

GRIEVANCE OF "MEDICAL NATURE", Persuant With 33-103.006(3)(e), F.A.C,
on october 12,2018 License Practice Nurse(LPN) Hall access me on a
"physical abuse" unnecessary use of physical Force by staff Sgt. D.bains
# DJD30 in E-dorm Confinement, and nurse Hall did not Followed with
procedure and threatment with the injury on my wrist's and Right
hip, but gave me one pack of 250mg Tylenol medication. I submitted
a sick call Request on october 14, 2018 do to the ongoing pain on my
wrist's and Right hip, and the Fact that I don't have proper Func-
tion of my Right hand do to the ongoing pain on my Left wrist, on
october 18, 2018 I was access by License Practice Nurse(LPN) Davis
which gave me a bunch of 250mg Ibuprofen medication pack and
a tube of Analgesic balm muscular pain reliever, and nurse Davis
told me inmate Agosto Felix oc# 772216 that She refer me to the inside
Institution O.C.I. doctor MD, but it's being 12 days since LPN Davis
refer me to the doctor and I have not see the doctor until this
day, and the medication 250mg Ibuprofen pack arenot alleviated
my medical condition, nurse Hall make the Round in E-dorm confinem-
ent on october 26, 2018, and I address my medical condition with
nurse Hall which stated I don't care submit an nother sick call
Request and walk off from my cell door E1-111.
RELIEF SOUGHT: I need to See the institution inside doctor MD, (O.C.I), as
Soon as possible; Review the use of Force hand held video camera on
october 12, 2018 to prove my Statement true, and address nurse Hall LPN
unproffesional conduct with inmate's Health, procedure and threatment
For the Safety of the FDOC inmate's.

| october 29, 2018 | Felix Agosto oc# 772216 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

|  ~~07~~ 7 | N/A |
|---|---|
| # | Signature |

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

RECEIVED

Receipt for Appeals Being Forwarded to Central Office

| Submitted by the inmate on: | OCT 29 2018 | Institutional Mailing Log #:_____ | |
|---|---|---|---|
| | ASST. WARDEN PROGRAMS OKALOOSA CI | | (Received By) |

DISTRIBUTION:   INSTITUTION/FACILITY          CENTRAL OFFICE
                INMATE (2 Copies)             INMATE
                INMATE'S FILE                 INMATE'S FILE - INSTITUTION/FACILITY
                INSTITUTIONAL GRIEVANCE FILE  CENTRAL OFFICE INMATE FILE
                                              CENTRAL OFFICE GRIEVANCE FILE

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

*J. A. Green*
*9:30 P.M.*

**PART B - RESPONSE**

| AGOSTO, FELIX | 772216 | 1706-104-064 | JACKSON C.I. | Y2107L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal has been reviewed and investigated with the following finding:

Your complaint was reviewed and an emergency was found to exist.

Due to incomplete or inaccurate information in the Medical database, you were housed with an incompatible inmate. Your cellmate was moved to another cell at 6:00 p.m. on June 14, 2017.

Additionally, the issue of your complaint that Sgt. T. Johnson refused to honor your low bunk pass and threatened you has been referred to the investigative section of the Office of the Inspector General for appropriate action.

Based on the above information, your Request for Administrative Remedy or Appeal is approved.

Glenn Hancock, AWP                           Richard Johnson, Warden

_____          _____     _____
SIGNATURE AND TYPED OR PRINTED NAME OF        SIGNATURE OF WARDEN, ASST              DATE
         EMPLOYEE RESPONDING                   WARDEN, OR SECRETARY'S
                                                  REPRESENTATIVE

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden   ☒ Assistant Warden   ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

AGOSTO, Felix     772216     Jackson C.I. (104)

Last   First   Middle Initial     DC Number     Institution

02K - Program     1706104-064

Part A – Inmate Grievance

"EMERGENCY GRIEVANCE", in accordance Rule 33.103, F.A.C.

