IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FELIX AGOSTO,
    Plaintiff,

vs.                                      Case No.: 3:18cv1559/RV/EMT

SERGEANT J. COPPENGER
and OFFICER NELSON,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

       This matter is before the court on Defendants' motion for summary judgment (ECF No. 47). The court set an initial deadline of April 29, 2020, for Plaintiff to file a response to the motion for summary judgment (*see* ECF No. 48). At Plaintiff's request, the court extended the deadline to June 29, 2020 (*see* ECF Nos. 49, 51). Plaintiff has now filed a response (ECF No. 52).

       The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the parties' submissions and the relevant law, the undersigned concludes that Defendants' motion for summary judgment should be denied.

I.  BACKGROUND

Plaintiff Felix Agosto ("Agosto"), proceeding pro se and in forma pauperis, commenced this case on July 19, 2018, by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). At that time, Agosto was an inmate of the Florida Department of Corrections ("FDOC"). He was released from the FDOC on March 13, 2020 (*see* ECF No. 47 at 1 n.1). Presently before the court is Agosto's Second Amended Complaint (ECF No. 16). Agosto named four Defendants in his Second Amended Complaint, but his claims against two Defendants (Betts and McCann) did not survive statutory screening under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1) (*see* ECF No. 22). Agosto claims that the remaining two Defendants, Sergeant Coppenger and Officer Nelson, violated his Eighth Amendment rights by using excessive force on August 17, 2017, when he was housed at Century Correctional Institution (*see* ECF No. 16 at 11).[1] Agosto contends the use of force caused him physical injuries and pain (*id.* at 9, 13). He asserts claims for compensatory, punitive, and nominal damages against Defendants in their individual capacities (*id.* at 12–13).

II.  SUMMARY JUDGMENT STANDARD

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his case or present affirmative evidence that the nonmoving party will be unable to prove his case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

To defeat summary judgment, the nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586. Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). And "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary

judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Celotex Corp.*, 477 U.S. at 324. The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See Celotex Corp.*, *supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file, designate specific facts showing that there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jones v. Cannon*, 174 F. 3d 1271, 1282 (11th Cir. 1999). Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *See Celotex Corp.*, 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

### III. MATERIAL FACTS FOR PURPOSES OF SUMMARY JUDGMENT

The facts pertinent to the resolution of Defendants' motion for summary judgment are drawn from Agosto's verified Second Amended Complaint (ECF No. 16) and the evidence in the summary judgment record (ECF Nos. 46, 47, 52). *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court sets forth the facts, drawn from the evidence presented, in the light most favorable to the nonmoving party. *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated by a court as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Regarding the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or


> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999); Fed. R. Civ. P. 56(c).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2). The material facts are the following.

On August 17, 2017, at approximately 2:20 p.m., Officer Covan (who is not a named Defendant) accused Agosto of disorderly conduct and directed that he be placed in confinement (Affidavit of Felix Agosto ¶¶ 4–9, ECF No. 46). Agosto complained to Covan, Sergeant Payne, Lieutenant Booth, and Colonel Hassett (none of whom are named Defendants) that he was being falsely accused, so Colonel Hassett called for back-up to escort Agosto to confinement (*id.* at ¶¶ 8–13). Defendant Sergeant Coppenger, Defendant Officer Nelson, and Lieutenant Shaw

(who is not a named Defendant) responded to Colonel Hassett's call and escorted Agosto to the medical department for a pre-confinement physical examination (Agosto Aff. ¶ 14; FDOC Pre-Special Housing Health Evaluation, ECF No. 52 at 104–05). Nurse McQueen noted Agosto had no injuries or current medical complaints (FDOC Pre-Special Housing Health Evaluation, ECF No. 52 at 104–05).

After the medical exam, Defendants Sergeant Coppenger and Officer Nelson escorted Agosto from the medical department to the confinement dormitory (Second Amended Compl., ECF No. 16 at 8; Agosto Aff. ¶ 16, ECF No. 46). While they were in the hallway en route to the confinement cell, Sergeant Coppenger said, "Run your mouth now" and then grabbed Agosto by his upper body and slammed him to the floor (*id.*). Both of Agosto's hands were cuffed behind his back, and he was not physically resisting in any way (Second Amended Compl., ECF No. 16 at 8; Agosto Aff. ¶ 17). While Agosto was on the floor, Officer Nelson sprayed him in his eyes with chemical agent (Second Amended Compl., ECF No. 16 at 8–9; Agosto Aff. ¶ 18).