On June 13, 2017, approx. 6:25 P.M. the housing post seargent at (Y Dorm) Administrative Confinement Sgt. Jhonson, house a inmate in my cell "Y2107" that have a medical pass Low Bottom bunk and whait over "285 Pounds" I inmate Agosto Felix DC#772216 said to Sgt. Jhonson that I have a medical pass Low Bottom bunk and Restrictions and whait "140 Pounds" Sgt. Jhonson state in Audio video that I inmate Agosto Felix DC#772216 have to move to the Top Bunk that he don't care even that I show Sgt. Jhonson my medical Pass, I was verbelly threat by Sgt. Jhonson that I was goin to get a (D.R.) Disciplinary Report because I Refuse to move to the Top Bunk, the inmate that Sgt. Jhonson house with me in Y2107 said that he was goin to the Top bunk For one day then he need the Bottom bunk I inmate Agosto Felix DC#772216 whait "140 Pound" I got the Femur bone Broke with a Rod Pin and two screw, one on my Right hip and one screw in my knee holding the Femur bone toghter, the inmate house with me whait "285 Pounds" he is

MAY 9, 2016

Mr. Jeffery Beasley
Office of Inspector General
Carlton Building, Room 135
501 South Calhoun Street
Tallahassee, Florida 32399-2500

PROVIDED TO GULF CI
MAIL ROOM
MAY 09 2016
FOR MAILING 05/09/16
INMATE'S INITIALS F.A.

Re: Felix Agosto v. Sgt. Schultheiss et al.,
Case No. 13-14371-civ-Graham/White

Dear Mr. Beasley:

   On May 4, 2016, Captain Schwarz, William,
J. badge (SWJ12), pull me out of my housing cell
P-Dorm Cell P2-216. Disciplinary Confinement Wing
two (2), and place me on shower Four (4) and ask
me to write a witness statement concern the
Allegation of the assault and physical abuse against
me by the staff on February 25, 2016, and that
I need to be seen by "medical" for a "exam"
I said to Captain Schwarz that I was assessed
by Nurse Suber, LPN, on February 25, 2016, and
that I make a witness statement, for the
second time on April 15, 2016, and I was
"exam" (assessed) again by Nurse Machuca, LPN,
on April 15, 2016, when I requested protective
management do to the assault and physical
abuse, and Captain Schwarz, state on audio
video in Disciplinary Confinement Wing two (2)
that I need to write a statement again and
be seen by Medical, I Felix Agosto DC# 772216
said to Captain Schwarz, that I already make
two (2) witness statements and I was seen

by Nurse Suber, LPN, on February 25, 2016 when the incident took place, and then I was seen again on April 15, 2016, by Nurse Machuca, LPN, When I Request to Captain Schwarz For Protective management, Rule 33.602.221 (8) (d) F.A.c. Captain schwarz, then said to the housing Post Sergeant, Shirvan, K, to write me a Disciplinary Report For Disobeing of a verbal order, then on MAY 5, 2016, captain schwarz Came to my cell door P2-216, with Nurse Suber, LPN, and c/o Beatty and told me that I need tobe seen by the nurse, I said to Nurse Suber, LPN, that he "assessed" me "exam" on February 25, 2016, when the incident took place, and I was assessed again by Nurse machuca, LPN, on April 15, 2016 Concer the same Incident of the assault and Physical abuse Also photos was taking of the injury of my legs, And I Refuse again to be seen by nurse Suber, LPN, when the captain schwarz, Pull me out of my cell on April 15, 2016 Concern MY allegation I was Serve three (3) Disciplinary Report, False D.R. on Reprisal to my Complaint against the Correctional staff D.R. Log # 150 - 160490, Log# 150 - 160469, Log# 150-1604-70, and 150- 1604-68, All False, the institution has ignore MY Request For the D.R. Hearing information on this last two D.R. Log # because the investigator Sgt. Eker badge (E0B01) Fail and denied me to Investigate this Disciplinary Report on April 18, 2016 the Fixed wing Audio video Cameras in Administrative Confinement wing two (2) at 5:30 P.m. will Prove when Sgt. Eker the D.R. Investigator Refuse to investigate the D.R. written and Authorized by Captain Schwarz, the Fixed wing Audio video P-Dorm Disciplinary Confinement wing two (2) on MAY 12. 2016. approximately