Defendants do not dispute that Agosto was restrained with handcuffs during the escort (Coppenger Decl. ¶ 7). But they dispute Agosto's version of what occurred in the hallway (*see* Defs.' Mot. Summ. J., ECF No. 47 at 2). Officer Nelson and Sergeant Coppenger state Agosto became combative and began pulling away

from their custodial grasp (Declaration of Gregory Nelson ¶ 3, ECF No. 47-1; Declaration of Jack Coppenger ¶ 3, ECF No. 47-2).  Defendants state Sergeant Coppenger gave Agosto several loud verbal orders to cease his behavior, but Agosto did not comply (Nelson Decl. ¶ 4; Coppenger Decl. ¶ 4).  Defendants state Sergeant Coppenger reached to open the door in the classification hallway, and Agosto attempted to head butt him  (Nelson Decl. ¶ 5; Coppenger Decl. ¶ 5; Declaration of Kenneth Shaw ¶ 3, ECF No. 47-3).  Defendants state Officer Nelson then applied a continuous stream of 57 grams of OC spray[2] toward Agosto while Sergeant Coppenger maintained his custodial grasp and used his body weight and downward pressure to place Agosto on the floor to prevent injury to staff and Agosto (Nelson Decl. ¶ 6–7; Coppenger Decl. ¶ 6; Shaw Decl. ¶ 4).

There is no genuine dispute as to what occurred after the use of force.  Sergeant Coppenger, Officer Nelson, and Lieutenant Kenneth Shaw, who was present in the hallway and witnessed the use of force, assisted Agosto to his feet (Nelson Decl. ¶ ; Coppenger Decl. ¶ 8; Shaw Decl. ¶ 4).  Agosto was taken to the confinement dormitory and received a cool water decontamination shower (Second

---

[2] OC is Oleoresin Capsicum or pepper spray.  *See* Fla. Admin. Code r. 33-602.210(1)(p). It is an inflammatory agent that causes tearing and involuntary closing of the eyes, nasal discharge, sneezing, disorientation, and the sensation of respiratory distress.  *Id.*

Amended Compl., ECF No. 47 at 9; Agosto Aff. ¶¶ 18, 21). Agosto then received a post-use of force medical examination by Nurse Powell (Second Amended Compl., ECF No. 16 at 9; Agosto Aff. ¶ 21; FDOC Emergency Room Record, ECF No. 47-11). Agosto complained of pain in his left eye and left hip (FDOC Emergency Room Record). He reported he was blind in his left eye due to a carpentry job accident, and that he previously had surgery on his left eye and right hip (*id.*). Agosto told Nurse Powell he was scheduled to see a doctor (*id.*). Nurse Powell noted that the sclera of both eyes was reddened, and Agosto's face and neck were reddened, but Powell noted no lumps, bleeding, bruising, swelling, or broken skin (*id.*). Agosto's chest was clear (*id.*). Nurse Powell instructed Agosto to wash his eyes with lots of clean water, and Powell advised Agosto he would check on the reported doctor appointment (*id.*). Powell also instructed Agosto to continue taking Naproxen 250 mg., which was previously prescribed for pain in Agosto's lower back and joints (Agosto Aff. ¶ 21). Nurse Powell sent Agosto's medical file for review and instructed Agosto to access sick call if he did not receive a call-out for a doctor visit (FDOC Emergency Room Record). Dr. F. Witter reviewed Agosto's file four days later (*id.*).

After the medical examination, Agosto was placed in a non-contaminated cell and monitored for signs of respiratory distress for sixty (60) minutes, with none noted (Declaration of Jonathan Petrossi ¶¶ 4–5, ECF No. 47-4).

Agosto asserts as a result of Defendant Coppenger's slamming him to the floor, he suffered tears in the joint and muscle of his right hip and femur bone (Agosto Aff. ¶ 19).  On August 19, 2017, Agosto submitted a sick call request complaining of pain in his right hip and right femur bone (FDOC Inmate Sick-Call Request, ECF No. 52 at 103).  Nurse Practitioner S. Szalai ordered x-rays of Agosto's right hip and knee, and instructed Agosto to continue taking the Naproxen he was previously prescribed (FDOC Radiology Request Form, ECF No. 52 at 109). Agosto received the x-rays on August 29, 2017 (Schryver Medical, LLC, Radiology Interpretation, ECF No. 52 at 101).  The impressions were the following:

> [Right hip]
>
> 1.   No radiographic evidence of acute fracture or dislocation.  If symptoms persist, consider follow-up radiographs in order to evaluate for initial radiographically occult fracture.  In comparison with prior exam, findings are stable.
> 2.   Status post ORIF [open reduction internal fixation] with intramedullary rod and screw fixation of an intertrochanteric fracture with near anatomic alignment
> 3.  Mild osteoporosis demonstrated.
>
> [Right knee]

1. No definite radiographic evidence of acute fracture or dislocation.
2. Intramedullary rod distal femur.
3. No joint effusion.
4. Mild osteoarthritis.