3:30 P.m. will prove when Captain schwarz, w.
badge (SWJ 12), was demanding For me inmate
Agosto Felix DC# 772216 to write a witness
statement and been seen by medical concerning
my Allegations oF assault and physical Abuse
by Sgt. McBerry, C/o Cromate and sgt. Suber on
February 25, 2016, I already give them my
witness statements and I been seen two (2)
time Concern my Allegations.; I also File a
(Prea) Prison Rape Elimination Act. Grievance "Formal"
on Captain schwarz, Grievance Log# 1604-150-053
my allegation are Recorded on the Fixed wing Audio
video, P3 - Aerm, Administratove Confinement
wing three (3) on April 15, 2016, at 9:30 A.m.
the Same date I Requested Protective management
to captain schwarz, this Institution are throwing
away my (D.R.) Grievance Appeals, and my classification
oFFicer Melvin, A.m. badge (MAM4S), are ignoring my
many Request For the D.R. Hearing information sheet
which had the Log# oF the D.R. So I can File my
Grievance Appeals, I File a informal Grievance to
the classification Department Concer my D.R. Log#
and Hearing information and they still ignore my
Request. Can you please Look into my Allegation
everything is on the Fixed wing Audio video at
P-Derm Confinement on the dates that I dated
on this letter

Felij Agosto DC# 772216
Felix Agosto DC# 772216
Gulf C.I. Annex
699 Ike Steele Road
wewahitchka, Florida 32465

PROVIDED TO GULF CI
MAIL ROOM
APR 1 9 2016
FOR MAILING 04/19/16
INMATE'S INITIALS F.A.

April 19, 2016

SUSAN A. MAHER
Chief Assistant Attorney General
The Capitol, PL01
Tallahassee, Florida 32399-1050

PROVIDED TO GULF CI
MAIL ROOM
APR 1 9 2016
FOR MAILING 4/16/19
INMATE'S INITIALS F.A.

Re: Felix Agosto V. Sgt. Schultheiss, et
Court Case No. 13-14371-civ-Graham/white

MS. SUSAN:

on February 25, 2016 I was assaulted and Physically
abuse by the Staff at this Institution Gulf C.I Annex
I have Request numeros time to speak to the Institution
Inspector, but they are ignoring my Request, I'm
using the fixed wing Audio video Cameras in Administrative
Confinement wing three (3) on February 25, 2016 to
Confirm my allegations of assault and Physical abuse
the staff member are sgt. McBerry, sgt. Suber, and
c/o Kamarte, the mayor of this Institution Gulf C.I. Amex
also are covering the abuse, I Reported to him verbally
and mayor Mercer order to write me two (2) Disciplinary
Reports, then I Request Protective management Review
and they are ignoring my Request, the Disciplinary Report
investigator Call me three time "Mother Fucker" I don't
have time to play the Rainbow with you, this Investigator
name is sgt. Ecker badge # (EOB01), then I been serve
numeros Disciplinary Reports by captain, Schwarz,
William J. badge # (SWJ12), All False, the fixed wing Audio
video Cameras in Administration Confinement wing three (3)
on April 15, 2016 will show when capt. Schwarz, state
that I was going to "suck his dick", then wrote me
a couple of Disciplinary Report to cover his action

I have Report All the Abuse and the Institution
are Covering up everything and throwing away
my Grievances when I File the complaint to
Report this staff actions, and they keep
Serving False Disciplinary Reports, in Reprisal
For my First and 14th Admendment right to File
Grievances and lawsuit, also Captain stephen, Kevin
works the D-shift in the Institution Gulf C.I. Main unit
and Now he is working the A-shift at Gulf C.I. Annex
this Captain stephen, Kevin also Abuse me while I
was in the Main Unit Gulf C.I. All my Allegation are
Recording in the Fixed Wing Audio video, I need to
see the Institution Inspector to Alleviate the Problem
but they are ignoring, I need Help Please.

Respectfully submitted

Felix Agosto DC#773216

Felix Agosto DC#773216
Gulf C.I. Annex
699 Ike steele Road
wewahitchka, florida 32465



January 11, 2017

Lester Fernandez
Office of Inspector General
Carlton Building, Room 135
501 South Calhoun Street
Tallahassee, Florida 32399-2500

Re: Inmate, Felix Agosto DC#772216

I inmate Agosto, Felix, DC#772216 was place
in Administrative Confinement on January 09, 2017
by Sgt. M.V. Russ, I was move From Housing
do to my custody level been grade low, at
Master Rouster Count Sgt. M.V. Russ, order me
Close my locket wich I complie, then Sgt. M.
V. Russ order me to the (T.V.) area and
start verbally treat me, and state in video
Audio if I can't see her "Pussy" I said to
Sgt. M.V. Russ, that, that is a violation of (PreA)
Prision, Rape, elimanation, act, Sgt. M.V. Russ, then
Call For backup. C/o Rboledlex, and Cap. L. oliver
arrive, and I was place in, Administrative
Confinement, I wrote a statement, and Report
the incident to the Medical staff which denied
to give me her name, I was verbaly treat
by the medical staff who did the pre-
Confinement, and I was place in (AC), the next
day I declare "Mental Health emergency", and
Nurse Gordon, LPN, arrive and state that she
don't give a "Fuck", and state in Audio video
in Administrative Confinement, that the mental
Healt Psychological services don't want to
see me, I was place back on my cell. After