(Schryver Medical, LLC, Radiology Interpretation, ECF No. 52 at 101).

From November of 2017 to February of 2018, Agosto complained that he was not receiving his prescribed Naproxen and was suffering pain in his lower back, right hip, and right femur bone (*see* FDOC Inmate Requests, ECF No. 52 at 111–20, 137–38).  The medical director of Agosto's institution responded that a doctor discontinued the Naproxen based upon lab tests (*id.* at 138).  Agosto was advised that lab work was ordered as a follow up, and to access sick-call for complaints of pain (*id.*).

On April 25, 2018, Agosto again complained of pain in his right hip (*see* FDOC Radiology Request Form, ECF No. 52 at 108).  Agosto received another x-ray of his right hip on April 30, 2018 (*see* MobilexUSA Radiology Report, ECF No. 52 at 102).  The impression was, "No acute fracture of the hips.  Hardware appears intact." (*id.*).  Apparently, Agosto was again prescribed Naproxen (FDOC Inmate Requests, ECF No. 52 at 121–23).

IV. DISCUSSION

Defendants contend they are entitled to qualified immunity, because they were

acting pursuant to their authority as a correctional sergeant and correctional officer, and their conduct was reasonable under the circumstances (Defs.' Mot. Summ. J., ECF No. 47 at 7–12). They contend the evidence demonstrates that their use of force was reasonable and necessary to bring Agosto into compliance with lawful orders to cease his combative behavior and thus did not violate Agosto's constitutional rights or clearly established law (*id.*).

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To receive qualified immunity, a defendant must first prove that he or she was acting within the scope of his or her discretionary authority when the relevant conduct took place. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). Once that is shown (and it is unchallenged here), the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Id.* In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *See Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right. . . . The second . . . asks whether the right in question was 'clearly

established' at the time of the violation." *Id.* at 659 (citations, internal quotation marks, and alterations omitted) (first ellipsis in original). The court has discretion to decide which question to address first, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but to survive a qualified immunity defense, the plaintiff must satisfy both showings, *see Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. "So [the court] must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

The "core judicial inquiry" for an Eighth Amendment excessive-force claim in a prison setting is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted). The following factors are considered to determine if an application of force was applied maliciously and sadistically to cause harm: "the need for the application of force, the relationship between that need and

the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

As the markedly conflicting narratives set forth above demonstrate, there is a fundamental factual dispute between the parties as to whether the use of force (slamming Agosto to the ground, and spraying him with chemical agent), was lawful or malicious. Under Defendants' version of events, the use of force was necessary to obtain Agosto's compliance with Sergeant Coppenger's orders to cease efforts to pull away from the officers' custodial grasp and to defend Agosto's attempt to head butt Coppenger. Agosto denies he attempted to pull away from the officers' custodial grasp or attempted to head butt Coppenger, and contends the officers used force without justification. Agosto contends the use of force was maliciously and sadistically designed to inflict gratuitous pain, as evidenced by Coppenger's saying, "Run your mouth now" just prior to the use of force.

Defendants have not demonstrated an "absence of a genuine issue of material fact" as required for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants' evidence does not conclusively refute Agosto's allegations. Rather, it merely creates a swearing contest, and a swearing contest between

interested witnesses is a conflict for a jury to resolve.  *See, e.g., Joassin v. Murphy*, 661 F. App'x 558, 559-60 (11th Cir. 2016) (holding that a prisoner's sworn testimony creates a genuine issue of material fact, and that prisoner's testimony is not conclusively refuted by the testimony of interested prison officials who are defendants or colleagues of defendants).

Defendants rely upon four unpublished Eleventh Circuit cases in support of their contention that their use of force was reasonable and necessary, and thus did not violate Agosto's Eighth Amendment rights (*see* Defs.' Mot. Summ. J., ECF No. 47 at 7–10).  But each of those cases is distinguishable for the following reasons.