a Couple of hour I declare "Mental Health
emergency" again, I was Place again in the
Shower, For (2) hour before the Same
nurse LPN, Gordon, arrive and start making
verball threat against me, and Sgt. T. Jhonson
the (AC) Post supervicer threat me to use
Quimical agent (gas), everything is Recorded
in Administrative Confinement Audio video
Cameras, date January 10, 2016, at 9:00 - 10:00 A.M.
nurse LPN, Gordon have been unprofesional
before, I Report this nurse thru the Tip-
line * 8477, Concern my medical Pass and issues
the Institution Jackson C.I., use this nurse
to Falsefy Papers, and mistreat Inmate,
Also Sgt. M.V. Russ are bringin cellular
Phone to the institution, which I Report
and Mayor Jhonson, came to investigate, I
told Mayor Jhonson where were two (2)
Cellular Phone that Sgt. M.V. Russ sold to a
inmate, but I was Verbally treat again,
Sgt. M. Melvin was Post in Administrative
Confinement on 2-10-17, and told a nother
officer that I Snitch on Sgt. M.V. Russ
this statement is also on Audio video at
Administrative Confinement (Y Dorm) approx. 3:15-
3:30 P.m. 1-10-17, ~~state~~ Sgt. M. Melvin
dangering my life because other inmates
~~state~~ here when Sgt. M. Melvin told the
other officer that I Snitch on Sgt. M.V. Russ
that She bringing cellular Phones to the
institution, I was move to a B Dorm where
a inmate got "kill", and Sgt. M.V. Russ is
Post, assinged, I Request to speak to the
Inspector on this institution was before



to tell him what I have learn while on
Population, and the murder ~~kill~~ dead of
the inmate on B Dorm where Sgt. M. u. Russ
is Post, where are the cellular phone but
they are ignoring my Request, I also will
File another Complaint to the Office of the
Governer Chief Inspector, which got a case
number do to the abuse and abodment,
I got a couple year left on my sentence and
I want to makit home, this Institution
have a lot of "Gang Member", that security
use for they own Porpuse, I'm in fear of
my life, and I Follow the Rule and Regulation
but it see that everytime I use the Grievance
Process, my life is in danger, and I just have
a Settlement on a law suit against two
(2) Correctional Officers, Felix Agosto
V. Sgt. Schultheiss et al. White/Graham,
can you please look into my allegation and
Review the Fix Cameras Audio video on the
date above to confirm my Allegations
and the "Corrup" Medical Staff Nurse Borden,

Respectfully, Submitted

Felix Agosto DC# 772216
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445

AUGUST 1, 2016

Glen W. Hopkins, bureau chief
Criminal Justice Standards
and Training Commission
P.O. Box 1489
Tallahassee, Florida 32302-1489

Dear Mr. Hopkins:

I was tranfer From Gulf C.I.-Annex on a
Emergency tranfer to this Institution Jackson
Correctional Institution on MAY 23, 2016, I was
abuse Physically and verbally at Gulf C.I.-Annex
and they tranfer me inmate Agosto Felix DC# 772216
to this institution Jackson C.I. with 160 days
Disciplinary Confinement, with False Disciplinary
Reports, the Institution Inspector of this Institution
Jackson C.I. Mr. Basford, Came to Disciplinary
Confinement on July 11, 2016, to interview me inmate
Agosto Felix DC# 772216, Regarding My Allegation of
abuse, Physically and Sexual approach by the staff at
Gulf C.I.-Annex, the Institution Inspector Mr. Basford
Recorded My statements and state that he was
doing a Favor to the Institution Inspector at
Gulf C.I.-Annex MS. Turbee, I Report every inccident
using the Grievance Process, and Also I wrotte a letter
to the Inspector General at Tallahassee Mr. Jeffery
Beasley, due to the Facts that My Allegation are
Recorded in the Fixed wing Audio video Cameras
P Dorm, Confinement, Administrative confinement,
and Disciplinary Confinement, at Gulf C.I.-Annex
and no action by the Inspector General or the Institution
Inspector, has been take, to Alliviate the Problem and
abuse against me, Subsection 943.1395(5), Florida