Defendants first cite *Reed v. Mitchem*, 707 F. App'x 617 (11th Cir. 2017).  In *Reed*, the prisoner plaintiff alleged that the correctional officer defendant used excessive force upon him during an altercation.  The Eleventh Circuit affirmed the district court's judgment in favor of the officer, but the district court's judgment was based upon its **credibility determination following a bench trial**.  The instant case is at the summary judgment stage, where credibility determinations are not appropriate.

Defendants next cite *Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511 (11th Cir. 2013).  In *Smith*, the Eleventh Circuit affirmed the district court's grant of summary judgment in favor of a correctional officer on an excessive force claim

Case No.:  3:18cv1559/RV/EMT

brought by a state prisoner. But in that case, the Eleventh Circuit agreed with the district court's determination that, taking the prisoner's account as true (i.e., that the officer twisted the plaintiff's arms upwards in cuffs, while the officer pressed the plaintiff against the wall for a matter of minutes), the "unprovoked attack" by the officer was no more than a *de minimis* use of force. *Id.* at 512–14. Here, the unprovoked conduct by Defendants (i.e., Coppenger's using his full body weight to slam Agosto to the floor, and Nelson's spraying him with 57 grams of pepper spray) was more than a *de minimis* use of force. Therefore, *Smith* does not support a grant of summary judgment for Defendants.

The third case Defendants cite is *Howard v. Memnon*, 572 F. App'x 692 (11th Cir. 2014). Relying on the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Eleventh Circuit held in *Howard* that the district court did not err in adopting the defendants' version of the facts and granting summary judgment in their favor because the prisoner plaintiff's accounting of the incident, which is not described in the Eleventh Circuit's decision, was "blatantly contradicted" by the defendants' evidence and the post-use of force medical exam which showed that the plaintiff received on a superficial abrasion on his back. *Howard*, 572 F. App'x at 695.

The undersigned recognizes that the Eleventh Circuit has observed that "when 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,' a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment." *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (quoting *Scott*, 550 U.S. at 380). But in both *Scott* and *Singletary*, the non-movant's version of events was discredited by contradictory and irrefutable **video evidence**. *See Scott*, 550 U.S. at 380; *Singletary*, 804 F.3d at 1183–84. Here, Defendants have not submitted a video recording of their interaction with Agosto, let alone a video that demonstrates Agosto is prevaricating and that Defendants' version of events is correct. And there is otherwise no blatant contradiction of Agosto's assertions by incontrovertible evidence. Therefore, *Howard* is unpersuasive.

The fourth case Defendants cite is *Ledlow v. Givens*, 500 F. App'x 910 (11th Cir. 2012). In *Ledlow*, the Eleventh Circuit affirmed the district court's conclusion that the defendant officer's stabbing the prisoner plaintiff in the face with a pocketknife and striking him unconscious with his baton was a good-faith effort to maintain discipline. The plaintiff admitted that the defendant's actions were in response to his (the plaintiff's) removing his own handcuffs and chasing after another inmate with whom he had a verbal altercation earlier that morning. *Id.* at

913. The Eleventh Circuit held, "With a potentially dangerous altercation looming, [the defendant] reasonably perceived a threat and applied force in response." *Id.* The instant case is vastly different because, according to Agosto's facts, there was no dangerous situation looming and no basis for Defendants to perceive a threat. Therefore, *Ledlow* does not support a grant of summary judgment in the instant case.

Crediting Agosto's version of events, which the court must at this stage, *see Evans v. Stephens,* 407 F.3d 1272, 1278 (11th Cir. 2005), a reasonable jury could conclude that Defendants' use of force (i.e., Coppenger's slamming Agosto to the floor with his full body weight and Nelson's applying 57 grams of chemical agent) upon Agosto (who avers he was not physically resisting in any way) was malicious and sadistic, rather than in a good-faith effort to restore or maintain order. Such a use of force is excessive and violates the Eighth Amendment. As the Eleventh Circuit held in *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), this determination ends the qualified immunity inquiry:

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient

> to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

280 F.3d at 1301. *See also, e.g., Bowden v. Stokely*, 576 F. App'x 951, 955 (11th Cir. 2014) (unpublished but recognized as persuasive authority) (citing *Skrtich*) (although there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate).

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That Defendants' motion for summary judgment (ECF No. 47) be **DENIED.**

At Pensacola, Florida this 4th day of June 2020.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district**

Case No.: 3:18cv1559/RV/EMT

**court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**