statutes, specifies that the "employing agency"
is charged with conducting internal investigations
but the Institution Inspector at Gulf C.I.—Annex
has engage, a Excessive delay to complete the
investigation and the Administration still got me
inmate Agosto Felix DC#772216, in Disciplinary
Confinement until October 2016, on False Disciplinary
Reports, Now since I arrived to this Institution
Jackson C.I. Correctional Officer A. Scott, which
is Post as the Officer Supervisor in Disciplinary
Confinement H Dorm wing one (1) has been Harrasing
me and Retaliation to my rights to File grievance
and lawsuit, I have File several Complaint,
Grievance on this Correctional Officer A. Scott, and
no answer or Respond to my Complaint, and the
Institution Jackson C.I. are throwing away my
Grievances and Complaint on this Correctional
Officer that works House Post at H Dorm
Disciplinary Confinement, can you please enforce the
law on this institutions to Prevent any harm, and
abuse against me inmate Agosto Felix DC#772216.

Respectfully Submitted
Felix Agosto DC#772216
Felix Agosto DC#772216
Jackson Correctional Institution
5563 10th Street
Malone, Florida 32445-3144



FOR MAILING BY:
AUG 1 0 2016
JACK

*J. iA Breen*
*9:30 P.m.*

## PART B - RESPONSE

| AGOSTO, FELIX | 772216 | 1706-104-064 | JACKSON C.I. | Y2107L |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal has been reviewed and investigated with the following finding:

Your complaint was reviewed and an emergency was found to exist.

Due to incomplete or inaccurate information in the Medical database, you were housed with an incompatible inmate. Your cellmate was moved to another cell at 6:00 p.m. on June 14, 2017.

Additionally, the issue of your complaint that Sgt. T. Johnson refused to honor your low bunk pass and threatened you has been referred to the investigative section of the Office of the Inspector General for appropriate action.

Based on the above information, your Request for Administrative Remedy or Appeal is approved.


Glenn Hancock, AWP                              Richard Johnson, Warden

| *h. Hancock, AWP* | *Richard Johnson* | 6/15/17 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

**FLORIDA DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden   ☒ Assistant Warden   ☐ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse**, on the behalf of:

| Agosto, Felix | 772216 | Jackson C.I. (104) |
|---|---|---|
| Last   First   Middle Initial | DC Number | Institution |

02K-Program                                                  1706104-0604

---

| Part A – Inmate Grievance |
|---|

"EMERGENCY GRIEVANCE" in accordance Rule 33.103, F.A.C.

On June 13, 2017, approx. 6:25 P.M. the housing Post seargent at (Y Dorm) Administrative Confinement Sgt. Jhonson, house a inmate in my cell "Y2107" that have a medical Pass Low Bottom bunk, and whait over "285 Pounds" I inmate Agosto Felix DC#772216 said to Sgt. Jhonson that I have a medical Pass Low Bottom bunk and Restrictions and whait "140 Pounds" Sgt. Jhonson state in Audio video that I inmate Agosto, Felix DC#772216 have to Move to the Top Bunk that he don't care even that I show Sgt. Jhonson my medical Pass, I was verbelly threat by Sgt. Jhonson that I was goin to get a (D.R.) Disciplinary Report because I Refuse to move to the Top Bunk, the inmate that Sgt. Jhonson house with me in Y2107 said that he was goin to the Top bunk For one day then he need the Bottom bunk I inmate Agosto Felix DC#772216 whait "140 Pound" I got the Femur bone Broke with a Rod Pin and two screw, one on my Right hip and one screw in my knee holding the Femur bone toghter, the inmate house with me whait "285 Pounds" he is

FOREVER / USA

FOREVER / USA

FOREVER / USA

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7019 2280 0000 8868 3190

FOREVER / USA

FOREVER / USA

FOREVER / USA

U.S. POSTAGE PAID
PM 2-Day
CORAL SPRINGS, FL
32071
MAY 26, 20
AMOUNT
$3.00
R2304M110098-51

32502

1004

UNITED STATES
POSTAL SERVICE

UNITED STATES DISTRICT COURT
100 N. Palafox Street
Pensacola, Florida 32502

CHECKED MAY 2 9 2020

Felix Agosto Diaz #722216
1140 Nw 56th drive Apt 109
Coral Springs, Florida 33076